

# ה

# 2014

i. Notary Fraud Complaint to Office of Secretary of Commonwealth (Exhibit "K")

ii. Affidavit of Default Judgment (Exhibit "L")

iii. State Inspect General Correspondence (Exhibit "M")

iv. American Association of Notaries w/ enclosures (Exhibit "N")

v. Notary Fraud Emails (Exhibit "O")

vi. Motion to Dismiss Denied Correspondence w/ Motion attached (Exhibit "P")

vii. 5981 Callie Furnace Eviction Notice (Exhibit "Q")

viii.   Loan Modification Agreement Bank of America (Exhibit "R")

    a. Green Tree Loan Servicing Correspondence

    b. Uniform Residential Loan Application

    c. Assignment of Mortgage

    d. Adjustable Rate Rider

    e. Ditech Correspondence

5981 Callie Furnace Court
Manassas, Virginia  20112


February 11, 2014

Office of the Secretary of the Commonwealth
P.O. Box 1795
Richmond, Virginia 23218-1795

Attention:  Notary Director Jennifer Crown

Subject:  Camille T. Barry, Notary Registration #335460; expiration date of June 30, 2015 (commissioned by the Commonwealth of Virginia)

Dear Director Crown:

I am compelled to write you again to provide an update on the above-mentioned subject.  Firstly, thank you once again for your time and patience in helping me comprehend the process for filing a complaint against a Notary for violation of the Virginia Code; and again, I appreciate your swift response and actions as it relates to the incomplete (unsigned) Affidavit served by Notary Camille T. Barry.  However, I am still very challenged by the issue of Conflict of Interest as I have followed up with the Commonwealth Attorney as directed (in fact, I have contacted multiple government officials and Magistrates and they have all directed me back to the Office of the Secretary of the Commonwealth regarding this issue).  The Commonwealth's Attorney's Office reviewed the documents that I forwarded and stated that it appears that I have properly contacted the offices that do enforce laws pertaining to Notaries.

I have read the Virginia Code regarding Conflict of Interest and I am seeking an attorney to pursue private civil litigation, as I am very concerned that a Notary Public in the Commonwealth of Virginia could notarize documents in which that Notary is a party with beneficial interests.  This is clearly a violation of Virginia Code and questions the integrity of the notarial act, as follows:

> § 47.1-30. Conflict of interests.
>
> No notary shall perform any notarial act with respect to any document, writing, or electronic document to which the notary or his spouse is a party, or in which either of them has a direct beneficial interest, or where the notary is a signatory or is named in the document to be notarized, except that a notary named in a document for the purpose of receiving notices, or named in a document as executor, trustee, or other fiduciary, shall not, for that reason alone, be precluded from performing notarial acts with respect to such document.
>
> Any notary who violates the provisions of this section shall be guilty of official misconduct.
>
> A notarial act performed in violation of this section shall not automatically be void for such reason, but shall be voidable in the discretion of any court of competent jurisdiction upon the motion of any person injured thereby.

I have followed up the issue with the National Notary Association along with other national accrediting agencies and experts for Notaries Public and they all reference the above Code in their responses. In fact, Camille T. Barry as Notary/Owner/Plaintiff is guilty of official misconduct as per the Virginia Code, and she puts into question the position of a Notary Public as a local and state Public Officer that must act in an impartial manner and take reasonable care in performing notarial acts.

My husband, Benedict B. Chin and I have 100% interest in our dwelling at 5981 Callie Furnace Court; and we will continue to protect that interest.

The foregoing are the facts, the whole facts and nothing but the facts before the Great I Am that I Am.

Respectfully,

A. Gyimah Chin
/Enclosures:     Copies of letters re: Camille T. Barry, Notary Registration #335460

Cc:     Levar Stoney, Secretary of the Commonwealth
         Kelly Thomasson Mercer, Deputy Secretary of the Commonwealth

FAX TRANSMITTAL
(3 pages, Incl. Cover)

2/11/14
Fr: A. Guyimah Chin
703-516-2069 (mobile)

To: Office of the Secretary of the Commonwealth
Notary Board
Attention: Notary Director Jennifer Crown

Fax: 804-786-9549

Please note that this letter and attachments
will be sent via U.S. Postal Services.
Copies forwarded to Secretary; Deputy
Secretary of the Commonwealth.

Thank you.

AGC

**HP Officejet 7310**
Personal  Printer/Fax/Copier/Scanner

Log for
Benedic
703-670-8882
Oct  17  2001  11:12PM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Oct 17 | 11:10PM | Fax Sent | 8047869549 | 0:54 | 3 | OK |



**AFFIDAVIT—DEFAULT JUDGMENT**
**SERVICEMEMBERS CIVIL RELIEF ACT**
Commonwealth of Virginia    VA. CODE § 8.01-15.2

Case No. ......................

RETURN DATE AND TIME: *January 3, 2014 @ 1:30 pm*

[ ] Circuit Court    [X] General District Court
[ ] Juvenile and Domestic Relations District Court

*Prince William County*
CITY OR COUNTY

*Beeren & Barry Investments, LLC* v. In re: *Chin, Akua Gyimah and All Unknown Occupants*

I. *Ruina Mettas* .................. the undersigned affiant, states the following under oath:
PRINT NAME

[ ] The defendant/respondent    [ ] is in military service.    [ ] is not in military service.

The following facts support the statement above:

[X] The affiant is unable to determine whether or not the defendant/respondent is in military service.

*12 | 11 | 13*
DATE                                                       AFFIANT'S SIGNATURE

The above-named affiant personally appeared this day before the undersigned, and upon duly being sworn, made oath that the facts stated in this affidavit are true to the best of his or her knowledge, information and belief.

*12 | 11 | 13*
DATE              [ ] CLERK [ ] DEPUTY CLERK [ ] MAGISTRATE [ ] JUDGE [ ] INTAKE OFFICER

---

FOR NOTARY PUBLIC'S USE ONLY:

State of ............ *VA* ............    [ ] City [x] County of ...... *Fairfax* ......

Acknowledged, subscribed and sworn to before me this *11th* day of *December* ...... 20 *13*

CAMILLE T. BARRY
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #335460
My Commission Expires June 30, 2015

NOTARY PUBLIC
(My commission expires: ............)

**NOTICE REGARDING APPOINTMENT OF COUNSEL TO REPRESENT ABSENT SERVICEMEMBER:**
Where appointment of counsel is required pursuant to 50 U.S.C. app. § 521 or 522, the court may assess attorneys' fees and costs against any party, as the court deems appropriate, and shall direct in its order which of the parties to the case shall pay such fees and costs, except the Commonwealth unless it is the party that obtains the judgment.

**FOR COURT USE ONLY:**
**[ ] ORDER OF APPOINTMENT OF COUNSEL**
    I find that appointment of counsel is required pursuant to 50 U.S.C. app. § 521 or 522 and therefore, I appoint the lawyer indicated below to represent the absent servicemember named as defendant/respondent above.

NAME, ADDRESS
OF COURT
APPOINTED
LAWYER
                                                            NEXT HEARING DATE AND TIME

                                                            DATE

                                                            JUDGE

---

**[ ] STAY OF PROCEEDINGS**
    I find that a stay of proceedings is required pursuant to 50 U.S.C. app. § 521 and, therefore, such a stay, for a minimum period of 90 days, is ordered until ............

                                                            NEXT HEARING DATE AND TIME

DATE                                                        JUDGE

FORM DC-418 REVISED 11/07

# SUMMONS FOR UNLAWFUL DETAINER
(CIVIL CLAIM FOR EVICTION)

VA. CODE § 8.01-126

Commonwealth of Virginia

COUNTY OF PRINCE WILLIAM

CITY OR COUNTY

9311 LEE AVENUE, MANASSAS, VA 20110
STREET ADDRESS OF COURT

TO ANY AUTHORIZED OFFICER: Summon the Defendant(s) as provided below.

TO THE DEFENDANT(S): You are commanded to appear before this Court ........ to answer this civil claim.

CHIN, AKUA GYIMAH
DEFENDANT(S)/TENANT(S) (LAST, FIRST, MIDDLE)

and ALL UNKNOWN OCCUPANTS

5981 CALLIE FURNACE CT.

MANASSAS, VA 20112

v.

BEEREN & BARRY INVESTMENTS, LLC
PLAINTIFF(S)/LANDLORD(S)

11654 PLAZA AMERICA DRIVE, #653

RESTON, VA 20190

703-450-0345
TELEPHONE NUMBER

CASE NO. 13-1759

CLAIM AND AFFIDAVIT: That Defendant(s) unlawfully detains and withholds from Plaintiff(s):

5981 CALLIE FURNACE CT., MANASSAS, VA 20112
ADDRESS/DESCRIPTION OF DETAINED PROPERTY

FAILURE TO VACATE AFTER A VALID FORECLOSURE SALE

and that the Defendant should be removed from possession based upon the following:

[ ] unpaid rent [✓] ............ rent due for ........ and further that rent is due and owing and damages have been incurred as follows:

$ ........ rent due for ........ and interest ........ 6% from DOJ
RATE(S) AND BEGINNING DATE(S)

and $ ........ late fee and $ ........ civil recovery and $ ........ use and occupancy from 12/5/13
RATE(S) AND BEGINNING DATE(S)

and $ 56.00 costs and $ ........ damages for ........ and $ ........ attorney's fees,

[ ] This summons is filed to terminate a tenancy pursuant to the Virginia Residential Landlord and Tenant Act, § 55-248.2 et seq, or the Code of Virginia.

All required notices have been given.

Subscribed and sworn to before me this 14 day of ........ Dec. 2013

My commission expires ........

NOTARY PUBLIC
My commission expires
Reg. #335460
My Commission Expires June 30, 2015

[ ] PLAINTIFF [ ] PLAINTIFF'S ATTORNEY [ ] PLAINTIFF'S AGENT

DATE ISSUED ........

[ ] CLERK [ ] DEPUTY CLERK [ ] MAGISTRATE [✓] NOTARY PUBLIC [ ] OTHER

RETURN DATE AND TIME

## CASE DISPOSITION

[ ] JUDGMENT that Plaintiff(s) recover against ........ named DEFENDANT(S).

[ ] possession of the premises described above pursuant to § 8.01-128.

[ ] A hearing shall be held on ........ to establish final rent and damages.

[ ] Immediate writ of possession authorized pursuant to Virginia Code § 8.01-129 based upon a judgment of default for [ ] a trustee's deed following foreclosure [ ] the nonpayment of rent [ ] immediate non-remediable termination.

DEFENDANT(S) PRESENT? [ ] YES [ ] NO

DATE ........ JUDGE

[ ] Rent, in the sum of $ ........ with interest ........
RATE(S) AND BEGINNING DATE(S)

and $ ........ late fee and $ ........ damages and ........

$ ........ costs and $ ........ civil recovery and $ ........ attorney's fees.

[ ]HOMESTEAD EXEMPTION WAIVED? [ ] YES [ ] NO [ ] CANNOT BE DEMANDED
[ ]JUDGMENT FOR [ ] NAMED DEFENDANT(S) [ ]
[ ]NON-SUIT [ ] DISMISSED [ ] DEFENDANT(S) PRESENT? [ ] YES [ ] NO

DATE ........ JUDGE

FORM DC-421 FRONT 07/08

## TO DEFENDANT: You are not required to appear; however, if you fail to appear, judgment may be entered against you. See the additional notice on the reverse about requesting a change of trial location and your right to prevent this unlawful detainer action through payment of amounts owed.

[ ] To dispute this case, you must appear on the return due to try this case

[✓] To dispute this case, you must appear on the return date for the judge to set another date for trial.

If you fail to appear and a default judgment is entered against you, a writ of possession may be issued immediately for possession of the premises.

Bill of Particulars ordered ........
DUE DATE

Grounds of Defense ordered ........
DUE DATE

ATTORNEY FOR PLAINTIFF(S)
CHRIS BEATLEY
703-548-7100
TELEPHONE NUMBER

ATTORNEY FOR DEFENDANT(S)
........
TELEPHONE NUMBER

FOR VA RESIDENTIAL LANDLORD AND TENANT ACT ONLY:

[ ] Defendant must pay:

$ ........ RENT OWED

into the court to be held in escrow by ........

[ ] Defendant must pay:

........ DATE

and any rents coming due prior to the next hearing date must also be paid into the court.

$ ........ NEXT DUE

........ DATE ........ JUDGE'S INITIALS

DISABILITY ACCOMMODATIONS for loss of vision, hearing, mobility, etc. Contact the court ahead of time.

MONEY JUDGMENT PAID OR SATISFIED PURSUANT TO ATTACHED NOTICE OF SATISFACTION

........ DATE
........ CLERK

HEARING DATE AND TIME

1/7/2014 @ 1:30 pm

1/24/14 @ 1:30 pm

**To the Defendant(s):**

(1) The preferred location for an Unlawful Detainer action is the city or county where the premises are located. If the plaintiff has filed this case in a city or county other than where the property you rent is located, you may object to the location. The court may transfer the case to the preferred location, if the court agrees with you. The court will award costs to you and may award attorney's fees to you if the court agrees with your objection. To object to the location of the suit, you must do the following:

- Prepare a written request which contains (a) this court's name, (b) the case number and the "return date" as shown on the other side of this form in the left column under the words "TO THE DEFENDANT(S)," (c) Plaintiff(s)' name(s) and your name(s), (d) "I move to object to venue of this case in this court because" and state the reasons for your objection and also state in which city or county the case should be tried, and (e) your signature and mailing address.

- File the written request in the clerk's office before the trial date (use the mail at your own risk) or give it to the judge when your case is called on the return date. Also send or deliver a copy to the plaintiff.

- If you mail your written request to the court, the clerk will notify you of the judge's decision.

(2) If you pay all rent and arrears, attorney's fees, late charges contracted for in a written rental agreement, interest and costs at or before the return date and time, you may prevent this unlawful detainer action pursuant to Virginia Code § 55-243. You may exercise this right only once every 12 months that you continue to live in the same place.

(3) You may tell your landlord that you want another person to receive a copy of this summons, and the landlord shall send a copy to that person. However, the person you identify will not, by receiving a copy of the summons, become a party to the case or be able to challenge the landlord's actions on your behalf. Virginia Code § 55-248.9:1.

I certify that I mailed a copy of this document to the defendants named therein at the address shown therein on

December 11, 2013
DATE

☒ PLAINTIFF          ☐ PLAINTIFF'S ATTORNEY

Fi. Fa. issued on ............................

Interrogatories issued on ............................

Garnishment issued on ............................

---

**RETURNS: Each defendant was served according to law, as indicated below, unless not found.**

Name ............................................

Address ............................  Tel. No. ............

[ ] Personal Service

[ ] Being unable to make personal service, a copy was delivered in the following manner:
  [ ] Delivered to family member (not temporary sojourner or guest) age 16 or older at usual place of abode of party named above after giving information of his purport. List name, age of recipient, and relation of recipient to party named above.
  ................................................

  [ ] Posted on front door or such other door as appears to be the main entrance of usual place of abode, address listed above. (Other authorized recipient not found.)

  [ ] Served on the Secretary of the Commonwealth

[ ] Not found                                    SERVING OFFICER

...................... for ...............................
DATE

---

Name ............................................

Address ............................  Tel. No. ............

[ ] Personal Service

[ ] Being unable to make personal service, a copy was delivered in the following manner:
  [ ] Delivered to family member (not temporary sojourner or guest) age 16 or older at usual place of abode of party named above after giving information of its purport. List name, age of recipient, and relation of recipient to party named above.
  ................................................

  [ ] Posted on front door or such other door as appears to be the main entrance of usual place of abode, address listed above. (Other authorized recipient not found.)

  [ ] Served on the Secretary of the Commonwealth

[ ] Not found                                    SERVING OFFICER

...................... for ...............................
DATE

**AFFIDAVIT—DEFAULT JUDGMENT**
**SERVICEMEMBERS CIVIL RELIEF ACT**
Commonwealth of Virginia    VA. CODE § 8.01-15.2

Case No. ..........................

*January 3, 2014 @ 1:30 pm.*
RETURN DATE AND TIME
[ ] Circuit Court    [X] General District Court
[ ] Juvenile and Domestic Relations District Court

*Prince William County*
CITY OR COUNTY

*Beeren & Barry Investments LLC* v./In re: *Chin, Akua Gyimah and All Unknown Occupants*

I, ..........*Riina    Mettas*.........., the undersigned affiant, states the following under oath:

[ ] The defendant/respondent        [ ] is in military service.        [ ] is not in military service.
PRINT NAME

The following facts support the statement above:

[X] The affiant is unable to determine whether or not the defendant/respondent is in military service.

..........*12/11/13*..........        ..........................
DATE        AFFIANT'S SIGNATURE

The above-named affiant personally appeared this day before the undersigned, and upon duly being sworn, made oath that the facts stated in this affidavit are true to the best of his or her knowledge, information and belief.

..........*12/11/13*..........        [ ] CLERK [ ] DEPUTY CLERK [ ] MAGISTRATE [ ] JUDGE [ ] INTAKE OFFICER
DATE

FOR NOTARY PUBLIC'S USE ONLY:
State of ..........*VA*..........        [ ] City [X] County of ..........*Fairfax*..........
Acknowledged, subscribed and sworn to before me this ....*11th*.... day of ....*December*...., 20 *13*

CAMILLE T. BARRY
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #335460
My Commission Expires June 30, 2015

..........................
NOTARY PUBLIC
(My commission expires: .............................)

**NOTICE REGARDING APPOINTMENT OF COUNSEL TO REPRESENT ABSENT SERVICEMEMBER:**
Where appointment of counsel is required pursuant to 50 U.S.C. app. § 521 or 522, the court may assess attorneys' fees and costs against any party, as the court deems appropriate, and shall direct in its order which of the parties to the case shall pay such fees and costs, except the Commonwealth unless it is the party that obtains the judgment.

<u>FOR COURT USE ONLY:</u>
[ ] **ORDER OF APPOINTMENT OF COUNSEL**
I find that appointment of counsel is required pursuant to 50 U.S.C. app. § 521 or 522 and therefore, I appoint the lawyer indicated below to represent the absent servicemember named as defendant/respondent above.

NAME, ADDRESS
OF COURT
APPOINTED
LAWYER        ..........................
NEXT HEARING DATE AND TIME
..........................
DATE
..........................
JUDGE

[ ] **STAY OF PROCEEDINGS**
I find that a stay of proceedings is required pursuant to 50 U.S.C. app. § 521 and, therefore, such a stay, for a minimum period of 90 days, is ordered until ..........................
NEXT HEARING DATE AND TIME

..........................
DATE        ..........................
JUDGE

VIRGINIA:

)
)
)
)
)
)
)

AFFIDAVIT

STATE OF VIRGINIA
COUNTY OF PRINCE WILLIAM, to wit:

Personally appeared before me a Notary Public, Riina Mettas, who being first duly sworn, deposes and states that she is the Office Manager of Beeren & Barry Investments, LLC, the Plaintiff and to the best of her knowledge and belief the facts hereinafter set forth are true: that Akua Gyimah Chin and All Unknown Occupants, the said Defendant(s) unlawfully detain(s) the premises located at 5981 Callie Furnace Ct., Manassas, VA 20112 from the Plaintiff by failing to vacate after a valid foreclosure sale; that the Plaintiff is owed $92.05 per day in damages for use and occupancy from the sale date of 12/5/2013; that the Plaintiff is entitled to possession of the premises; and that to the best for her knowledge and belief, the Defendant(s) is not a member of the Armed Forces of the United States of America.

_____

Subscribed and sworn before me this 11th day of December 2013.

_____
Notary Public

My commission expires:          CAMILLE T. BARRY
                                NOTARY PUBLIC
                                Commonwealth of Virginia
                                Reg. #335460
                                My Commission Expires June 30, 2015



5981 Callie Furnace Court
Manassas, Virginia  20112

January 24, 2014


Office of State Inspector General
Monroe Building, 7th Floor
101 N 14th Street
Richmond, VA 23219


Attention: State Inspector General - Michael F. A. Morehart

| | |
|---|---|
| Subject: | Camille T. Barry, Notary Registration #335460 |
| | Owner, Beeren & Barry Investments, LLC |
| | 11654 Plaza America Drive - #653 |
| | Reston, Virginia  20190 |
| | Telephone Number: (703) 450-0245 |
| | Case #13-17599 — Friday, January 24, 2014 at 1:30pm |
| | General District Court |
| | 9311 Lee Avenue |
| | Manassas, Virginia 20110 |
| |       AND |
| | Branch Banking & Trust Corporation (NYSE: BB&T):  one of the largest financial services holding companies in the U.S. with $182.7 billion in assets and market capitalization of $23.8 billion, as of June 30, 2013. Based in Winston-Salem, N.C., the company operates approximately 1,851 financial centers in 12 states and Washington, D.C., and offers a full range of consumer and commercial banking, securities brokerage, asset management, mortgage and insurance products and services. |


Dear State Inspector General Morehart:

It is with great difficulty that I inform you that I have submitted the name of one of your government officers for inquiry by the Secretary of the Commonwealth and investigation by the Attorney General of the Commonwealth of Virginia (copy of letters attached).  Please note that the name of Camille T. Barry, Owner/Manager of Beeren & Barry Investments, LLC, has been submitted for investigation as it relates to an egregious act that violates Virginia Code (§ 47.1-1 "Virginia Notary Act." – also see "The Notary Public Code of Professional Responsibility" and "A Handbook for Virginia Notaries Public").  Specifically, I am requesting that Camille T. Barry and her organization, Beeren & Barry Investments, LLC, cease and desist from any and all actions related to aforementioned case as Camille T. Barry is in violation of the following Virginia Codes:

- § 47.1-9. Oath of notary
- § 47.1-12. Powers
- § 47.1-15. Prohibitions
- § 47.1-28. Willful misconduct a misdemeanor
- § 47.1-30. Conflict of interests[1]

---

[1] Virginia Code Section 47.1-30 Conflict of Interests
No notary shall perform any notarial act with respect to any document, writing, or electronic document to which the notary or his spouse is a party, or in which either of them has a direct beneficial interest, or where the notary is a signatory or is named in the document to be notarized.  A notary nominated as a fiduciary in a will shall not, for that reason alone, be deemed a party to the will or to have a direct beneficial interest therein. Any notary who violates the provisions of this section shall be guilty of official misconduct.

As you know, the right to own real property has been one of the greatest freedoms Americans enjoy. In 2002, my husband (Benedict B. Chin) and I moved from Queens, New York to Virginia after the death of my father on the morning of September 11, 2001 in New York City. We jointly executed a contract for purchase of our dwelling at 5981 Callie Furnace Court Manassas Virginia 20112 (new construction) with a down payment of $116,000.00 plus paid to Branch Banking and Trust (BB&T); this purchase was not for investment and we are the primary owners (not renters or occupants) of our dwelling. Over the past eleven plus years, my husband and I have made timely payments of the mortgage in full to BB&T (payments totaling over $500K). It was discovered that BB&T separated the promissory note from the mortgage for our dwelling at 5981 Callie Furnace Court Manassas Virginia 20112, which violates UCC and Virginia Code.[2] BB&T was contacted about this issue but refused to take action to address and/or resolve the matter. For over six months BB&T was contacted to cure unresolved issues with the contract; however, BB&T refused to comply and instead engaged invalid foreclosure processes/procedures with Beeren & Barry Investments, LLC where they removed my husband's name from all documents relating to our dwelling; have not produced a Bill of Sale and while a UCC-1 Financial Statement had been filed in the County to secure our dwelling at 5981 Callie Furnace Court Manassas, Virginia 20112.

My husband and I, in good faith, and to privately resolve the matter, contacted BB&T on countless occasions to produce records, notes; specifically, the return of the original promissory note that was executed at the initiation of the contract, CUSIPS numbers and all account numbers for the past 12 years plus. It is necessary to have available, orderly, accurate records to prevent landowners from illegal foreclosures; defects in title; purchase and sale of property; and jeopardizing interest in property.[3] BB&T defaulted and has been in default for over 120 days.

Unfortunately, the recent trial regarding this case resulted in Beeren & Barry Investments, LLC being awarded the decision by the Judge when information regarding Fraud would not be allowed. Recently, my husband and I contacted the Postal Inspector to investigate Beeren & Barry Investments, LLC for using our dwelling address for their mail. Also, my husband and I have been paying all County taxes and insurance on our dwelling and it is up to date (this is all verifiable in County records).

I pray that you could provide assistance in a federal investigation of the foreclosure procedures currently taking place in Virginia relative to actions of banks and other financial institutions for mortgages, but specifically at it relates to this case with actions of BB&T and Beeren & Barry Investments, LLC. We are available at the above address for further discussion and/or additional information regarding this matter.

Respectfully,

A. Gyimah Chin

/Enclosures:

1. Copy of letter sent to Secretary of Commonwealth Levar Stoney (Express Mail #EM-595424862 US)
2. Copy of Affidavit dated – 11th day of December 2013
3. Copy of letter sent to Attorney General Mark R. Herring (Express Mail #EI-988928724 US)

Cc:   The President's Financial Fraud Enforcement Task Force
      ffetf@usdoj.gov

      Sherriff Glen Hill
      9311 Lee Avenue
      Manassas, Virginia  20110

---

[2] Carpenter v. Longan – 83 U.S. 271, 274 (1872); UCC9–102(65)
[3] Case #12-CH-43772, Class Action Lawsuit; C. Daniels, Plaintiff







# COMMONWEALTH of VIRGINIA

**NOTARY DIVISION**
**POST OFFICE BOX 1795**

*Secretary of the Commonwealth*

**RICHMOND, VIRGINIA 23218**

January 29, 2014

A Gyimah Chin
5981 Callie Furnace Ct
Manassas, VA 20112

Dear A. Gyimah Chin:

Thank you for notifying my office of the improper notarizations.

Pursuant to Section 47.1-24 of the *Code of Virginia*, we will contact the notary with a warning regarding the information you submitted. In the future, if they do not follow proper notary procedures their commission may be revoked.

Again, thank you for bringing this to my attention so that appropriate action can be taken.

Sincerely,

Jennifer Crown
Notary Director

**SECRETARY OF THE COMMONWEALTH**
NOTARY DIVISION
POST OFFICE BOX 1795
RICHMOND, VIRGINIA 23218-1795

A. Gyimah Chin
5981 Callie Furnace Ct
Manassas, VA 20112

Recd 1/14/14 src

20112548481

**Subject:** RE: Question regarding Notary Public in the Commonwealth of Virginia...

**From:** American Association of Notaries (info@usnotaries.com)

**To:** gyimahchin@yahoo.com;

**Date:** Wednesday, February 5, 2014 10:25 PM

(§ 47.130) Notaries may not perform any notarial act, which presents a conflict between their personal interest and their official duty. Under the Virginia Notary Act, a notary may not perform any notarial act with respect to any document if:

The notary is a party to the document

The notary's spouse is a party to the document

The notary is a signatory or is named in the document

The notary or his or her spouse has a "direct beneficial interest" in the document

According to the above citation it is apparent that the individual referenced in your question may not have properly interpreted this provision of Virginia Notary Law.

Customer Support Team

American Association of Notaries

8811 Westheimer Ste 207

Houston, Texas 77063

Ph  800-721-2663

Fax 800-721-2664

sales@usnotaries.com

http://www.usnotaries.com



 

**Confidentiality Notice:** This message is intended for the use of the individual or entity to which it is addressed, and may contain confidential information belonging to the sender which is legally privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately return this communication to the sender and delete the original message and any copy of it in your possession. This Association cannot provide you with legal or tax preparation advice because we are not attorneys. We can provide you with general information regarding the duties of notary public. Please consult the tax professional or attorney of your choice for such important issues.

**From:** G Chin [mailto:gyimahchin@yahoo.com]
**Sent:** Sunday, February 02, 2014 10:42 AM
**To:** members@usnotaries.com
**Subject:** Question regarding Notary Public in the Commonwealth of Virginia...

Good Day US Notaries Officer(s),

Thank you for the thorough information posted on your website; it is very helpful to Private Citizens. I am seeking clarification on an issue that relates to an Affidavit and Summons that I received where the Notary Public that signed (notarized) documents is named as the Owner and Plaintiff of the company that is filing a claim. By way of brief background, the documents that I received contained an incomplete Affidavit notarized for said Owner's Office Manager's signature (this issue has already been addressed with a warning to the Notary pursuant to Virginia Code Section 47.1-24, from the Office of the Secretary of the Commonwealth). Additionally, the same Notary/Owner/Plaintiff is named in the document as Party to the claim. Could you please provide clarification on this matter. Could a Notary Public notarize a document for which that Notary is the Owner of the Company and is one in the same Plaintiff filing a claim? I could provide any additional information that could help clarify this matter.

Thank you for your help.

G. Chin

-PRINCE WILLIAM GENERAL DISTRICT COURT
CIVIL DIVISION
9311 LEE AVENUE, SUITE 220
MANASSAS, VA 20110
703-792-6149

February 10, 2014

Akua Gyimah Chin
5981 Callie Furnace Court
Manassas, Virginia 20112

RE:  Motion to Dismiss Judgment GV13017599-00

You recently filed a Motion to Dismiss a Judgment entered on January 24, 2014 with the Court to be heard on February 14, 2014 at 1:30 p.m.  Court policy is that when without counsel plaintiff's or defendant's file a Motion, the motion has to be sent to a Judge for approval.  The Motion you filed on February 3, 2014 was reviewed by our Chief Judge and the Motion has been denied.  Therefore, the court date set up for February 14, 2014 will not go forward.  A copy of the judgment and Motion are attached for your records.

. If you have any questions, please feel free to contact the clerk's office at 703-792-6149.

Thank you,

Deputy Clerk – Civil Division



5981 Callie Furnace Court
Manassas, Virginia  20112

February 1, 2014

Office of the Secretary of the Commonwealth
P.O. Box 1795
Richmond, Virginia 23218-1795

Attention:  Notary Director Jennifer Crown

Subject:  Camille T. Barry, Notary Registration #335460; expiration date of June 30, 2015 (commissioned by the Commonwealth of Virginia)

Dear Director Crown:

Thank you for your prompt response to my January 20, 2014 inquiry regarding Notary Public and Owner of Beeren & Barry Investments, LLC, Camille T. Barry, and addressing concerns about procedures used in notarizing an affidavit for Beeren & Barry Investments, LLC relative to Unlawful Detainer.  I sincerely appreciate your taking the time from your very busy schedule to address this serious manner and issuing Ms. Barry an immediate warning pursuant to Section 47.1-24. [1]  In reviewing this section, I recognize that you have high regard for the standards, ethics and integrity associated with the Notary profession. It is evident that you respect the Notary Oath of Office and view Notaries Public as above reproach and that they should follow the Virginia Code "to the letter."  To this end, I am requesting your assistance in directing me to the appropriate Public Officer that could review potential Conflict of Interest as Ms. Barry is named as a Party (Owner and Plaintiff) to the transaction for which she notarized documents.[2]

---

[1] § 47.1-24.  Removal of notary by administrative process; surrender of commission; penalty.

A.   Whenever the Secretary shall have reason to believe that a notary has been guilty of official misconduct pursuant to this chapter, or is otherwise subject to removal from office, an evidentiary proceeding under the provisions of the Administrative Process Act (§ 2.2-4000 et seq.) shall be held.

B.   B through D. [Repealed.]

E.   If the Secretary determines that the notary is guilty of official misconduct or grounds exist for the removal of the notary and his case decision is not thereafter reversed or suspended by a court of law, the Secretary may issue an order removing the notary from office, suspending the notary from office for a period of time not to extend beyond the date of expiration of the notary's commission, or reprimanding the notary.

F.   Upon being notified that an evidentiary proceeding has been initiated under this section, the notary who is the subject of such a proceeding shall forthwith cease to serve as a notary for a period of sixty days, or until his case has been decided, whichever period shall be shorter.  If the Secretary finds that grounds for removal exist, such notary shall be further suspended from serving as a notary until the Secretary has made a final disposition of the case under subsection E of this section; however, no notarial act shall be deemed invalid solely by reason of having been performed by a notary who has been suspended pursuant to this subsection.

G.   Any notary ordered removed from office under this section shall forthwith mail or deliver his commission to the Secretary, who shall cancel the same. Any notary ordered suspended under this section shall forthwith surrender his commission to the Secretary for the duration of such suspension.

H.   [Repealed.]

   I.   Any notary failing to deliver his commission to the Secretary pursuant to an order of the Secretary under this section shall be guilty of a Class 3 misdemeanor.

[2] Per the American Association of Notaries (Conflict of Interest – Corporation, Partnership, Self-Employed), ... A notary public who is named as a party to the transaction or has a direct or indirect financial and/or beneficial interest in the document, no matter how small, is no longer impartial; and in such a situation, the notary must not perform the notarial act.  Notaries public who receive directly from a transaction connected with the notarial act any commission, fee, advantage, right, title, interest, cash, property, or other consideration exceeding in value the fees specified in state statute may not perform the notarial act.

For your convenience and reference, I am attaching a copy of a letter forwarded to the State Inspector General (copied to The President's Financial Fraud Enforcement Task Force and Prince William County Sheriff Glen Hill.)

As a Citizen of the Commonwealth of Virginia, I appreciate when our Public Officials demonstrate the level of integrity and professionalism as you have shown, Director Crown. During my recent phone inquiry with the Office of the Secretary of the Commonwealth, Director Margaret Sacks as well as members of your staff diligently and courteously handled my questions and returned my calls in a timely fashion. Please let them know that I genuinely appreciate their hard work and efforts; they are to be highly commended.

I plan to move forward with appropriate actions relating to this case and I pray that you could provide assistance in directing me to the correct office that handles Notary Public Conflict of Interest (as I understand this is not in your purview.) I have included the Commonwealth's Attorney for Prince William County in this letter for assistance as well. Once again, thank you for all of your efforts, Director Crown.

Respectfully,

A. Gyimah Chin

/Enclosure:      Copy of letter sent to Office of the Inspector General
                 Copy of your letter re: Camille T. Barry (dated 1/29/14)

Cc:    The President's Financial Fraud Enforcement Task Force
       ffetf@usdoj.gov

       Paul B. Ebert, Commonwealth's Attorney for Prince William County
       Prince William County Government
       1 County Complex Court, Prince William, VA 22192

5981 Callie Furnace Court
Manassas, Virginia 20112

January 24, 2014

Office of State Inspector General
Monroe Building, 7th Floor
101 N 14th Street
Richmond, VA 23219

Attention:  State Inspector General - Michael F. A. Morehart

Subject:        Camille T. Barry, Notary Registration #335460
                Owner, Beeren & Barry Investments, LLC
                11654 Plaza America Drive - #653
                Reston, Virginia 20190
                Telephone Number: (703) 450-0245
                Case #13-17599 — Friday, January 24, 2014 at 1:30pm
                General District Court
                9311 Lee Avenue
                Manassas, Virginia 20110
                      AND
                Branch Banking & Trust Corporation (NYSE: BB&T):  one of the largest financial services holding
                companies in the U.S. with $182.7 billion in assets and market capitalization of $23.8 billion, as of June
                30, 2013. Based in Winston-Salem, N.C., the company operates approximately 1,851 financial centers in
                12 states and Washington, D.C., and offers a full range of consumer and commercial banking, securities
                brokerage, asset management, mortgage and insurance products and services.


Dear State Inspector General Morehart:

It is with great difficulty that I inform you that I have submitted the name of one of your government officers for inquir
by the Secretary of the Commonwealth and investigation by the Attorney General of the Commonwealth of Virginia
(copy of letters attached).  Please note that the name of Camille T. Barry, Owner/Manager of Beeren & Barry
Investments, LLC, has been submitted for investigation as it relates to an egregious act that violates Virginia Code (§
47.1-1 "Virginia Notary Act." - also see "The Notary Public Code of Professional Responsibility" and "A Handbook for
Virginia Notaries Public").  Specifically, I am requesting that Camille T. Barry and her organization, Beeren & Barry
Investments, LLC, cease and desist from any and all actions related to aforementioned case as Camille T. Barry is in
violation of the following Virginia Codes:

- § 47.1-9. Oath of notary
- § 47.1-12. Powers
- § 47.1-15. Prohibitions
- § 47.1-28. Willful misconduct a misdemeanor
- § 47.1-30. Conflict of interests[1]

---

[1] Virginia Code Section 47.1-30 Conflict of interests
No notary shall perform any notarial act with respect to any document, writing, or electronic document to which the notary or his spouse is a party, or in which
of them has a direct beneficial interest, or where the notary is a signatory or is named in the document to be notarized.  A notary nominated as a fiduciary in a w
shall not, for that reason alone, be deemed a party to the will or to have a direct beneficial interest therein.  Any notary who violates the provisions of this sectio
shall be guilty of official misconduct.

As you know, the right to own real property has been one of the greatest freedoms Americans enjoy. In 2002, my husband (Benedict B. Chin) and I moved from Queens, New York to Virginia after the death of my father on the morning of September 11, 2001 in New York City. We jointly executed a contract for purchase of our dwelling at 5981 Callie Furnace Court Manassas Virginia 20112 (new construction) with a down payment of $116,000.00 plus paid to Branch Banking and Trust (BB&T); this purchase was not for investment and we are the primary owners (not renters or occupants) of our dwelling. Over the past eleven plus years, my husband and I have made timely payments of the mortgage in full to BB&T (payments totaling over $500K). It was discovered that BB&T separated the promissory note from the mortgage for our dwelling at 5981 Callie Furnace Court Manassas Virginia 20112, which violates UCC and Virginia Code.[2] BB&T was contacted about this issue but refused to take action to address and/or resolve the matter. For over six months BB&T was contacted to cure unresolved issues with the contract; however, BB&T refused to comply and instead engaged invalid foreclosure processes/procedures with Beeren & Barry Investments, LLC where they removed my husband's name from all documents relating to our dwelling; have not produced a Bill of Sale and while a UCC-1 Financial Statement had been filed in the County to secure our dwelling at 5981 Callie Furnace Court Manassas, Virginia 20112.

My husband and I, in good faith, and to privately resolve the matter, contacted BB&T on countless occasions to produce records, notes; specifically, the return of the original promissory note that was executed at the initiation of the contract, CUSIPS numbers and all account numbers for the past 12 years plus. It is necessary to have available, orderly, accurate records to prevent landowners from illegal foreclosures; defects in title; purchase and sale of property; and jeopardizing interest in property.[3] BB&T defaulted and has been in default for over 120 days.

Unfortunately, the recent trial regarding this case resulted in Beeren & Barry Investments, LLC being awarded the decision by the Judge when information regarding Fraud would not be allowed. Recently, my husband and I contacted the Postal Inspector to investigate Beeren & Barry Investments, LLC for using our dwelling address for their mail. Also, my husband and I have been paying all County taxes and insurance on our dwelling and it is up to date (this is all verifiable in County records).

I pray that you could provide assistance in a federal investigation of the foreclosure procedures currently taking place in Virginia relative to actions of banks and other financial institutions for mortgages, but specifically at it relates to this case with actions of BB&T and Beeren & Barry Investments, LLC. We are available at the above address for further discussion and/or additional information regarding this matter.

Respectfully,

A. Gyimah Chin
/Enclosures:

1. Copy of letter sent to Secretary of Commonwealth Levar Stoney (Express Mail #EM-595424862 US)
2. Copy of Affidavit dated – 11th day of December 2013
3. Copy of letter sent to Attorney General Mark R. Herring (Express Mail #EI-988928724 US)

Cc:    The President's Financial Fraud Enforcement Task Force
       ffetf@usdoj.gov

       Sherriff Glen Hill
       9311 Lee Avenue
       Manassas, Virginia  20110

---

[2] Carpenter v. Longan – 83 U.S. 271, 274 (1872); UCC9–102(65)
[3] Case #12–CH–43772, Class Action Lawsuit; C. Daniels, Plaintiff

FAX TRANSMITTAL

2/3/14

A. Eupmah Chin

203 - 576 - 7064 ( Mobile )

To: Office of the Secretary of the Commonwealth,
Office of Conflict of Interest - Notary Public
Attention: Notary Director Jennifer Crown

Fax: 804 - 756 - 9549

Copy of letter mailed to Commonwealth's
Attorney's Office

Please note that you will receive
this letter in the mail (original)

MARGARET SPICKS
504-692-0100

Thank you

ARR

**HP Officejet 7310**
Personal  Printer/Fax/Copier/Scanner

Log for
Benedic
703-670-8882
Oct  09  2001  6:00PM

## Last 30 Transactions

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| May  4 | 10:03PM | Received | | 0:45 | 0 | No  fax |
| May  5 | 1:41AM | Received | | 0:44 | 0 | No  fax |
| May  5 | 2:51AM | Received | | 0:45 | 0 | No  fax |
| May  10 | 10:54PM | Received | | 0:45 | 0 | No  fax |
| May  17 | 2:32AM | Received | | 0:44 | 0 | No  fax |
| May  23 | 3:56PM | Received | | 0:00 | 0 | Power  failure |
| May  29 | 6:08AM | Fax  Sent | 4025375731 | 0:32 | 1 | OK |
| May  29 | 6:11AM | Fax  Sent | 4025375731 | 0:32 | 1 | OK |
| May  31 | 5:27PM | Fax  Sent | 18664398602 | 0:58 | 2 | Error  350 |
| May  31 | 5:29PM | Fax  Sent | 18664398602 | 2:33 | 3 | OK |
| Jun  12 | 2:50AM | Received | | 0:00 | 0 | Power  failure |
| Jun  19 | 8:27PM | Received | 804  968  3762 | 0:45 | 3 | Power  failure |
| Jun  19 | 8:49PM | Received | 804  968  3762 | 0:36 | 3 | OK |
| Jun  19 | 9:06PM | Received | | 0:44 | 0 | No  fax |
| Jun  20 | 8:29AM | Fax  Sent | 8005914950 | 0:27 | 1 | OK |
| Jul  12 | 7:48PM | Received | | 0:00 | 0 | Power  failure |
| Jul  20 | 1:27AM | Fax  Sent | 19084319183 | 0:37 | 1 | OK |
| Jul  20 | 1:28AM | Fax  Sent | 19084319183 | 0:32 | 1 | OK |
| Jul  22 | 5:37AM | Received | | 0:00 | 0 | Power  failure |
| Jul  29 | 2:50AM | Received | | 0:45 | 0 | No  fax |
| Aug  11 | 9:42PM | Fax  Sent | 17574972802 | 0:32 | 1 | OK |
| Aug  12 | 5:44PM | Fax  Sent | 17182571048 | 1:00 | 2 | OK |
| Aug  12 | 5:48PM | Fax  Sent | 17182571048 | 0:53 | 2 | OK |
| Sep  16 | 12:00AM | Fax  Sent | 16095244530 | 0:43 | 2 | OK |
| Oct  6 | 9:54PM | Fax  Sent | 8047869549 | 0:30 | 1 | Jammed |
| Oct  6 | 9:55PM | Fax  Sent | 8047869549 | 0:40 | 2 | OK |
| Oct  6 | 10:33PM | Fax  Sent | 8047864239 | 2:19 | 7 | OK |
| Oct  6 | 10:51PM | Fax  Sent | 8047869549 | 1:17 | 3 | OK |
| Oct  9 | 5:56PM | Fax  Sent | 8047869549 | 1:31 | 5 | OK |
| Oct  9 | 5:58PM | Fax  Sent | 8047869549 | 1:32 | 5 | OK |

1   A. Gyimah Chin
    c/o 5981 Callie Furnace Court
2   Manassas, Virginia 20112

3

4                   PRINCE WILLIAM GENERAL DISTRICT COURT
5                             9311 Lee Avenue
                          Manassas, Virginia  20110
6

7

8   BEREEN ₹ BARRY INVESTMENTS LLC    )   VA CODE:
                                       )
9   ATT: CHRIS BEATLEY                 )
                                       )
10  11654 PLAZA AMERICA DRIVE #653     )        MOTION TO DISMISS JUDGEMENT
    RESTON, VA 20190                   )        AFFIDAVIT of A. Gyimah Chin
11          vs.                        )            AND COMPLAINT
                                       )
12  CHIN, AKUA GYIMAH                  )
                                       )   HEARING DATE: FEB 14, 2014
13   c/o 5981 CALLIE FURNACE court     )             1:30 pm
                                       )
14  MANASSAS, VIRGINIA 20112           )
                                       )
15                                     )
                                       )
16                                     )
                                       )
17                                     )

18              <u>MOTION TO DISMISS JUDGEMENT</u>

19      COMES NOW I, A. Gyimah Chin move the Court to dismiss the judgment awarded to

20  Beeren & Barry Investments, LLC pursuant to violation of Virginia Code.[1]   Every case

21  should be heard on its merits; the right to conduct discovery of facts and documents

22  known to the parties of the case is burdensome and expensive and requires reasonable

23  time to establish statements of facts relevant to the case.  I present the facts, the

24  whole facts and nothing but the facts as supported by the attached affidavit and

25

26  [1] Virginia Code Section 47.1-30 Conflict of Interests
    No notary shall perform any notarial act with respect to any document, writing, or electronic
27  document to which the notary or his spouse is a party, or in which either of them has a direct
    beneficial interest, or where the notary is a signatory or is named in the document to be
    notarized...  Any notary who violates the provisions of this section shall be guilty of official
28  misconduct.

This motion
is denied  Stu Stb  2-7-14

                                                                                  1

1  A. Gyimah Chin
   c/o 5981 Callie Furnace Court
2  Manassas, Virginia 20112

3

4                    PRINCE WILLIAM GENERAL DISTRICT COURT
                              9311 Lee Avenue
5                         Manassas, Virginia  20110

6

7

8   BEEREN ~ BARRY INVESTMENTS LLC  )  VA CODE:
                                    )
9   ATT: CHRIS BEATLEY              )
                                    )
10  11654  PLAZA AMERICA DRIVE #653 )     MOTION TO DISMISS JUDGEMENT
    RESTON, VA 20190                )     AFFIDAVIT of A. Gyimah Chin
11            vs.                   )           AND COMPLAINT
                                    )
12  CHIN, AKUA GYIMAH               )
                                    )
13  c/o 5981  CALLIE FURNACE COURT  )   HEARING DATE: FEB 14, 2014
                                    )              1:30 pm
14  MANASSAS, VIRGINIA 20112        )
                                    )
15                                  )
                                    )
16                                  )
                                    )
17 _____)

18              MOTION TO DISMISS JUDGEMENT

19      COMES NOW I, A. Gyimah Chin move the Court to dismiss the judgment awarded to

20  Beeren & Barry Investments, LLC pursuant to violation of Virginia Code.[1]   Every case

21  should be heard on its merits; the right to conduct discovery of facts and documents

22  known to the parties of the case is burdensome and expensive and requires reasonable

23  time to establish statements of facts relevant to the case.  I present the facts, the

24  whole facts and nothing but the facts as supported by the attached affidavit and

25

26  _____
    [1] Virginia Code Section 47.1-30 Conflict of Interests
27  No notary shall perform any notarial act with respect to any document, writing, or electronic
    document to which the notary or his spouse is a party, or in which either of them has a direct
    beneficial interest, or where the notary is a signatory or is named in the document to be
28  notarized...  Any notary who violates the provisions of this section shall be guilty of official
    misconduct.

1   complaint of Chin, Akua Gyimah before the Great I Am that I Am.  I respectfully submit

2   that that the court DISMISS JUDGEMENT WITH PREJUDICE Case No 13-17599 (Beeren & Barry

3   Investments, LLC v Chin, Akua Gyimah) pursuant to Virginia Code violations.  As it is

4   a financial burden to Chin, Akua Gyimah, it is requested that this complaint proceed

5   without prepayment of any associated costs, fees, or security.

6                                  <u>THE PARTIES</u>

7        A. Gyimah Chin is a Private Party in the state of Virginia and owner of 5981

8   Callie Furnace Court, Manassas, Virginia  20112.

9        Beeren & Barry Investments, LLC is a real estate investment firm operating

10  throughout the Washington, D.C. metropolitan area and the State of Virginia since

11  1994. They buy, remodel and sell $30 million worth of real estate annually. They

12  specialize in the purchase and sale of foreclosure and investment properties.

13

14       The foregoing are the facts, the whole facts and nothing but the facts before

15  the Great I Am that I Am.

16

17

18                        Dated this  3rd  day of February, 2014

19

20                        Respectfully submitted,

21

22                        A. Gyimah Chin
                          c/o 5981 Callie Furnace Court
23                        Manassas, Virginia 20112

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF MAILING</u>

I certify that I mailed a copy of the Complaint against Beeren & Barry Investments, LLC to 11654 Plaza America Drive, #653 Reston, Virginia  20190, Attention:  Chris Beatley, on this 3rd day of February, 2014.

Dated this ___3rd___ day of February, 2014

Respectfully submitted,

_____
A. Gyimah Chin
c/o 5981 Callie Furnace Court
Manassas, Virginia 20112

PRINCE WILLIAM COUNTY
SHERIFF'S OFFICE

# EVICTION NOTICE

Glendell Hill, Sheriff

Telephone (703) 792-6070

Pursuant to a Writ of Possession issued by the Prince William County General District/Circuit Court, Docket # _____ , you are advised to vacate the premises known as _____ by _____ , _____ or it will be necessary to evict you. Failure on your part to move your personal property/belongings prior to the time of eviction will cause your property/belongings to be placed on the public right of way at _____ or stored by the plaintiff for 24 hours. During the 24 hours after the eviction you have the right to reasonable access to remove your property. After 24 hours the plaintiff may dispose of your property as he sees fit.

On the reverse of this form is a copy of sections 55-237.1 and 55-248.38:2 of the Code of Virginia, which provide the lawful authority for this action.

*eviction*
*February 18, 2014*

_____
Deputy Sheriff

Your not being home/not answering the door, will in no way delay the eviction. When possible a key will be obtained from the owner, otherwise the door will be forced open and your property/belongings moved out.

S.O. #5 (6/01)

**NO FURTHER NOTICE!**

**MUST VACATE BY 8 AM!**

§ 55-237.1. Authority of sheriffs to store and sell personal property removed from residential premises; recovery of possession by owner; disposition or sale. — Notwithstanding the provisions of § 8.01-156, when personal property is removed from a residential premises pursuant to an action of unlawful detainer or ejectment, or pursuant to any other action in which personal property is removed from the premises in order to restore such premises to the person entitled thereto, the sheriff shall cause such personal property to be placed into the public way. The tenant shall have the right to remove his personal property from the public way during the twenty-four hour period after eviction. Upon the expiration of the twenty-four hour period after eviction, the landlord shall remove, or dispose of, any such personal property remaining in the public way.

At the landlord's request, the sheriff shall cause such personal property to be placed into a storage area designated by the landlord, which may be the dwelling unit. The tenant shall have the right to remove his personal property from the landlord's designated storage area at reasonable times during the twenty-four hours after eviction from the premises or at such other reasonable times until the landlord has disposed of the property as provided herein. During that twenty-four hour period and until the landlord disposes of the remaining personal property of the tenant, the landlord and the sheriff shall not have any liability for the loss of such personal property. If the landlord fails to allow reasonable access to the tenant to remove his personal property as provided herein, the tenant shall have a right to injunctive relief and such other relief as may be provided by law.

Any property remaining in the landlord's storage area upon the expiration of the twenty-four hour period after eviction may be disposed of by the landlord as the landlord sees fit or appropriate. If the landlord receives any funds from any sale of such remaining property, the landlord shall pay such funds to the account of the tenant and apply same to any amounts due the landlord by the tenant, including the reasonable costs incurred by the landlord in the eviction process described in this section or the reasonable costs incurred by the landlord in selling or storing such property. If any funds are remaining after application, the remaining funds shall be treated as security deposit under applicable law.

The notice posted by the sheriff setting the date and time of the eviction, pursuant to § 8.01-470, shall provide notice to the tenant of the rights afforded to tenants in this section and shall include in the said notice a copy of this statute attached to, or made a part of, this notice. (2001, c. 222.)

§ 55-248.38:2. Authority of sheriffs to store and sell personal property removed from residential premises; recovery of possession by owner; disposition or sale. — Notwithstanding the provisions of § 8.01-156, when personal property is removed from a dwelling unit pursuant to an action of unlawful detainer or ejectment, or pursuant to any other action in which personal property is removed from the dwelling unit in order to restore the dwelling unit to the person entitled thereto, the sheriff shall cause such personal property to be placed into the public way. The tenant shall have the right to remove his personal property from the public way during the twenty-four hour period after eviction. Upon the expiration of the twenty-four hour period after eviction, the landlord shall remove, or dispose of, any such personal property remaining in the public way.

At the landlord's request, the sheriff shall cause such personal property to be placed into a storage area designated by the landlord, which may be the dwelling unit. The tenant shall have the right to remove his personal property from the landlord's designated storage area at reasonable times during the twenty-four hours after eviction from the landlord's or at such other reasonable times until the landlord has disposed of the property as provided herein. During that twenty-four hour period and until the landlord disposes of the remaining personal property of the tenant, the landlord and the sheriff shall not have any liability for the risk of loss for such personal property. If the landlord fails to allow reasonable access to the tenant to remove his personal property as provided herein, the tenant shall have a right to injunctive or other relief as otherwise provided by law.

Any property remaining in the landlord's storage area upon the expiration of the twenty-four hour period after eviction may be disposed of by the landlord as the landlord sees fit or appropriate. If the landlord receives any funds from any sale of such remaining property, the landlord shall pay such funds to the account of the tenant and apply same to any amounts due the landlord by the tenant, including the reasonable costs incurred by the landlord in the eviction process described in this section or the reasonable costs incurred by the landlord in selling or storing such property. If any funds are remaining after application, the remaining funds shall be treated as security deposit under applicable law.

The notice posted by the sheriff setting the date and time of the eviction, pursuant to § 8.01-470, shall provide notice to the tenant of the rights afforded to tenants in this section and shall include in the said notice a copy of this statute attached to, or made a part of, this notice. (2001, c. 222.)



relationships that work

# green tree

PO Box 6172
Rapid City, SD 57709-6172

Tel 1-800-643-0202
GTServicing.com

+ 0513879 000000015 09GTR1 0926735 GG
HAROLD L HARRIS IV
50 LOVELL RD
HOLDEN MA 01520-1305
|l|lillil|llllll|l|ll||ll||ll||l||llllll|l||l|llll||lll||l|ll|ll||l|||ll|l

September 30, 2014

Bank of America, N.A. ("Bank of America") Account Number: 103222734
Green Tree Servicing LLC ("Green Tree") New Account Number: 828127605

Dear Harold L Harris IV:

Welcome to Green Tree. The servicing of your mortgage loan – that is, the right to collect loan payments from you - is being transferred from Bank of America to Green Tree effective September 16, 2014. The servicing transfer does not affect any terms or condition of your current mortgage loan, other than the terms directly related to the servicing of your loan. You can mail your payments directly to Green Tree at the following address: Green Tree Servicing LLC, PO Box 7169, Pasadena, CA 91109-7169.

Green Tree will begin posting payments to your account on or about September 29, 2014. If your payment was received by Green Tree or Bank of America prior to the posting date, we will apply your payment as of the day that it was received and no late fee will be assessed to your account.*

You should be receiving your first statement from Green Tree by mail the week of October 6, 2014. If you have any questions about the transfer of your mortgage loan servicing to Green Tree, we encourage you to visit:

**www.GTServicing.com/welcome**

There you can register to securely access your account online, make a payment, establish a recurring electronic mortgage loan payment and obtain answers to frequently asked questions.

We are pleased to have you as a new customer. The following pages include more detailed information about this transfer and our services. If you need information regarding your account you can:
1) Visit our website at GTServicing.com.
2) Call us toll-free at 1-800-643-0202.
3) Make your inquiry to us at: Green Tree Customer Service Dept, PO Box 6172, Rapid City, SD 57709-6172.

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

* Please note: If you had an automatic payment(s) set up through Bank of America, your transaction was cancelled as part of the transfer of servicing to Green Tree. You can easily make a payment or reestablish a recurring automatic loan payment on our website: GTServicing.com.

## NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred, effective September 16, 2014. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

Bank of America, N.A. ("Bank of America") is now collecting your payments.  Bank of America will stop accepting payments received from you after September 15, 2014.

Green Tree Servicing LLC ("Green Tree") will collect your payments going forward. Your new servicer will start accepting payments received from you on September 16, 2014.

Send all payments due on or after September 16, 2014 to Green Tree at this address:

**Green Tree Servicing LLC
PO Box 7169
Pasadena, CA 91109-7169**

If you have any questions for either your present servicer, Bank of America, or your new servicer, Green Tree, about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:
Bank of America
1-800-669-6607
PO Box 5170
Simi Valley, CA  93062-5170

New Servicer:
Green Tree
Customer Service
1-800-643-0202
PO Box 6172
Rapid City, SD 57709-6172

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way:

The transfer of servicing will affect the terms of or the continued availability of any mortgage life or disability insurance or other types of optional insurance products.

You should do the following to maintain coverage:

You will need to contact the company providing the product directly for continued coverage or enrollment.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.


Green Tree                                          September 30, 2014
New Servicer                                        Date


This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

## ADDITIONAL IMPORTANT INFORMATION

**Payment Processing**
You will be receiving your monthly statement from Green Tree within the next twenty-five days. If your payment is due prior to receiving a statement please send your payment to the address below with your new Green Tree account number noted on the memo line. After receiving your first Green Tree statement, please destroy any Bank of America payment coupons and begin using the coupon attached to the bottom of the monthly statement. Please be sure to include your new Green Tree account number and send any future payments made after September 15, 2014 to the following address:

Green Tree Servicing LLC
PO Box 7169
Pasadena, CA 91109-7169

**Automatic Payments Deductions**
As a result of the transfer of servicing, if you participate in Automatic Clearing House (ACH) payments, also known as Auto Pay, it will be canceled as of the transfer date. If you wish to re-establish or set up Auto Pay payments with Green Tree, please create or log into your account at GTServicing.com to access the Auto Payment link. After the transfer of servicing date, you will be able to self-enroll in this automated payment program which will automatically debit your monthly payment. You are also able to enroll by printing Auto Pay authorization forms from the website, enter your information and either mail in or fax to Green Tree for processing.

Green Tree Servicing LLC
PO Box 6172
Rapid City, SD 57709-6172

**Bill Payment Services**
If your payments currently are made through a military allotment process, or a third-party bill payment service (including online banking services), please inform your vendor or financial institution of the following:

- Your nine digit Green Tree Account # 828127605.
- Change of payee to Green Tree Servicing LLC.
- The new payment mailing address is:

Green Tree Servicing LLC
PO Box 7169
Pasadena, CA 91109-7169

If you currently have future dated Pay By Phone payment(s) set up with Bank of America, these transactions were canceled upon transfer of servicing to Green Tree. If you would like to set up future Pay by Phone payments with Green Tree, please contact our Customer Service Department at 1-800-643-0202.

**Loan Modifications**
If you are currently in an active trial modification or have a modification review underway, this information will be forwarded to Green Tree so it can continue the process with you. Please call Green Tree at 1-800-643-0202 after the loan transfer date if you have questions about your modification.

**Payoffs**
Payoff checks sent via regular mail, or via United States Postal Service overnight delivery, sent after September 15, 2014, should be sent to the following address:

Green Tree Servicing LLC
Dept CH 9052
Palatine, IL 60055-9052

Payoff checks sent via UPS/FedEx/Airborne Priority Mail, sent after September 15, 2014, should be sent to the following address:

Green Tree Servicing LLC
Attn: Payoff 9052
5505 N Cumberland Ave. Suite 307
Chicago, IL 60656

RESPA Transfer Letter, 12/14/2013                                                    LTR-017

**Insurance Loss Payee**
The mortgagee clause of your homeowners insurance policy, and if applicable your flood insurance policy, needs to be updated to reflect Green Tree Servicing LLC as a loss payee. Please have your insurance agent update your policy with the information listed below. If your loan or line of credit is in a second lien position, in addition to the mortgagee clause below, your policy should also still have a separate mortgagee clause for the lender in the first lien position. Proof of insurance can be faxed to 1-866-263-8962 or mailed to Green Tree Servicing LLC at the following address:

Green Tree Servicing LLC
its affiliates and/or assigns
PO Box 979282
Miami FL 33197-9282

**Customer Service**
Any questions, complaints or inquiries you have regarding your loan may always be directed in writing to Green Tree Customer Service Department at the below-referenced address or by calling the toll-free phone number at 1-800-643-0202, between 7:00 a.m. and 8:00 p.m. CST, Monday through Friday and between 7:00 a.m. and 1:00 p.m. CST, on Saturday. You can also access our website at GTServicing.com 24 hours a day. The website allows convenient, secure access to your basic account information, and allows you to make payments on your account, obtain payoff quotes and insurance information. The website will be available to you shortly after the servicing transfer day. You may also contact Green Tree by writing to us at the following address:

Green Tree
PO Box 6172
Rapid City, SD 57709-6172

Green Tree has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information: PO Box 6176, Rapid City, SD 57709-6176

**Fair and Accurate Credit Transactions Act Notice -** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.



# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: W265949MA
Date: JULY 15, 2005

Creditor: HOMEBRIDGE MORTGAGE CORP
Address: 60 OAK DRIVE, SYOSSET, NEW YORK 11704

Borrower(s): HAROLD L. HARRIS IV, SHAUNA HARRIS

Address: 50 LOVELL ROAD, HOLDEN , MASSACHUSETTS 01520

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price<br>The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 8.991 % | $ 507,559.07 | $ 241,719.49 | $ 749,278.56 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due (Monthly Beginning) | Number of Payments | Amount of Payments ** | When Payments Are Due (Monthly Beginning) | Number of Payments | Amount of Payments ** | When Payments Are Due (Monthly Beginning) |
|---|---|---|---|---|---|---|---|---|
| 36 | 1,281.33 | 09/01/05 | | | | | | |
| 6 | 2,076.18 | 09/01/08 | | | | | | |
| 317 | 2,172.00 | 03/01/09 | | | | | | |
| 1 | 2,169.78 | 08/01/35 | | | | | | |

____ DEMAND FEATURE: This obligation has a demand feature.

_X_ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
____ Credit life insurance and credit disability _X_ Property Insurance ____ Flood Insurance ____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.

SECURITY: You are giving a security interest in: 50 LOVELL ROAD, HOLDEN , MASSACHUSETTS 01520
____ The goods or property being purchased _X_ Real property you already own.

FILING FEES: $

LATE CHARGE: If payment is more than 15 days late, you will be charged 3.000 % of the payment.* * Principal and Interest XXXXXX

PREPAYMENT: If you pay off early, you
____ may _X_ will not have to pay a penalty.
____ may _X_ will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
____ may ____ may, subject to conditions _X_ may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

_X_ "e" means an estimate ____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

Harold L. Harris IV 7/15/05
Applicant HAROLD L. HARRIS IV Date

Shauna Harris 7/15/05
Applicant SHAUNA HARRIS Date

Applicant ________ Date
Applicant ________ Date

Applicant ________ Date
Applicant ________ Date

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

DocMagic eForms 800-649-1362
www.docmagic.com

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (MADE IN COMPLIANCE WITH FEDERAL LAW)

| | |
|---|---|
| Lender/Broker | HOMEBRIDGE MORTGAGE BANKERS |
| Loan No.: | W266943MA |
| Borrower(s): | HAROLD HARRIS |
| | SHAUNA HARRIS |
| Property Address: | 60 LOVELL RD |
| | HOLDEN, MA 01520 |

Date: 07/15/05

☒ Initial Disclosure estimated at time of application    ☐ Final Disclosure based on contract terms

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you assuming the annual percentage rate does not change. | AMOUNT FINANCED The amount of credit provided to you or on your behalf as of loan closing. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled including this annual percentage rate does not change. |
|---|---|---|---|
| E 9.600 % | $ E 507882.45 | $ E 241393.39 | $ E 749260.78 |

## YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS BEGINNING |
|---|---|---|---|---|---|
| 39 | 1891.33 | 09/01/2005 | | | |
| 6 | 2078.15 | 09/01/2008 | | | |
| 319 | 2172.00 | 03/01/2009 | | | |

* Includes Mortgage Insurance Premiums, Includes Taxes, Hazard Insurance or Flood Insurance.

☐ **DEMAND FEATURE:** This loan transaction has a demand feature.

☒ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.

☒ **VARIABLE RATE FEATURE:** Your loan contains a Variable Rate Feature. Disclosures about the Variable Rate Feature have been provided to you separately.

**THE INDEX IS THE SIX MONTH LIBOR**
**AS FOUND IN THE WALL STREET JOURNAL**

**SECURITY INTEREST:** You are giving a security interest in:
☐ the goods or property being purchased.   ☒ real property you already own.

**FILING OR RECORDING FEES:** $ 259.00

**LATE CHARGE:** If a payment is more than   15   days late, you will be charged $   25.63   /   2   % of the principal and interest past due.

**PREPAYMENT:** If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

**INSURANCE:** Credit life, accident, health or loss of income insurance is not required in connection with this loan. This loan transaction requires the following insurance:
☒ Hazard Insurance   ☐ Flood Insurance   ☐ Private Mortgage Insurance   ☐ Mutual Mortgage Insurance
Borrower(s) may obtain hazard and flood insurance through any person of his/her choice, provided said carrier meets the requirements of the Lender. If Borrower desires Property Insurance to be obtained through the Lender's designated agency, the cost will be set forth in a separate insurance statement furnished by the Lender.

**ASSUMPTION:** Someone buying your house
☐ may   ☐ may, subject to conditions,   ☒ may not assume the remainder of your loan on the original terms.

See your contract documents for additional information regarding nonpayment, default, right to accelerate the maturity of the obligation, prepayment rebate and penalties, and the Lender's policy regarding assumption of the obligation.
☒ all dates and numerical disclosures except late payment disclosures are estimates.   E   means an estimate.

The undersigned hereby acknowledge receiving and reading a completed copy of this disclosure along with copies of the documents provided. The delivery and signing of this disclosure does not constitute an obligation on the part of the Lender to make, or the Borrower(s) to accept, the loan as disclosed.

Read, acknowledged and accepted this _____ day of _____    By: Jason Ferrante

_Harold L Harris_                                    _Shauna Harris_
HAROLD HARRIS                                    SHAUNA HARRIS

Page 1 of 2

RECORDING REQUESTED BY:
Bank of America, N.A.
Attn Home Retention Division: CA6-919-02-46
400 National Way
Simi Valley, CA 93065

Loan # 103222734                    *SPACE ABOVE THIS LINE FOR RECORDER'S USE*

## LOAN MODIFICATION AGREEMENT
### Fixed Interest Rate Recorded

This Loan Modification Agreement ("Agreement"), effective on the date set forth below, between HAROLD L HARRIS, IV and SHAUNA HARRIS (the "Borrower(s)") and Bank of America, N.A. (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 15th day of July 2005 and in the amount of $264,256.92 and recorded on the 20th day of July 2005 in Book No. 36838, Page No. 275 as Document No. 00116637 in the Official Records of Worcester County, in the State of MASSACHUSETTS, and the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 50 LOVELL ROAD, HOLDEN, MA 1520.

*See Exhibit A attached hereto and made a part hereof.*

If my representations in Section 1 below continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property and (2) the Note secured by the Mortgage, and any previous modifications to the Mortgage and/or Note. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents.

I have received two copies of this Agreement. After I sign and return one notarized copy of this Agreement to Lender, I will retain the other copy for my records. This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

**My Representations and Covenants.**      I certify, represent to Lender, covenant and agree:

I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   A.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A Permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

   B.   I have provided documentation for all income that I receive and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

   C.   Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

   D.   I have made all payments required under a trial period plan or loan workout plan.

Acknowledgements and Preconditions to Modification   I understand and acknowledge that:

   A.   If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents; and

   B.   I understand that the Loan Documents will not be modified unless and until (1) I return a signed and notarized copy of this Agreement to Lender, (2) the Lender accepts this Modification by signing it, and (3) the Modification Effective Date (as defined in Section 3 below) has occurred. I further understand and agree that Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

**The Modification.** If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on January 1, 2013 (the "Modification Effective Date"). I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan or loan workout plan, this modification will not take effect. The Maturity Date will be: 1st day of August 2035.

A.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan).The new principal balance of my Note will be $327,167.13 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means that interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B.  Interest at the rate of 7.000% will begin to accrue on the New Principal Balance as of 1st day of December 2012 and the first new monthly payment on the New Principal Balance will be due on 1st day of January 2013. My payment schedule for the modified Loan is as follows:

Interest at the rate of 7.000% will begin to accrue on the Interest Bearing Principal Balance as of 1st day of December 2012 at the yearly rate of (See Below Schedule), and the first new monthly payment on the Interest Bearing Principal Balance will be due on 1st day of January 2013. My payment schedule for the modified loan is as follows:

| Months | Interest Rate | Type of Payment | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on |
|--------|---------------|-----------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|
| 272 | 7.000% | Principal and Interest | $2,402.27 | $342.08 may adjust periodically | $2,744.35 | 1/1/2013 |

\*   If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.B. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

C.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

**Additional Agreements.**          Lender and I agree to the following:

A.   All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing.

B.   This Agreement supersedes the terms of any modification, forbearance, trial period plan, or loan workout plan that I previously entered into with Lender.

C.   I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D.   The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.   All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.   I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

*The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to*

*pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.*

*If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.*

*Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.*

G.  On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand.

H.  On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J.  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement; or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. A corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign such corrected Agreement, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

—   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and
—   existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint,
—   MI 48501-2026, (888) 679-MERS. If the loan has been registered with MERS, MERS (1) has only
—   legal title to the interests granted by the borrower in the mortgage and acts solely as nominee for Lender
—   and Lender's successors and assigns, (2) has the right: to exercise any or all of those interests, including,
—   but not limited to, the right to foreclose and sell the Property; and (3) has the right to take any action
    required of Lender, including, but not limited to, releasing and canceling the mortgage loan.

M.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this shall be referred to as the "Documents." I will deliver the Documents within ten (10) days after I receive Lender's written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

HAROLD L HARRIS, IV

_____
SHAUNA HARRIS

Date _12/6/12_

Date _12/6/12_

STATE OF _Massachusetts_

County of _Middlesex_

On _December 6, 2012_ Before me, _James D. Lukowiak_ Notary Public, personally appeared _Harold L. Harris, IV and Shauna Harris_

Personally known to me, (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.        Signature: _____

**JAMES D. LUKOWIAK**
**Notary Public**
**COMMONWEALTH OF MASSACHUSETTS**
**My Commission Expires March 21, 2014**

Do Not Write Below This Line

.............................................................................................................
THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

By: _____        Dated: _____

STATE OF _____

County of _____

On _____ Before me, _____ Notary Public, personally appeared

_____

Personally known to me, (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.        Signature: _____

MIN: 1002711-0000014787-4                           Loan Number: W265949MA

## InterestOnly ADJUSTABLE RATE NOTE
(Six-Month LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JULY 15, 2005                    Holden                    Massachusetts
        [Date]                    [City]                              [State]

        50 LOVELL ROAD, HOLDEN , MASSACHUSETTS 01520
                        [Property Address]

**1.   BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $ 248,000.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HOMEBRIDGE MORTGAGE CORP, A NEW YORK CORPORATION
I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.200 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
    **(A) Time and Place of Payments**
    I will make a payment on the         1st         day of every month, beginning on SEPTEMBER 1, 2005
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on AUGUST 1, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 60 OAK DRIVE, SYOSSET, NEW YORK 11704

or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    My initial monthly payment will be in the amount of U.S. $1,281.33        before the First Principal and Interest Payment Due Date, thereafter it will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
    **(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of AUGUST,  1, 2008 , and the adjustable interest rate I will pay may change on that day every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

CONV
● DC-ARM InterestOnly Note
FE-4275 (0410)

Initials _____

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 200/1000 percentage points ( 6.200 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.200 % or less than 6.200 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.200 % or less than 6.200 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after AUGUST 1, 2008 .

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all the unpaid principal is known as a "Full prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time.

[X] If this box is checked, no prepayment penalty will be charged on this loan.

[ ] If this box is checked, I have selected a loan which has a prepayment penalty. The Prepayment Penalty Addendum attached hereto and made a part hereof defines the terms of the prepayment penalty. I understand that by agreeing to pay a prepayment penalty I acknowledge that my interest rate and/or fees are lower than they would be without a prepayment penalty.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Witness To Both:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Harold Harris IV                                    (Seal)
HAROLD L. HARRIS IV                                -Borrower

Shauna Harris                                       (Seal)
SHAUNA HARRIS                                      -Borrower

                                                    (Seal)
                                                   -Borrower

PAY TO THE ORDER OF
Countrywide Document Custody Services, A Division of Treasury Bank
WITHOUT RECOURSE
HOMEBRIDGE MORTGAGE CORP.
                                                    (Seal)
BY                                                 -Borrower
FRANK McBRIEN, TREASURER

PAY TO THE ORDER OF                    PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE                       WITHOUT RECOURSE
                                       COUNTRYWIDE HOME LOANS, INC.  [Sign Original Only]
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA        BY
CONV                                   David A. Spector
@ GC-ARM InterestOnly Note      BY     Managing Director
PE-4270 (0410)                  LAURIE RIDDER      Page 3 of 3
                                VICE PRESIDENT

HOMEBRIDGE MORTGAGE BANKERS

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

Mortgage Applied for: [ ] VA [ ] FHA [X] Conventional [ ] USDA/Rural Housing Service [ ] Other

Agency Case Number:

Lender Case Number: W285940MA

| Amount | Interest Rate | No. of Months | Amortization Type |
|---|---|---|---|
| $ 248000.00 | 6.280 % | 360 | [ ] Fixed Rate [ ] GPM [ ] Other (explain): [X] ARM (type): 838316-I 3/8 LIBOR ARM INTEREST ( |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state & ZIP): 60 LOVELL RD, HOLDEN, WORCESTER MA 01520

No. of Units: 1

Legal Description of Subject Property (attach description if necessary): SECTION-BLOCK-LOT:

Year Built: 1948

Purpose of Loan: [ ] Purchase [ ] Construction [ ] Other (explain): [X] Refinance [ ] Construction-Permanent

Property will be: [X] Primary Residence [ ] Secondary Residence [ ] Investment

*Complete this line if construction or construction-permanent loan.*

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

*Complete this line if this is a refinance loan.*

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| 2004 | $ 271000.00 | $ 269470.00 | 11 Cash-Out/Debt Conso | Cost: $ |

Title will be held in what Name(s): HAROLD HARRIS & SHAUNA HARRIS

Manner in which Title will be held: JOINTLY

Estate will be held in: [ ] Fee Simple [ ] Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain):

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | HAROLD HARRIS | SHAUNA HARRIS |
| Social Security Number | 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 | 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 |
| Home Phone (incl. area code) | 508-829-3469 | 508-829-3469 |
| DOB (MM/DD/YYYY) | 02/09/1965 | 09/05/1975 |
| Yrs. School | | |
| Marital status | [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated |
| Dependents | no. 0 ages | no. 0 ages |
| Present Address (street, city, state, ZIP) | [ ] Own [X] Rent No. Yrs. 31 — 60 LOVELL RD HOLDEN, MA 01520 | [X] Own [ ] Rent No. Yrs. 31 — 60 LOVELL RD HOLDEN, MA 01520 |
| Mailing Address, if different from Present Address | 60 LOVELL RD Holden, MA 01520 | 60 LOVELL RD Holden, MA 01520 |

*If residing at present address for less than two years, complete the following:*

Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs.

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer [ ] Self Employed | JOS A. BANKS 500 HANOVER PIKE HOLDEN, MA 01520 | BJ'S WHOLESALE 2088 Bay St TAUNTON, MA 02780 |
| Yrs. on this job | 0Y5M | 2Y11M |
| Yrs. employed in this line of work/profession | 6 | 6 |
| Position/Title/Type of Business | STORE MANAGER | PAYROLL ASSISTANT |
| Business Phone (incl. area code) | 508-651-1702 | 508-651-6805 |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer [ ] Self Employed | TARGET STORES PAYROLL DEPT 330 TURNPIKE RD WESTBOROUGH, MA 01581 | |
| Dates (from - to) | 08/02-10/04 | - |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | MANAGER | |
| Business Phone (incl. area code) | 508-366-1426 | |
| Name & Address of Employer [ ] Self Employed | | |
| Dates (from - to) | - | - |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | | |
| Business Phone (incl. area code) | | |

HLH IV SH

HOMEBRIDGE MORTGAGE BANKERS

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | $ 3750.00 | $ 2739.00 | $ 6489.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 1883.19 | $ 1281.33 |
| Bonuses | | | | Other Financing (P&I) | | 623.17 |
| Commissions | | | | Hazard Insurance | 58.42 | 58.42 |
| Dividends/Interest | | | | Real Estate Taxes | 218.68 | 222.82 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other | | |
| Total | $ 3750.00 | $ 2739.00 | $ 6489.00 | Total | $ 1828.29 | $ 2183.74 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income: Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☒ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by: | $ |
| List checking and savings accounts below | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Stocks & Bonds (Company name/number & description) | $ |
| Life insurance net cash value | $ |
| Face amount: $ | |
| Subtotal Liquid Assets | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 311100.00 |
| Vested interest in retirement fund | $ |
| Net worth of business(es) owned (attach financial statement) | $ |
| Automobiles owned (make and year) | $ |
| Other Assets (itemize) | $ |
| Total Assets a. | $ 311100.00 |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company: WELLS FARGO<br>Acct. no. 6514759 | $ Payment/Months 70.00 / 213 | $ 14941.00 |
| Name and address of Company: CHASE<br>Acct. no. 18228017691509 | $ Payment/Months *259.00 / 26 | $ *6768.00 |
| Name and address of Company: SOVEREIGN BK<br>Acct. no. 317406703782037? | $ Payment/Months 284.00 / 25 | $ 6821.00 |
| Name and address of Company: DMCCB<br>Acct. no. 645860087609 | $ Payment/Months *73.00 / 40 | $ *2897.00 |
| Name and address of Company: SALLIE MAE 3RD PTY LSC<br>Acct. no. 1655883?181F | $ Payment/Months 25.00 / 105 | $ 2625.00 |
| Name and address of Company: SALLIE MAE 3RD PTY LSC<br>Acct. no. 1659894?102F | $ Payment/Months 24.00 / 105 | $ 2520.00 |
| Name and address of Company: See Sch Of Liabilities<br>Acct. no. | $ Payment/Months 2613.19 | $ 294076.78 |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job-Related Expense (child care, union dues, etc.) | $ | |
| Total Monthly Payments | $ 3298.19 | |
| Net Worth (a minus b) $ -18648.78 | Total Liabilities b. | $ 329748.78 |

Freddie Mac Form 65 01/04<br>
1003FCS2 02/03<br>
HAROLD HARRIS

Page 2 of 4

Printed by The Loan Handler from Ellie Mae, Inc. • www.elliemae.com

Fannie Mae Form 1003 01/04

HH HV

# HOMEBRIDGE MORTGAGE BANKERS

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 50 LOVELL RD | SFR | $ 311160.00 | $ 277172.76 | $ | $ 2162.19 | $ 270.19 | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | $ | 311160.00 | $ 277172.76 | $ | $ 2162.16 | $ 270.10 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 295045.76 |
| e. Estimated prepaid items | 1169.15 |
| f. Estimated closing costs | 6333.20 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) 0.500 | 1240.00 |
| i. Total costs (add items a through h) | 303818.11 |
| j. Subordinate financing | 62000.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 246000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 246000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -3181.89 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | | X | | X |
| b. Have you been declared bankrupt within the past 7 years? | | | X | | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | X | | X |
| d. Are you a party to a lawsuit? | | | X | | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | | X | | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | | X | | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | | X | | X |
| h. Is any part of the down payment borrowed? | | | X | | X |
| i. Are you a co-maker or endorser on a note? | | | X | | X |
| j. Are you a U.S. citizen? | | X | | X | |
| k. Are you a permanent resident alien? | | | X | | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | | X | | X | |
| m. Have you had an ownership interest in a property in the last three years? | | X | | X | |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | PR | | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | SP | | SP | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Harold Z. Harris* | 7/15/05 | X *Shauna Harris* | 7/15/05 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [ ] I do not wish to furnish this information. | CO-BORROWER | [ ] I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity | [ ] Hispanic or Latino   [X] Not Hispanic or Latino | Ethnicity | [ ] Hispanic or Latino   [X] Not Hispanic or Latino |
| Race | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [X] White | Race | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White |
| Sex | [ ] Female   [X] Male | Sex | [X] Female   [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Jason Ferrante | HOMEBRIDGE MORTGAGE BANKERS |
| [ ] Face-to-Face Interview | Interviewer's Signature    Date    7/15/05 | 44 OAK DRIVE |
| [ ] Mail | | SYOSSET, NY 11791 |
| [X] Telephone | Interviewer's Phone Number (incl. area code) | |
| [ ] Internet | (516) 998-4200 | |

Freddie Mac Form 65   01/04
Uniform Residential Loan Application
HAROLD HARRIS
Page 3 of 4
Printed by The Loan Handler from Elie Mae, Inc. — www.elliemae.com
Fannie Mae Form 1003 01/04



## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: HAROLD HARRIS | Agency Case Number: |
| --- | --- | --- |
| | Co-Borrower: SHAWNA HARRIS | Lender Case Number: W265949MA |

### LIABILITIES ADDENDUM

| Creditor's Name Address/City/State/Zipcode | Account Number | Payment | Months Left To Pay | Balance |
| --- | --- | --- | --- | --- |
| CABECDT/GEMB | 6019180937287078 | *61.00 | 33 | *2040.00 |
| SM SERVICING | 529732676101F | 50.00 | 32 | 1600.00 |
| DELL FINANCIAL SVCS/CI | 7945012902658699 | *34.00 | 32 | *1102.00 |
| HSBC NV | 330008906356 | 47.00 | 20 | 942.00 |
| HSBC NV | 975001047342 | 21.00 | 36 | 736.00 |
| CBUSASEARS | 35940403 | 33.00 | 20 | 674.00 |
| HSBC NV | 010018026449 | 18.00 | 38 | 563.00 |
| THD~TARGET | 928730117690 | 25.00 | 10 | 246.00 |
| LANE BRYANT | 163268937360972 | 10.00 | 17 | 171.00 |
| HFC - USA | 4200103921 | *141.00 | 57 | *8066.00 |
| FST PREMIER | 4610078705979144 | 24.00 | 32 | 770.00 |
| *R.E. Loan: ACCREDITED HOME LENDER | 406189437 | *1553.19 | 0 | *220083.87 |
| *R.E. Loan: MORTGAGE LENDERS NETWORK, U | 9000086457 | *599.00 | 0 | *57088.89 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

Borrower's Signature: x Harold A. Harris IV   Date 7/15/05     Co-Borrower's Signature: Shawna Harris   Date 7/15/05

Freddie Mac Form 65   01/04        Page 4 of 4        Fannie Mae Form 1003   01/04

Printed by The Loan Handler from E3c Edge, Inc. • www.elfcc24.com

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: HAROLD HARRIS | | Agency Case Number |
|---|---|---|---|
| | Co-Borrower: SHAUNA HARRIS | | Lender Case Number: W265949MA |

### LIABILITIES ADDENDUM

| Creditor's Name Address/City/State/Zipcode | Account Number | Payment | Months Left To Pay | Balance |
|---|---|---|---|---|
| TOTAL: | | 2613.19 | | 294076.76 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

X Harold J. Harris  7/15/05   Shauna Harris  7/15/05

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. | Borrower:<br>HAROLD L. HARRIS IV | Agency Case Number: |
|---|---|---|
| Mark B for Borrower or C for Co-Borrower. | Co-Borrower:<br>SHAUNA HARRIS | Lender Case Number:<br>W265949MA |

Under Massachusetts statute, Mass GEN L Ch 184, Section 17B you, the Borrower, are entitled to know the following:

1. The responsibility of the attorney for the Lender is to protect the interest of the Lender.

2. You, the Borrower, may at your own expense, engage an attorney of your own selection to represent your interests in this transaction.

The approximate expiration date of the Note is   AUGUST 1, 2035   .

The rate of interest charged is        6.200 %.

Please be aware that as of the expiration date of the Note, we, the Lender, may demand payment of said Note, may rewrite the Note by agreement at a greater or lesser rate of interest, or may, by agreement, allow payments to be made on said Note at the same, or a lesser or greater rate of interest.

| I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq. | | | |
|---|---|---|---|
| Borrower's Signature<br>x | Date<br>7/15/05 | Co-Borrower's Signature<br>x | Date<br>7/15/05 |



Blc 40344 Pg: 25   Doc ID# 000103222734MN35

10 3222734

Blc 40344 Pg: 25  Doc: ASM
Page 1 of 1   11/14/2006 02:41 PM

## ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Homebridge Mortgage Corp

holder of a real estate mortgage

From:  Harold L. Harris IV and Shauna Harris

To:  Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Homebridge Mortgage Corp

Dated:  July 15, 2005

Recorded with the Worcester County (Worcester District) Registry of Deeds in Book 36838 Page 275

property at:  50 Lovell Street, Holden, MA 01520

for value received and other good and valuable consideration paid assigns said mortgage and the note and claim secured thereby to:

Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-AB4

whose address is 101 Barclay Street, New York, NY 10286

In witness whereof, the said Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Homebridge Mortgage Corp, has caused its seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by M. KELLY MICHEL, 1ST VICE PRESIDENT, its 1ST VICE PRESIDENT, hereto duly authorized, effective the 16 day of NOV, 2006

Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Homebridge Mortgage Corp

By:
Its  M. KELLY MICHEL, 1ST VICE PRESIDENT

STATE OF  TEXAS
COUNTY  COLLIN

Then personally appeared the above named  M. KELLY MICHEL, 1ST VICE PRESIDENT   of Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Homebridge Mortgage Corp, and acknowledged the foregoing instrument to be his free act and deed in such capacity and the free act and deed of Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Homebridge Mortgage Corp, before me

Notary Public
My commission expires: May 5, 2010

SANDRA L. RIVERS
My Commission Expires
May 5, 2010

ATTEST: WORC. Anthony J. Vigliotti, Register

*Harris*

W265949MA

(CW SuB)

103222734

After Recording Return To:
HOMEBRIDGE MORTGAGE CORP
60 OAK DRIVE
SYOSSET, NEW YORK 11704
Loan Number: W265949MA

WORCESTER DISTRICT
REGISTRY OF DEEDS
RECEIVED & RECORDED
INST# ___ 00116637
BK 36835 PG 275
TIME 10:23 AM
DATE 7/20/05
ANTHONY J. VIGLIOTTI, REGISTER

**TIME STAMP**

―――――――――――― [Space Above This Line For Recording D:

# MORTGAGE

MIN: 1002711-0000014787-4

610 103222734 D2 001 001

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated JULY 15, 2005                    , together with all Riders to this document.
(B)  "Borrower" is HAROLD L. HARRIS IV AND SHAUNA HARRIS

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is HOMEBRIDGE MORTGAGE CORP

Lender is a                                                                                          organized
and existing under the laws of NEW YORK
Lender's address is 60 OAK DRIVE, SYOSSET, NEW YORK 11704

(E)  "Note" means the promissory note signed by Borrower and dated JULY 15, 2005
The Note states that Borrower owes Lender TWO HUNDRED FORTY-EIGHT THOUSAND AND
00/100                                          Dollars (U.S. $ 248,000.00          ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2035
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Borrower Initials: HLHIV SH _____ _____ _____ _____ _____

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  *DocMagic eForms* 800-649-1362
Form 3022 01/01                                    Page 1 of 13                              *www.docmagic.com*

Ms3022.mzm 1.tem

(H)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider       [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider               [ ] Planned Unit Development Rider  [X] Other(s) [specify]
[ ] 1-4 Family Rider            [ ] Biweekly Payment Rider          Exhibit "A"

(I)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   "Escrow Items" means those items that are described in Section 3.

(M)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY   of   WORCESTER                                                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Borrower Initials: _____  ____  ____  ____  ____  ____

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which currently has the address of   50  LOVELL  ROAD

[Street]

HOLDEN                                  , Massachusetts      01520         ("Property Address"):
[City]                                                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

Borrower Initials: HLH JV  SH _____ _____ _____ _____

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree

Borrower Initials: HLH VCSHH

Ms3022.mzm 4.tem

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

Borrower Initials: HLH IV  SHH  ___ ___ ___ ___ ___

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower Initials: HLH IV ________ ________ ________ ________ ________

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying

Borrower Initials: _HLH IV_ _[signature]_ _____ _____ _____ _____

Ma3022.mzm.7.tem

the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or

Borrower Initials: _HLH-IV_  _[signature]_  _____  _____  _____  _____

rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.

Borrower Initials: HLAIV

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter

Borrower Initials: HLHW ___ ___ ___ ___ ___

the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be

Borrower Initials: HLHW GH

Ma3022.mzm.11.tem

entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HAROLD L HARRIS IV   -Borrower

_____ (Seal)
SHAUNA HARRIS   -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

Witness:

Witness:

Commonwealth of Massachusetts

County of  WORCESTER

On this   15th  day of   July,  2005                      , before me, the undersigned notary public,
personally appeared  HAROLD  L.  HARRIS  IV,  SHAUNA  HARRIS

proved to me through satisfactory evidence of identification, which were   MA  DL

to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she)
signed it voluntarily for its stated purpose.

☐   (as partner for
    a corporation)

☐   (as                                              for
                                                          , a corporation)

☐   (as attorney in fact for
    the principal)

☐   (as                                              for
                                                          , (a) (the)
                      )

_____
                                   Notary Public

JOHN W. KYGER
Notary Public
Commonwealth of Massachusetts
My Commission Expires Jul 12, 2007

Notary Public (Printed Name)

(Seal)              My commission expires: _____

HLHIV

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  DocMagic *eForms* 800-649-1362
Form 3022 01/01                              Page 13 of 13                            www.docmagic.com
Ma3022 mrm.13 tem

After Recording Return To: HOMEBRIDGE  MORTGAGE  CORP
60 OAK DRIVE
SYOSSET, NEW YORK 11704
Loan Number: W265949MA
MIN: 1002711-0000014787-4

Prepared By:

——————————————— [Space Above This Line For Recording Data] ———————————————

DOC ID #:

## InterestOnly ADJUSTABLE RATE RIDER

### (Six-Month LIBOR Index (As Published in The Wall Street Journal) - Rate Caps)

THIS  InterestOnly  ADJUSTABLE  RATE  RIDER  is  made  this  15th
day of JULY    2005    , and is incorporated into and shall be deemed  to  amend  and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of
the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
HOMEBRIDGE MORTGAGE CORP, A NEW YORK CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument
and located at:
50 LOVELL ROAD, HOLDEN , MASSACHUSETTS 01520
[Property Address]

THE  NOTE  CONTAINS  PROVISIONS  ALLOWING  FOR  CHANGES  IN  MY
INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE
AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE I MUST PAY.

CONV
● BC-ARM Rider
FE-4279 (0410)                    Page 1 of 4                    Initials:

## Exhibit A

Property Address:  50 Lovell Road, Holden, Massachusetts 01520

The land with the buildings and improvements thereon on the southeasterly side of Lovell Road, Holden, Worcester County, Massachusetts, at a corner of the land now or formerly of Raddin and at the westerly corner of the premises;

Thence N. 33 degrees E. by Lovell Road seventy-three (73) feet to the land formerly of Fowler;

Thence S. 48 degrees by said Fowler land eighty-five (85) feet, more or less, to land formerly of Davis;

Thence S. 33 1/4 degrees W. by said Davis land seventy-three (73) feet to said Raddin land;

Thence N. 48 degrees W. by said Raddin land eighty-five (85) feet, more or less, to the place of beginning.

Excepted from the above premises is the portion thereof consisting of approximately four hundred forty-eight and five tenths (448.5) square feet conveyed by B.B. Wilbur to Herbert V. Lindsay Jr. and June M. Lindsay by a deed dated April 15, 1974, and recorded with the Worcester District Registry of Deeds in Book 5539, Page 187 (See Plan Book 399, Plan 108).

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Worcester South Registry of Deeds in Book 34211, Page 294.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of   6.200   %. The Note provides for changes in the interest rate and the monthly payments, as follows:    .

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay will change on the        1st          day of AUGUST,  2008  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 200/1000        percentage points (  6.200  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

CONV
• BC-ARM Rider
FE-4279 (0410)                    Page 2 of 4                    Initials:

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 9.200 % or less than 6.200 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.200 % or less than 6.200 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after AUGUST, 2008 .

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:
Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

CONV
• BC-ARM Rider
FE-4279 (0410)                    Page 3 of 4                    Initials: _HLH_ ᴵⱽ

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____ (Seal)
HAROLD L HARRIS IV                                      - Borrower

_____ (Seal)
SHAUNA HARRIS                                           - Borrower

_____ (Seal)
                                                        - Borrower

_____ (Seal)
                                                        - Borrower

CONV
● BC-ARM Rider
FE-4279 (0410)                      Page 4 of 4

relationships that work
# green tree

PO Box 6172                                    Tel 1-800-643-0202
Rapid City, SD 57709-6172                      GTServicing.com

⋆ 0513879 000002692 09GTR5 0926737 EE
HAROLD L HARRIS IV                             September 29, 2014
SHAUNA HARRIS
50 LOVELL RD
HOLDEN MA 01520-1305

**Re: Green Tree Servicing LLC ("Green Tree") Account No.: 828127605**
**Creditor: CWABS, Inc., Asset-Backed Certificates Trust 2005-AB4**

Dear Valued Customer:

The servicing of your account was transferred from Bank of America, N.A. to Green Tree on September 16, 2014. We are pleased to welcome you to Green Tree.

As your new servicer for the referenced account, Green Tree is required to inform you of the following important notice regarding your rights under federal law:

**AS OF THE DATE OF THIS LETTER, THE AMOUNT OF THE DEBT IS $352,517.91. BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, CONTACT CUSTOMER SERVICE AT THE ADDRESS OR TOLL-FREE NUMBER LISTED ABOVE.**

**UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION OF THE DEBT, WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS OF RECEIVING THIS NOTICE, WE WILL OBTAIN VERIFICATION OF THE DEBT (OR OBTAIN A COPY OF A JUDGMENT, IF THE DEBT HAS BEEN REDUCED TO JUDGMENT) AND MAIL THE VERIFICATION TO YOU. IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, WE WILL ALSO PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

To ensure timely posting of your payments, please send all payments to your new servicer at the address indicated below:

**Green Tree Servicing LLC**
**PO Box 7169**
**Pasadena, CA 91109-7169**

Debt Validation Letter – General, 11/18/2013                          LTR-020

We at Green Tree are honored to serve you.  If you need to contact us or have any questions, please call Customer Service toll-free at 1-800-643-0202, from 7:00 a.m. to 8:00 p.m. Central, Monday through Friday, or 7:00 a.m. to 1:00 p.m. Central on Saturdays, or write to us at PO Box 6172, Rapid City, South Dakota 57709-6172.

Respectfully,

Green Tree

**This communication is from a debt collector. It is an attempt to collect a debt and any information obtained will be used for that purpose.**

## MASSACHUSETTS - NOTICE OF DEFAULT

Ditech Financial LLC
800-643-0202
1555 W Walnut Hill Ln
Irving, TX 75038-3702

**ditech.**
a Walter company

Certified Mail Receipt No. 9314 8200 1910 0046 3686 54

HAROLD L. HARRIS IV
CHARLES PROCTOR
249 MAIN ST
OXFORD MA 01540-2356

> NOTICE OF DEFAULT
> AND
> RIGHT TO CURE DEFAULT

Date of Notice: 02/09/2016
Creditor: Ditech Financial LLC

Account No: 828127605

Credit Transaction: Loan Secured by Real Property

Dear Borrower:

You are now in default on the above referenced credit transaction. You have the right to correct this default within thirty (30) days from the date of this Notice.

If you cure the default, you may continue with the contract as though you did not default.

Your default consists of: **Failure to submit your monthly payments due 08/01/2013 through 02/01/2016.**

Cure of default: Within thirty (30) days from the date of this notice you may cure your default by sending the total amount of **$85,696.63** which includes **$216.18** in late fees or you may cure your default by completing a modification or repayment agreement arranged through Ditech Financial LLC ("Ditech") by contacting the Collection Department at the above-referenced address.

Creditor's Rights: If you do not cure your default in the time allowed by taking action as stated above, the creditor may exercise any or all of our remedies provided by law and in the Note. These remedies may include foreclosure on the real property securing the account. You may be held personally liable under state law, if any, for any deficiency balance not realized from the sale of the property.

If you fail to cure the default within (30) days from the date of this notice, the maturity of this account is accelerated and full payment of all amounts due under the agreement is required without further notice from us. Please review your mortgage or deed of trust for any right you may have to reinstate your account after acceleration but prior to the earlier of (a) five days before the sale of the property under any power of sale in the Security Instrument or (b) entry of judgment enforcing the Security Instrument, by paying the Creditor all sums then due as if no acceleration had occurred. You have the right to bring a court action to assert the non-existence of a default or any other defense available of yours to acceleration and sale. You may also have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense available to you.

If this default is not cured, Ditech will report the defaulted account to any appropriate credit reporting agency.

If you have any questions, contact Ditech at 800-643-0202 (phone) or 866-870-9919 (fax) Monday through Friday between the hours of 8 a.m. and 6 p.m. Central Time. You may also contact Ditech in writing at the above-referenced address.

If this default was caused by your failure to make payments, and you want to pay by mail, send a certified check, money order or cashier's check. DO NOT SEND CASH.

If you are unable to cure the default due to an involuntary loss of employment or other reason, counseling assistance may be available to you from certain agencies that are HUD-approved mortgage counseling agencies. You may contact us to get the name of the mortgage counseling agency that is closest to you.

If you are a servicemember or a dependent of a servicemember, you may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. Sec. 501 et seq.) regarding your interest rate and the risk of foreclosure. In addition, counseling for covered servicemembers is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

Sincerely,


Ditech



This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.



**ditech.**
a Walter company

P O Box 6172
Rapid City, SD 57709-6172
1(800) 643-0202

**ESCROW ACCOUNT
DISCLOSURE STATEMENT**

* 0610023 000000005 09CP12 0054133
HAROLD HARRIS IV
SHAUNA HARRIS
CHARLES PROCTOR
249 MAIN ST
OXFORD MA 01540-2356

Your account is past due. The date through which your account is paid is 08/01/2013

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - ACCOUNT HISTORY
STATEMENT OF ACTUAL ESCROW ACCOUNT ACTIVITY**
Compare it to the Annual Escrow Account Disclosure Statement-Projections
which was sent to you last year on 05/27/14

ACCOUNT NUMBER: 828127605
PAST YEARS PAYMENT BREAKDOWN:

May 2014 THROUGH August 2015        DATE: 02/09/16

Prin & Int Pymt          2402.27
Escrow Pymt               357.68
Non Escrow Pymt             0.00
TOTAL PAYMENT:           2759.95

| MONTH | PAYMENTS TO ESCROW PROJECTED | ACTUAL | PAYMENTS FROM ESCROW PROJECTED | DESCRIPTION | ACTUAL | DESCRIPTION | ESCROW BALANCE PROJECTED | ACTUAL | |
|---|---|---|---|---|---|---|---|---|---|
| May 14 E |  | 357.68 PMT |  |  | 0.00 |  |  | 3141.12 | SB |
| Jun 14 E |  | 357.68 PMT |  |  | 0.00 |  |  | 3498.80 | |
| Jul 14 E |  | 357.68 PMT |  |  | 0.00 |  |  | 3856.48 | |
| Aug 14 E |  | 357.68 PMT |  |  | 0.00 |  |  | 4214.16 | |
| Sep 14 E |  | -4401.40 |  |  | 0.00 |  |  | 4571.84 | |
| Oct 14 E |  | 357.68 PMT |  |  | 788.40 | CITY/TOWN/BOROU |  | 170.44 | |
| Nov 14 E |  | 357.68 PMT |  |  | 0.00 |  |  | -240.28 | |
| Dec 14 E |  | 357.68 PMT |  |  | 0.00 |  |  | 117.40 | |
| Jan 15 E |  | 357.68 PMT |  |  | 780.88 | CITY/TOWN/BOROU |  | 475.08 | |
| Feb 15 E |  | 357.68 PMT |  |  | 0.00 |  |  | 51.90 | |
| Mar 15 E |  | 357.68 PMT |  |  | 0.00 |  |  | 409.58 | |
| Apr 15 E |  | 357.68 PMT |  |  | 780.88 | CITY/TOWN/BOROU |  | 767.26 | |
| May 15 E |  | 357.68 PMT |  |  | 0.00 |  |  | 344.08 | |
| Jun 15 E |  | 357.68 PMT |  |  | 0.00 |  |  | 701.76 | |
| Jul 15 E |  | 357.68 PMT |  |  | 1214.00 | HAZARD/FIRE |  | 1059.44 | |
| Jul 15 |  |  |  |  | 805.62 | CITY/TOWN/BOROU |  | -602.50 | LP |
| Aug 15 E |  | 357.68 PMT |  |  | 0.00 |  |  | -244.82 | |
| TOTALS |  | 963.80 |  |  | 5873.78 |  |  |  | |

LAST YEAR, WE ANTICIPATED THAT PAYMENTS FROM YOUR ESCROW ACCOUNT WOULD BE MADE DURING THIS PERIOD EQUALING $0.00. UNDER FEDERAL LAW, YOUR LOWEST MONTHLY BALANCE (LP) SHOULD NOT HAVE EXCEEDED $0.00 OR 1/6 OF THE ANTICIPATED PAYMENTS FROM YOUR ESCROW ACCOUNT, UNLESS YOUR MORTGAGE DOCUMENTS OR STATE LAW SPECIFIES A LOWER AMOUNT.  UNDER YOUR MORTGAGE DOCUMENTS OR STATE LAW, YOUR LOWEST MONTHLY BALANCE SHOULD NOT HAVE EXCEEDED $0.00.
YOUR ACTUAL LOWEST ESCROW BALANCE WAS $-602.50.

AN (E) INDICATES AN ESTIMATE WAS USED BECAUSE PAYMENTS AND/OR DISBURSEMENTS HAVE NOT BEEN POSTED FOR THE MONTH INDICATED.  A (P) INDICATES THE PAYMENT HAS BEEN POSTED FOR THE MONTH INDICATED. AN ASTERISK (*) INDICATES A DIFFERENCE IN EITHER THE AMOUNT OR DATE OF THE ANTICIPATED PAYMENTS FROM ESCROW AND THE ACTUAL PAYMENTS FROM ESCROW. "SB" EQUALS STARTING BALANCE. "PMT" IDENTIFIES PAYMENT ACTIVITY. "INT" INDICATES AN ESCROW INTEREST CREDIT AMOUNT. THE INFORMATION PROVIDED DOES NOT REQUIRE ANY ACTION ON YOUR PART. IF YOU HAVE ANY QUESTIONS, PLEASE CALL OUR TOLL FREE NUMBER (800) 643-0202.

**SHORTAGE ADJUSTMENT NOTIFICATION**

| ANALYSIS DATE | LOAN NUMBER | SHORTAGE AMOUNT |
|---|---|---|
| 02/09/16 | 828127605 | -1292.81 |

AN ESCROW ANALYSIS HAS BEEN PERFORMED ON YOUR ACCOUNT, AND YOUR ESCROW ACCOUNT HAS A SHORTAGE OF $-1292.81. THE SHORTAGE HAS BEEN SPREAD OVER THE NEXT 27 MONTHLY PAYMENTS.  IF YOUR SHORTAGE OF $-1292.81 IS PAID PRIOR TO THE EFFECTIVE DATE OF 04/01/2016, YOUR PAYMENT WILL BE ADJUSTED TO $2757.44 IF NO FURTHER ACTIVITY OCCURS ON YOUR ACCOUNT. PLEASE NOTE THAT THE NEW PAYMENT AMOUNT MAY NOT BE REFLECTED ON YOUR NEXT BILLING STATEMENT IF IT IS ALREADY IN PROCESS.



Detach and return this portion with remittance

NAME: **Harold Harris IV**
+ 0610023 000000005 09CP12 0054133

Continue of Account:   828127605
For ESCROW DISCLOSURE STATEMENT

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS

ACCOUNT NUMBER: 828127605          April 2016   THROUGH   March 2017          DATE: 02/09/16

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED UPON PAYMENTS ANTICIPATED TO
BE MADE FROM YOUR ACCOUNT.

```
--------PROJECTED  ESCROW DISBURSEMENTS--------
              CITY/TOWN/BOROU          3048.09
              HAZARD/FIRE              1214.00
   TOTAL PROJECTED ESCROW DISBURSEMENTS:   4262.09   ESCROW PAYMENT CALCULATION:  4262.09 / 12 = 355.17
```

| MONTH | TO ESCROW | FROM ESCROW | PROJECTED PAYMENTS DESCRIPTION | ESCROW BALANCE PROJECTED | REQUIRED |
|---|---|---|---|---|---|
| | | | ACTUAL STARTING BALANCE | 734.90 | |
| | LESS ESCROW FUNDS PREPAID INTO PROJECTED MONTHS | | | 0.00 | |
| | | | ADJ STARTING BALANCE | 734.90 | 2027.71 |
| Apr 16 | 355.17 | 718.43 | CITY/TOWN/BOROU | 371.64 | 1664.45 |
| May 16 | 355.17 | 0.00 | | 726.81 | 2019.62 |
| Jun 16 | 355.17 | 0.00 | | 1081.98 | 2374.79 |
| Jul 16 | 355.17 | 805.62 | CITY/TOWN/BOROU | -582.47 | 710.34 |
| Jul 16 | | 1214.00 | HAZARD/FIRE | | |
| Aug 16 | 355.17 | 0.00 | | -227.30 | 1085.51 |
| Sep 16 | 355.17 | 0.00 | | 127.87 | 1420.68 |
| Oct 16 | 355.17 | 805.61 | CITY/TOWN/BOROU | -322.57 | 970.24 |
| Nov 16 | 355.17 | 0.00 | | 32.60 | 1325.41 |
| Dec 16 | 355.17 | 0.00 | | 387.77 | 1680.58 |
| Jan 17 | 355.17 | 718.43 | CITY/TOWN/BOROU | 24.51 | 1317.32 |
| Feb 17 | 355.17 | 0.00 | | 379.68 | 1672.49 |
| Mar 17 | 355.17 | 0.00 | | 734.85 | 2027.66 |
| TOTALS | 4262.04 | 4262.09 | | | |

CUSHION SELECTED BY SERVICER: 710.34

YOUR ENDING ESCROW BALANCE FROM THE LAST MONTH OF THE ACCOUNT HISTORY IS $734.90, YOUR STARTING BALANCE ACCORDING TO THIS
ANALYSIS SHOULD BE $2027.71. THIS MEANS YOU HAVE A SHORTAGE OF $-1292.81. THIS SHORTAGE WILL BE COLLECTED FROM YOU OVER A PERIOD
OF 12 MONTHS OR MORE UNLESS THE SHORTAGE IS LESS THAN 1 MONTHS DEPOSIT, IN WHICH CASE WE HAVE THE ADDITIONAL OPTION OF
REQUESTING PAYMENT WITHIN 30 DAYS. WE HAVE DECIDED TO COLLECT IT OVER 27 MONTHS.

PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE NEXT ESCROW ACCOUNTING
COMPUTATION YEAR.

### NEW MONTHLY PAYMENT EFFECTIVE 04/01/2016

| | |
|---|---|
| Prin & Int Pymt | 2402.27 |
| Escrow Pymt | 355.17 |
| Shortage Pymt | 47.88 |
| Deficiency Pymt | 0.00 |
| Surplus Spread | 0.00 |
| Non Escrow Pymt | 0.00 |
| TOTAL | 2805.32 |

FOR ADJUSTABLE RATE MORTGAGES: THE TERMS OF YOUR ACCOUNT MAY RESULT IN CHANGES TO THE MONTHLY PRINCIPAL AND
INTEREST PAYMENTS DURING THE YEAR.

IF YOU FILED BANKRUPTCY, THIS IS NOT AN ATTEMPT TO COLLECT A DEBT BUT IS INSTEAD A LEGALLY REQUIRED NOTICE
REGARDING YOUR ESCROWED TAXES AND INSURANCE.

 

# NOTICE OF RIGHT TO CANCEL

Loan Number: W265949MA

Borrowers: HAROLD L. HARRIS IV, SHAUNA HARRIS

Property Address: 50 LOVELL ROAD, HOLDEN , MASSACHUSETTS 01520

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is   JULY 15, 2005                 ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
HOMEBRIDGE MORTGAGE CORP
60 OAK DRIVE
SYOSSET, NEW YORK 11704

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of JULY 19, 2005 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____     _____
Consumer's Signature                          Date
HAROLD L. HARRIS IV

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

*Harold L. Harris IV*   *7/15/05*
_____     _____
HAROLD L. HARRIS IV                           Date


a Walter company

February 22, 2016

HAROLD L. HARRIS IV
CHARLES PROCTOR
249 MAIN ST
OXFORD MA 01540-2356

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
Ditech.com

Re: Ditech Financial LLC ("Ditech")
      Account Number: 828127605
      Property Address: 50 LOVELL ROAD
                                  HOLDEN, MA 01520

Dear HAROLD L. HARRIS IV:

You are receiving this notice because your mortgage is in default, and your property will be referred to foreclosure.

Ditech services the mortgage account on your property located at the above-referenced address. You signed and executed a promissory note secured by a Mortgage or Deed of Trust ("the security instrument") in which you agreed to repay your debt at agreed upon terms. Because you have not fulfilled the terms of this agreement, Ditech has the right and intends to initiate foreclosure action on the mortgaged property. The owner of your loan is: CWABS, Inc., Asset-Backed Certificates Trust 2005-AB4.

Ditech is providing you an itemized account summary setting forth each of the following items, to the extent applicable:

1. Account Status as of 02/22/2016:

   • The total amount needed to reinstate or bring the account current is $85,768.69.  Please note this amount is subject to change.  Please call us for the most current amount.
   • The amount of the principal obligation under the mortgage is $319,674.19.
   • The date through which the account is paid is 07/01/2013.
   • The date of the last full payment was 03/14/2014.
   • The current interest rate in effect for the account is 7.00000%.
   • The date on which the interest rate may next reset or adjust is Not Applicable.
   • The amount of any prepayment fee (not included in the reinstatement amount) to be charged if any is Not Applicable.
   • The amount of late payment fees included in the above reinstatement amount is $288.24.

2. Availability of Loss Mitigation Options:

   Unless you have directed us not to contact you, Ditech has made good faith efforts to contact you by telephone and/or mail to review your eligibility for alternatives to foreclosure.  According to our records, with respect to this event of default:

   • Ditech has been unable to contact you.

3. Borrowers Responsibilities:

   • If you continue to occupy the property, you have the responsibility to maintain the property and an obligation to continue paying taxes owed until a sale or title transfer occurs.
   • If you wish to surrender the property, you must contact Ditech to discuss alternatives to foreclosure under which you may, if eligible, surrender the property to Ditech in exchange for compensation.

4. Additional Account Information:

   Upon written request, you are entitled to the following information:

   • A copy of your payment history from the period the mortgage account was last less than 60 days delinquent to present

14-Day (Right to Foreclose) Letter, 02-05-2014                   YAFCLZ01 1.2                   LTR-184

- A copy of the promissory note or lost note affidavit where applicable
- The name of the current Noteholder (investor that holds the account)
- If we have initiated foreclosure or filed a Proof of Claim, you may obtain copies of any assignments of mortgage or deed of trust required to demonstrate our right to foreclose under applicable state law.

5. Submit a written request to:

- Ditech Financial LLC
  P.O. Box 6172
  Rapid City, SD  57709-6172

Ditech does not offer homeownership counseling. However, such services are provided by non-profit organizations approved by the Secretary of the United States Department of Housing and Urban Development ("HUD") and experienced in the provision of Homeownership Counseling. You can obtain a list of the HUD approved agencies in your area by calling toll-free 1-800-569-4287 or visiting http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

If you have any additional questions, please call us toll-free at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST.

Respectfully,

Ditech
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.