

# II

# 2017

i.      Consumer Complaint Form (Exhibit "EE")

ii.     RLH Ma'at Law Notice of Representation (Exhibit "FF")

iii.    Chief Black-Hawk Standing of Government Statement 05.23.2017 (Exhibit "GG")

iv.     Loan Care Correspondence (Exhibit "HH")

v.      Office of Attorney General Correspondence (Exhibit "II")

vi.     Pennsylvania Department of Banking (Exhibit "JJ")

vii.    Flagstar Correspondence w/ Note, Mortgage and Payment History and

Insurance Coverage Page (Exhibit "LL")

viii.   May 27, 2017 Complaint Filed by Matrix Financial (Exhibit "MM")

ix.   Preliminary Objections (Exhibit "MM1")

x.   Answer to Complaint and Counter Claim (Exhibit "MM2")

xi.   Consumer Financial Protection Bureau

a.   Correspondence (Exhibit "NN")

b.   Correspondence (Exhibit "NN1")

xii.   Response to Plaintiff's Trogs and Rfpds ((Exhibit "PP")

a.   Motion for Extraordinary Relief 03419(Exhibit "PP1")

b.   Motion's Exhibits A-J

i.   January 14, 2019 Correspondence including

Answer to P's Trogs/Rfpds

ii. Preliminary Objections to P's Petition to Quiet Title

iii. Respondent's Trogs/Rfpds, an

iv. February 11, 2019 Foia

v. FBI Correspondence/ Complaint January 28, 2019-BCP-17-05-00815

vi. Office of the Comptroller of Currency correspondence 2.14.2019

vii. Office of Attorney General- Right to know Request 2019-041

viii. U.S. Postal Inspection Service

ix.　　　Copies of Notarized
pages received from:
　　1.　　Flagstar and
　　2.　　Michael Bomstein
and attorneys of record

xiii.　Sun Federal Letter confirming no
deposit of funds transferred from
Flagstar (Exhibit "QQ")

xiv.　Notice and Declaration of Revocation of
Wardship and Contracts (Exhibit "VV")

xv.　Pennsylvania Human Relations
Commission (Exhibit "YY")

xvi.　Supreme Court of Pennsylvania
Correspondence re: receipt of Special
Relief Complaint (Exhibit "ZZ")





consumers@attorneygeneral.gov

www.attorneygeneral.gov

17-05-000815

**Consumer Complaint Form**

Bureau of Consumer Protection
15th Floor, Strawberry Square
Harrisburg, PA 17120

1-800-441-2555 – PA ONLY
1-717-787-9707

DLP
155-101
155-100
300-45
215-25
215-75

**RECEIVED**

JAN 0 5 2017

Required fields are marked with an asterisk*
**Your Information:**

PA Office of Attorney General
Consumer Protection – Harrisburg

**RECEIVE**

JAN 1 1 2017

Office of Attorney General
BCP - Phila.

| | |
|---|---|
| Are you a veteran? ☐ Yes ☑ No<br>Are you on active duty? ☐ Yes ☐ No | **Age Group:**<br>☐ Under 18   ☐ 60-64<br>☐ 18-34   ☑ 65 and older<br>☐ 35-59 |

☐ Mr. ☑ Ms.
☐ Mrs. ☐ Dr.

Name* **May E. McCloud**

Address* **1361 S. 46th ST. / 1818 S. Alden ST** (Mailing Address)

City* **Philadelphia**   State* **PA.**   Zip Code* **19143**   County*

Daytime Phone Number* **(215) 2540490**   Home Phone Number* **( )**   Email Address **ravenmelchiz@Yahoo**

**If completing this form on behalf of someone else, please complete the following information:**

| | |
|---|---|
| Are they a veteran? ☐ Yes ☐ No<br>Are they on active duty? ☐ Yes ☐ No | **Age Group:**<br>☐ Under 18   ☐ 60-64<br>☐ 18-34   ☐ 65 and older<br>☐ 35-59 |

☐ Mr. ☐ Ms.
☐ Mrs. ☐ Dr.

Name*

Address*

City*   State*   Zip Code*   County*

Daytime Phone Number **( )**   Home Phone Number **( )**   Email Address

**Who is the complaint against?**

Business/Person Name* **Flagstar Bank**   Phone Number: **(800) 968-7700**

Name of the individual of whom you complained **Research Department**

Mailing Address **Mail STOP E 115-3 5151 Corporate Dr. Tr**

City **Troy.**   State **MI**   Zip Code **48098263?**   County

Product or Service Purchased **Mortgage**   Date of Purchase   Purchase Price

**Legal Representation:**

| Have you retained an attorney? ☑ Yes ☐ No |
|---|

Attorney's Name
R L H Ma'at Law

Address
P.O. Box 7446

| City | State | Zip Code | County |
|---|---|---|---|
| Philadelphia | PA | 19101 | Phila |

| Daytime Phone Number | Have you filed a legal action? | If yes, please state when: |
|---|---|---|
| (267) 312-7322 | ☐ Yes ☑ No | |

| Where was the legal action filed? | What decision was made? |
|---|---|
| | |

**Other Agencies:**

| Have you contacted other agencies? ☐ Yes ☑ No |
|---|

What agencies were contacted?


What action was taken?


**Complaint Information:***

Please explain your complaint. You may use additional sheets if necessary. Please print or type clearly. Try to be brief, but be sure to tell WHAT happened, WHEN it happened and WHERE it happened. Be specific about any oral statements the business made to you, ESPECIALLY those that influenced you to deal with the company. Describe events in the order in which they happened. Attach COPIES of all contracts, letters, receipts, canceled checks (front & back), advertisements or any other papers that relate to your complaint.

See Attached Affidavit

**What would you like the business to do to settle your complaint?**

Stop forwarding mail to May E. McCloud; I am the
Hearing Guardian (see Attachment)
I desire a forensic Audit.
Stop overcharging Premiums (see Attachment of
hired investigator)

**PLEASE READ CAREFULLY**
**THE ATTORNEY GENERAL CANNOT ACT AS YOUR PRIVATE ATTORNEY**
As a law enforcement agency, the primary function of the Office of Attorney General is to represent the public at large by enforcing laws prohibiting fraudulent or deceptive trade practices that impact the public interest.

The Attorney General, through the Bureau of Consumer Protection ("Bureau"), provides a mediation service to consumers where an attempt may be made to mediate individual consumer complaints which fall within the Bureau's jurisdiction. The information you provide will be used in an attempt to resolve your complaint and will be shared with the party(ies) against which the complaint is filed. Additionally, your complaint may be shared with or referred to other Governmental Law Enforcement or Regulatory Agencies.

**NOTE:** We cannot mediate a matter which is or has been the subject of legal action.
Your complaint will be kept on file and may be used to establish violations of PA law.

By signing below:
    1. I certify that the information provided in my complaint, including my identity and any factual statements or allegations, are true and correct to the best of my knowledge, information and belief.
    2. I certify that I have read and understand the informational sheet about the mediation process; and, further certify my understanding that the Bureau cannot provide individual legal representation to me.
    3. I certify that I have authorized the Bureau to contact the party(ies) against which I have filed a complaint; and, that I further authorize the party(ies) against which I have filed a complaint to communicate with and provide information related to my complaint to the Bureau.
    4. I certify that I have authorized the Bureau to transfer my complaint, and any or all attachments related to it, to another federal, state, local or other agency which may have jurisdiction over this matter.

May E. McCloud % Guard. X                    12/20/16
YOUR SIGNATURE          (Guardian)           DATE

Please include copies of all documents regarding your problem. Be sure to send COPIES, not originals.



March 28, 2017

RLH Ma'at Law
Attn: Rhashea Harmon
P.O. Box 7446
Philadelphia, PA 19107

Dear Ms. Harmon:

Thank you for your letter we received on March 20, 2017 on behalf of May McCloud.

As you indicate that you did not receive the documents that accompanied our response to the Office of the Pennsylvania Attorney General, enclosed is a copy of each document we referenced in our response.

Please be advised an indicator has been added to the account that will prevent telephone calls to Ms. McCloud, or Vera Jones, Ms. McCloud's legal guardian. Moving forward, telephone calls will be directed to your office unless we receive a revocation.

If you have questions or concerns, please call me at (248) 312-1581, Monday-Friday 9 a.m.-5:30 p.m. ET.

Sincerely,

Michael Swain
Office of the President

Enclosures (6)

EQUAL HOUSING LENDER      Member FDIC



*⊛ RLH Ma'at Law ⊛*
*"Enforcing The Rights of the Indigenous People"*

P.O. Box 7446
[Philadelphia Territory, Pennsylvania
Commonwealth 19101]
Phone:  401.343.0529
Cell: 267.312.7322

Rhashea Lynn Harmon El, Esquire*

**RLH Ma'at Law**
rlh@rlhmaatlaw.com
Fax: 1.888.696.0367

C/O 1315 Walnut Street, Suite 320
Rhashea Lynn Harmon El, Esquire
[Philadelphia Territory,
Pennsylvania
Commonwealth, 19107]
United States of America

January 9, 2016̶7̶

On Behalf:
**Amina Muhammad** *ex relatione* **Vera L. Jones** (*Sui Juris, Sui Juris*)
**C/O RLH Ma'at Law and the Rights of Indigenous Peoples**
**Private Lawyer and Consul**
**1315 Walnut Street, Suite 320**
**Philadelphia Territory, Pennsylvania Colonial Commonwealth [19107]** *de facto*

To:
**SENT VIA FAX and FEDERAL EXPRESS:**
~~810.891.1379~~ 888.848.1071
**Attention: Flagstar Bank**
**C/O 5151 CORPORATE DR**
**TROY, MI 48098-2639**

RE:     MORTGAGE LOAN#0503182676

# NOTICE TO PRINCIPAL IS NOTICE TO AGENT, NOTICE TO AGENT IS NOTICE TO PRINCIPAL

To All Concerned:

This correspondence is to inform you that RLH Ma'at Law and the Rights of Indigenous Peoples has been retained to assist in the matter regarding the above. This correspondence is not the first that has been presented to FLAGSTAR. By the firm. In March of 2016, correspondence was forwarded to FLAGSTAR informing FLAGSTAR of the medical and debilitating condition of Mrs. May E. McCloud and how her daughter Vera L. Jones had been awarded Legal Guardianship of Mrs. McCloud.

Additionally, within that Correspondence FLAGSTAR was specifically informed to cease AUTOMATICALLY DEDUCTING funds from Mrs. McCloud's Bank Account. Upon information and Belief, it was found that the alleged "loan" necessitated an investigation due to Mrs. McCloud's mental condition and the fact that more than one person's name was on the DEED.

Despite contact and said request, FLAGSTAR continued to ignore the correspondence along with request and continued phone calls from Vera L. Jones for them to CEASE automatically deducting from Mrs. McCloud's account.

Additionally, as of January 09, 2017, FlagStar has continued to contact Mrs. May E. McCloud and forward harassing and threatening correspondence indicating that Mrs. McCloud is in Default of her loan and that they have "not heard from Mrs. McCloud" and that they "need to speak with Mrs. McCloud".

* NY, PA, NJ
Authorized Internationally
"All Rights Reserved"

Legal Balance and Order



*"Enforcing The Rights of the Indigenous People"*

Having contacted your company approximately one year ago in an effort to resolve the questions surrounding property and alleged loan provided to Mrs. McCloud, and having received nothing in return but pure ignorance and dishonorable neglect in any attempt to deal with those who are the Trustees and Guardians of Mrs. McCloud who was, is and remains within the deathly grips of Dementia, it poses quite difficulty to think other than that FlagStar is in fact aware of the debilitating condition and perhaps was aware of the debilitating condition at the time the alleged valid contractual agreement was entered.

Again, since when does the policies of a bank supersede the laws of the Federal Government or Constitution? There are regulatory and Consumer Laws that are implemented against this very type of behavior.

I, Rhashea Lynn Harmon -El, Esq. have contacted you and you have not responded to me.   Vera L. Jones has contacted and requested in writing as well as over the phone that you CEASE contacting her mother who is suffering from Dementia, and Mr. Tiger Ravel El has contacted you informing you that he has been hired to conduct an accounting of the loan/mortgage to rule out fraud.

At all times, you have continued to ignore all authorized persons, who are of sound mind and intellect to converse and resolve the matter, to the choice of continuing to contact, by phone and United States Mail (obviously in furtherance of your Fraud) Mrs. May E. McCloud.

At this juncture I have been left with no choice but to report you further to the United States Attorney General, the Internal Revenue Service, and to whatever other resource(s) there is available to file a report and Complaint against your dishonorable and atrocious actions in ignorance and presumptive superiority in forwarding your very own documents as if to suggest ONLY your personal internal documents will suffice you to deal accordingly with those who have been appointed to oversee the Trust and Affairs of Mrs. May E. McCloud a senior citizen with Dementia.

You have refused and continue to ignore those who have been appointed and those who are responsible for executing the Estate of Mrs. May McCloud, interfering with their ability to carry out their duty of loyalty and fiduciary duty in connection with Mrs. McCloud's Estate.

Your actions as previously mentioned shall be reported by the time you have received this correspondence.

On this note, this one last demand for you to CEASE harassing and causing emotional disturbances to Mrs. May E. McCloud or you, agents and agencies, shall find yourself in a great deal of trouble.

It has been most splendid having to draft yet another correspondence, to request you to CEASE CONTACTING MRS. MAY E. MCCLOUD after explaining her lack of mental capacity to handle simple affairs, yet alone vultures of your kind.

In Love, Truth, Peace, Freedom, Justice and Wisdom.

Most Sincerely and in Honor,

R. Lynn Harmon El©, Esq.
Private Attorney for Vera Lynn Jones, Guardian
of May E. McCloud
And Chief Trustee of RLH Ma'at Law and the
Rights of the Indigenous Peoples

* NY, PA, NJ
Authorized Internationally
"All Rights Reserved"

Legal Balance and Order

*R.O.H Ma'at Law*
*"Enforcing The Rights of the Indigenous People"*

cc:
**File**
**Miss Jones** *(email)*
**International Revenue Service** *(certified mail)*

Enclosures.

-All Rights Reserved-

* NY, PA, NJ
Authorized Internationally
"All Rights Reserved"

**Legal Balance and Order**



**» THIRD-PARTY AUTHORIZATION FORM**

Loan Number: 0503182676



Use this **Third Party Authorization** form to authorize someone other than yourself to access your Flagstar Bank Mortgage Loan Account information. To authorize full access to your loan account, this form must be notarized (see page 2).

In today's market, loans and the rights to service them are often bought and sold. Servicing transfers may occur at any time. In the event your loan is transferred to a new servicer, the authorization established by this form will no longer be effective. You will need to contact your new servicer to obtain their authorization procedures. Our liability/obligations remain to the customer and the presence of a representative should not create additional direct or derivative liability for the Bank.

Please **PRINT** – for multiple mortgage loan accounts use separate forms.

### Section 1- Your Contact and Mortgage Loan Account Information

First Name                     Middle Name                          Last Name

Last 4 Digits of Social Security Number                          Best Phone Number

### Section 2 - Authorized Third Party

Expiration date for authorization: ☐ Loan Maturity   or   ☐ Input Date: _Until the matter is resolved._

*(Note: If no date is selected, the authorization will be valid for two years from the date signed below.)*

Type of Authorization:      ☒ Individual      ☒ Company

Authorization Description:   ☐ Realtor      ☒ Attorney

                             ☐ Appraiser      ☒ Other: _Trustee_

_Abashed Lynn Harmon Foreign Trust_

Name *(Please note: It is not necessary to list individual names for a company authorization)*

_P.O. Box 7446_            _Philadelphia_            _PA_            _19101_
**Address**                     **City**                          **State**            **Zip**

_267 312 7322_            _1.888.696.0367_            _rlh@rlhmaatlaw.com_
**Best Phone Number**            **Fax**                          **Email**

Select a PIN for the Authorized Individual: (A PIN is not needed for a company)   ☐☐ · ☐☐

*(continued on back)*

flagstar.com                                          1 of 2                                          Rev 1314



Loan Number: 0503182676

**Section 3- Type of Access      Please select one option below (partial or full access):**

☐  **Partial Access**

- Can obtain loan details information by telephone
- Can discuss payment arrangements with the Collections Department
- Can discuss the Loss Mitigation application process

By signing this form, I authorize Flagstar Bank to provide information regarding the above referenced Mortgage Loan Account by telephone to the Authorized Party or to someone claiming to be the Authorized Party. I understand that this authorization does not allow the Authorized Party to take any action or request any service or documentation on this loan. Flagstar may reject this or any other Third Party Authorization or refuse to recognize any request for information from the Authorized Party. This Third Party Authorization shall remain in effect until I revoke this authorization. I or any other borrower on this loan may revoke this Third Party Authorization at any time in writing via fax or mail.

Signature:                                                                    Date:

☒  **Full Access**

- Can obtain loan details information by telephone
- Can discuss payment arrangements with the Collections Department
- Can discuss the Loss Mitigation application process
- Can submit request to send documents that do not require a fee, such as a Transaction History Ledger, or an Original Appraisal. (can only be mailed to address of record)
- Can submit request to re-send letter/package/document, such as a Monthly Statement, 1098, Escrow Analysis Disclosure, Rate/Payment, Change Notice, Loan Sale Transfer Notice, etc. (can only be mailed to address of record.)
- Can request research to resolve matters

By signing this form, I authorize Flagstar Bank to provide loan information regarding the Mortgage Loan Account referenced on page 1 to the Authorized Party or to someone claiming to be the Authorized Party. I understand that this Third Party Authorization allows only for information to be provided by telephone and the actions described above. Flagstar may reject this or any other Third Party Authorization or refuse to recognize any request for information from the Authorized Party. This Third Party Authorization shall remain in effect until I revoke this authorization. I or any other borrower on this loan may revoke this Third Party Authorization at any time in writing via fax or mail.

Signature: X                                                         Date: 1/11/2017

### Notary witness and official seal for Full Access

*(Notary Seal)*

1/11/2017
Date

John F. Ross
Notary Signature

Philadelphia
County

11/29/2020
My Commission Expires On

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
John F. Ross, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires Nov. 29, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**IMPORTANT INFORMATION: Once completed and signed (and notarized, if applicable), please mail or fax to:**
Mail: Flagstar Bank | Third Party Authorization | Mail Stop E-115-3 | 5151 Corporate Drive | Troy, MI 48098    Fax: (888) 848-1071

EQUAL HOUSING LENDER   Member FDIC
Rev. 1014

 **Flagstar® Bank**

» THIRD-PARTY AUTHORIZATION FORM

Loan Number: 0503182676



Use this Third Party Authorization form to authorize someone other than yourself to access your Flagstar Bank Mortgage Loan Account Information. To authorize full access to your loan account, this form must be notarized (see page 2).

In today's market, loans and the rights to service them are often bought and sold. Servicing transfers may occur at any time. In the event your loan is transferred to a new servicer, the authorization established by this form will no longer be effective. You will need to contact your new servicer to obtain their authorization procedures. Our liability/obligations remain to the customer and the presence of a representative should not create additional direct or derivative liability for the Bank.

Please **PRINT** – for multiple mortgage loan accounts use separate forms.

### Section 1- Your Contact and Mortgage Loan Account Information

| First Name | Middle Name | Last Name |
| --- | --- | --- |

Last 4 Digits of Social Security Number                Best Phone Number

### Section 2 - Authorized Third Party

Expiration date for authorization: ☐ Loan Maturity     or     ☐ Input Date: _Until the matter is resolved._

*(Note: If no date is selected, the authorization will be valid for two years from the date signed below)*

Type of Authorization:     ☒ Individual     ☒ Company

Authorization Description:     ☐ Realtor     ☒ Attorney

☐ Appraiser     ☒ Other: _Trustee_

_Rhashea Lynn Harmon Foreign Trust_
Name   *(Please note: It is not necessary to list individual names for a company authorization)*

_P.O. Box 7446_                _Philadelphia_                _PA_                _19101_
Address                City                State                Zip

_267 312 7322_                _1.888.696.0367_                _rlh@Rlhmadlaw.com_
Best Phone Number                Fax                Email

Select a **PIN** for the Authorized Individual: (A PIN is not needed for a company)   ☐ ☐ ☐ ☐

*(continued on back)*

**THIRD-PARTY AUTHORIZATION FORM**



Loan Number: 0503182676

---

**Section 3- Type of Access**     Please select one option below (partial or full access):

---

☐  **Partial Access**

- Can obtain loan details information by telephone
- Can discuss payment arrangements with the Collections Department
- Can discuss the Loss Mitigation application process

By signing this form, I authorize Flagstar Bank to provide information regarding the above referenced Mortgage Loan Account by telephone to the Authorized Party or to someone claiming to be the Authorized Party. I understand that this authorization does not allow the Authorized Party to take any action or request any service or documentation on this loan. Flagstar may reject this or any other Third Party Authorization or refuse to recognize any request for information from the Authorized Party. This Third Party Authorization shall remain in effect until I revoke this authorization. I or any other borrower on this loan may revoke this Third Party Authorization at any time in writing via fax or mail.

---

Signature: _____     Date: _____

---

☒  **Full Access**

- Can obtain loan details information by telephone
- Can discuss payment arrangements with the Collections Department
- Can discuss the Loss Mitigation application process
- Can submit request to send documents that do not require a fee, such as a Transaction History Ledger, or an Original Appraisal. (can only be mailed to address of record)
- Can submit request to re-send letter/package/document, such as a Monthly Statement, 1098, Escrow Analysis Disclosure, Rate/Payment, Change Notice, Loan Sale Transfer Notice, etc. (can only be mailed to address of record.)
- Can request research to resolve matters

By signing this form, I authorize Flagstar Bank to provide loan information regarding the Mortgage Loan Account referenced on page 1 to the Authorized Party or to someone claiming to be the Authorized Party. I understand that this Third Party Authorization allows only for information to be provided by telephone and the actions described above. Flagstar may reject this or any other Third Party Authorization or refuse to recognize any request for information from the Authorized Party. This Third Party Authorization shall remain in effect until I revoke this authorization. I or any other borrower on this loan may revoke this Third Party Authorization at any time in writing via fax or mail.

---

Signature: X _____     Date: _1/11/2017_

---

**Notary witness and official seal for Full Access**

*(Notary Seal)*

_1/11/2017_
Date

_John F. Ross_
Notary Signature

_Philadelphia_
County

_11/29/2020_
My Commission Expires On

**COMMONWEALTH OF PENNSYLVANIA**
**NOTARIAL SEAL**
John F. Ross, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires Nov. 29, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

---

**IMPORTANT INFORMATION:** Once completed and signed (and notarized, if applicable), please mail or fax to:
Mail: Flagstar Bank | Third Party Authorization | Mail Stop E-115-3 | 5151 Corporate Drive | Troy, MI 48098    Fax: (888) 848-1071

⌂ EQUAL HOUSING LENDER   Member FDIC
Rev 1014

**the Desk of the Supreme grand Chief Mund Bareefan ClanIndigenous Native American on of Nations, Original, Guale,Yamassee, Mechica, Creek, Seminole, Shushuni, Washitaw, Comanche,et,al;U.S. AUTHENTICATION date 2/11/ 2004**

### With Regard to the Mund Bareefan Clan/Indigenous Native American Association of Nations

To whom it may concern;                                        5/23/2017

I am Supreme Grand Chief Black-Hawk H. Thunderbird, of Mund Bareefan Clan-Indigenous Native American Association of Nations. Mund Bareefan is pronounced MT. Arafat in English (Hereinafter MBC/INAAN),

### STATE ACKNOWLEDGEMENT

October 1st, 2004 The Commonwealth of Pennsylvania issued its Commonwealth/State Certification to the Mund Bareefan Clan-Indigenous Native American Association of Nations, which then called MT. 'Arafat Embassy Clan. MT. 'Arafat is the English equivalent of Mund Bareefan.

### FEDERAL ACKNOWLEDGEMENT

**Federal acknowledgement** was established on February 11, 2004, the Authentication office for **The U. S. Department of State** annexed authenticated documents, instruments and text of MBCG-INAAN on behalf of The United States in accord with... our authenticated agreement with the United States of February 11, 2004, is supported by...
The MBC/INAAN Constitution,
The MBC/INAAN CODE ANNOTATED
The Constitution of the United States of America,_
Treaty and federal Indian law
"The Hague Convention for Abolishing the Requirement of Legalization for Foreign Public;
 Federal Rules of Civil Procedure) and Rule 902
Federal Rules of  Evidence), Documents," TIAS 10072; 33 U.S.T. 883, 527 U.N.T.S. 189. 28 U.S.C. 1739...

On October 12, 2004, we also received a written **confirmation letter, reference from the Authentication office** stating in part ...

"the statement on our certificates "full faith and credit" is in acknowledgment of the States certificate to the document and has sufficient legal value through State and Federal sevels for use in other countries and in this country."

This letter is addressed to, Sean Henry-Bey, during his tenure as an official at our At-sik Hata Village, in the Macon Georgia area. Informing him that he did not have to re-apply (Color copy enclosed).

the Desk of the Supreme grand Chief Mund Bareefan ClanIndigenous Native American
on of Nations, Original, Guale,Yamassee, Mechica, Creek, Seminole, Shushuni, Washitaw,
Comanche,et,al;U.S. AUTHENTICATION date 2/11/ 2004

The following states have also annexed authenticated documents, instruments and text of MBC/INAAN, and have supplied their states endorsements.  On May 21ts 2008 the State of New York issued authentication to MBC/INAAN. October 1st, 2004 The Commonwealth of Pennsylvania issued Apostille  on November 4, 2004, The State of New Jersey issued Apostille certificate;  on November 12th , 2004; The State of Maryland, issued Apostille certificate;  on November 18th The State of Delaware, has issued its certificate , authentication   on December 2nd, 2004. The State of South Carolina issued its Apostille certificate, on January 9th. 2009.  The State of Florida issued Apostille certificate    on February 25th. 2010 The Commonwealth of Virginia, issued Apostille certificate The Great State of California issued its Apostiille

Grand Chief Black-Hawk Thunderbird

**Brief in Support presented to, and certified by the US Department        of State, for the completion of the authentication with the United State et al.**

The Yamassee Native American Government; MT. 'Arafat Embassy, (hereinafter (MBC/INAAN) and "we") as do other Governments and their Embassies require the U.S. Department of State to authenticate documents to be used in the United States of America for said documents to be considered legal.   <u>Yamassee Native American Government Representatives/Diplomats are not limited to or required to carry US governmental or any other foreign governments issued licensing, such as but not limited to: apostilles, diplomas, birth certificates, passports, marriage licenses, driver's licenses, vehicle registration plates and so on.</u>  Diplomats of the Yamassee Native American Government "MT. 'Arafat Embassy" are being inconvenienced by US Governmental and private employees.   Yamassee Native American Government Officials and MT. 'Arafat Embassy Personnel carry very specific identification papers which are recorded with our data base at the ISMRS and all of the other agencies required by the US State Department for the authentication process to be complete. Diplomatic papers are used by/for Yamassee Government Officials, their immediate families and consul attaches only. For your convenience and examination there is a single sample/copy of our ID, passport/travel papers and conveyance plate with this correspondence. Conveyance plates are numbered and issued to Individual Diplomats. The ISMRS branch of MT. 'Arafat is willing to contract with one of your agencies to manufacture the plates to our specifications at a reasonable cost. Specifications are as follows:

All plate numbers will fall within NA    109 -A, THRU NA    9999-A. The first number to be used, is NA    109-A. Alphabetical prefix for Native American (NA) is displayed on *All* plates.  Please use this information for the education of
all USA Government/Corporate Officials, and all other Governments and Agents thereof. Make Notice of this fact; this is not a request for Authorization, but for Authentication. This is a clear honest communication of our intent towards co-operation

and for the protection of both the Yamassee Native American Government, and the US Government. The documents including our passports will be used in the United States of America and when necessary, internationally.

"The Yamassee Declaration of Independence "in part… 2. "I Declare that… My Tribal Roots: Guale, Yamassee, Original Cherokee, Seminole, Creek, Shushuni, Washita Mound Builders"… (taken from Constitution Of The MBC/INAAN).
### To Any Other Peoples And Nations, Inclusive Of The United States,
Know That To Violate Our Constitution Is To Violate "The Declaration Of The Rights Of Indigenous Peoples" E/Cn.4/sub.2/1994/2/Add.1 (1994) Part VII Article 31& 36, Drafted By The Working Groups At Its 11th Session and The Indigenous Peoples Earth Charter Which Was Adopted At The Kari Oca Conference, 25-30 May 1992 United Nations" and ratified by the United Nations 1n 20082q.
### "The Of Bill of Rights Of MBC/INAAN Indigenous Peoples"
### Article 31
Indigenous people, as a specific form of exercising their right to self-determination, have the right to autonomy or self-government in matters relating to their internal and local affairs, including culture, religion,
education, welfare, economics activities, land and resourced, management, environment and entry by non-members, as well as ways and means for financing these autonomous functions."

### "The Of Bill of Rights Of MBC/INAAN Indigenous Peoples"
### Article 36
"Indigenous people have the right to the recognition, observance and enforcement of treaties, agreements and other constructive arrangements concluded with States or their successor, according to their original sprit
of intent, and to have States honor and respect such treaties, agreements and other constructive arrangements. Conflicts and disputes which cannot otherwise be settled should be submitted to competent international bodies agreed to by all parties concerned."…

TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED BY VIRTUE OF IT WILL BE USED TO EFFECTUATE THE COLLECTION OF THAT DEBT.

THE SERVICEMEMBERS CIVIL RELIEF ACT (SCRA) MAY OFFER PROTECTION OR RELIEF TO SERVICE MEMBERS. IF EITHER YOU HAVE BEEN CALLED TO ACTIVE DUTY OR ACTIVE SERVICE, OR YOU ARE A SPOUSE OR DEPENDENT OF SUCH A SERVICE MEMBER, YOU MAY BE ENTITLED TO CERTAIN LEGAL PROTECTIONS AND DEBT RELIEF PURSUANT TO THE SERVICEMEMBERS CIVIL RELIEF ACT. IF YOU HAVE NOT MADE US AWARE OF YOUR STATUS, PLEASE CONTACT US IMMEDIATELY. YOU MAY ALSO CALL 1-800-342-9647 (TOLL-FREE FROM THE UNITED STATES) OR WWW.MILITARYONESOURCE.MIL/LEGAL TO FIND OUT MORE INFORMATION.

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING PLEASE NOTIFY US IMMEDIATELY. IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE BE ADVISED THAT THIS NOTICE IS NOT INTENDED TO COLLECT AGAINST YOU PERSONALLY OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. IT IS REQUIRED SO THAT WE MAY ENFORCE LIEN RIGHTS TO THE ABOVE REFERENCED PROPERTY.

LoanCare NMLS 2916



**LOANCARE**

A SERVICELINK COMPANY

POST OFFICE BOX 8068
VIRGINIA BEACH, VA 23450



◆ 0705057 000000001 09LCFS 0077240
MAY E MCCLOUD
C/O VERA JONES
1818 S ALDEN ST
PHILADELPHIA PA 19143-5504

1/18/2017

RE:   Loan Number: 0503182676
      Property Address: 1361S 46TH ST, PHILADELPHIA, PA 19143

Dear May Mccloud:

Matrix Financial Services Corporation, your mortgage loan servicer, recently informed you that LoanCare, LLC ("LoanCare") has been engaged to assist with the servicing of your mortgage loan. Other than LoanCare providing this assistance to Matrix Financial Services Corporation, nothing else has changed with your loan, including, for example, where/how payments are to be made.

As of the date of this letter, your mortgage loan, for the property referenced above, is in default; meaning you have failed to pay, as required, per the contractual terms of your note. Matrix Financial Services Corporation wants to help you avoid foreclosure, if possible, and LoanCare employs Loss Mitigation Specialists who will assist with loss mitigation options and respond to your inquiries. Below is important information about your mortgage loan account:

**The current creditor is: Matrix Financial Services Corporation.**

**Total amount of consumer debt as of the date of this letter: $1,126.34.**

If you do not dispute this debt, or any portion of the debt, within thirty (30) days of receiving this letter, LoanCare will assume that the debt is valid. If you notify LoanCare in writing within the thirty (30) day period that you dispute part or all of the debt, LoanCare will mail you verification of the debt or a copy of any judgment rendered against you on the debt. Also, upon your written request within the thirty (30) day period, LoanCare will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,
LoanCare, LLC

3637 Sentara Way | Virginia Beach, VA 23452
Customer Service T 800.393.4887
Monday to Friday, 8:30 a.m. – 8:30 p.m. EST, Saturday 8 a.m. – 3 p.m. EST

FS001                                                                    0503182676



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

BUREAU OF CONSUMER PROTECTION
21 South 12th Street, 2nd Floor
Philadelphia, Pennsylvania 19107
215-560-2414
January 19, 2017

May E. McCloud
1818 S. Alden Street
Philadelphia, PA 19143

Re:  Flagstar Bank
     BCP-17-05-000815

Dear Ms. McCloud:

Your complaint has been received by the Bureau of Consumer Protection. Please refer to your File Number BCP-17-05-000815 when corresponding with this office to help us keep accurate and up-to-date records.

A copy of your complaint as presented to the Bureau has been sent to the business with a request for the business to provide a written response to the Bureau within 21 days.  We will keep you apprised of significant developments as your case progresses. You will be notified by mail when we receive information regarding your case.

Please note that participation in the mediation process is voluntary and we cannot compel a business to cooperate.  If mediation efforts are not successful, you may be advised to seek relief either through a private attorney or through Magisterial District Court.  The Bureau cannot provide you with private legal counsel or offer legal advice.

If your complaint has been settled or you have new information that would have a bearing on your complaint, please inform us.  We encourage you to submit such information in writing.

On behalf of the Office of Attorney General, thank you for bringing this matter to our attention.  We hope to be of assistance in resolving your complaint.

Very truly yours,

Dana L. Price
Agent

rn
20A



COMMONWEALTH OF PENNSYLVANIA
**OFFICE OF ATTORNEY GENERAL**

BUREAU OF CONSUMER PROTECTION
21 South 12th Street, 2nd Floor
Philadelphia, Pennsylvania 19107
215-560-2414
January 19, 2017

Flagstar Bank
National Corporate Headquarters
5151 Corporate Drive
Troy, MI  48098

RECEIVED

        Re:   May E. McCloud
              BCP-17-05-000815

Dear Sir/Madam:

    Enclosed please find a copy of a consumer complaint that was filed with
the Bureau of Consumer Protection.  Our office would like to assist you and
this consumer in bringing this matter to a mutually satisfactory conclusion.
To aid us in our mediation efforts, please provide a response to the
consumer's complaint.

    A complaint is sometimes caused by a mistake or misunderstanding that a
business is eager to learn about and correct.  In other instances, a
complaint can often be addressed with an explanation of the circumstances
behind the transaction or other information which responds to the consumer's
concerns.  In either case, by responding to a consumer complaint you can
usually preserve "goodwill" for your business.

    We request that you provide a prompt written reply so that we may
amicably resolve this complaint.  Please respond within twenty-one (21) days
from the above date.

                                Very truly yours,

                                Dana L. Price
                                Agent

rn
Enclosure
21



Office of Attorney General
Commonwealth of Pennsylvania
Bureau of Consumer Protection
21 South 12th Street, 2nd Floor
Philadelphia, PA 19107-3614

Flagstar Bank
National Corporate Headquarters
5151 Corporate Drive
Troy, MI  48098

Re:  May R. McCloud

48098-263951

503 182676

PHILADELPHIA
PA 191
20 JAN '17
PM 5 L

UNITED STATES POSTAL
$ 000.46⁵
02 1P
0000262079      JAN 20 2017
MAILED FROM ZIP CODE 19107

JAN 2 4 2017
RECEIVED

RECE





**pennsylvania**
DEPARTMENT OF BANKING
AND SECURITIES

February 9, 2017

LoanCare, LLC
Mr. Eric Morris, Mortgage Resolution Supervisor
3637 Sentara Way
Virginia Beach, VA 23452

Dear Mr. Morris:

Enclosed is a copy of correspondence received by the Pennsylvania Department of Banking and Securities ("Department") from Ms. Rhashea Harmon-El, Esquire on behalf of her clients Ms. May McCloud and Ms. Vera Lynn Jones, regarding issues they are experiencing with FlagStar ("FlagStar").

Attorney Harmon-El claims that FlagStar, Agents, and/or subsidiary or parallel agencies have incessantly contacted her clients. She states that FlagSar has been informed on several occasions that Ms. McCloud has progressive dementia and that all of her affairs have been ordered by the Orphans Court in Philadelphia, Pennsylvania to be handled by Ms. Jones. Additionally, Attorney Harmon-El is requesting documentation that her clients mortgage is lawful for the property located at 1361 S. 46th Street, Philadelphia, PA 19143.

The Department is requesting that you respond within 30 days from the date of this letter, or no later than March 9, 2017. Your response should include your explanation of the situation and how you intend to deal with it. Please be advised that we will forward a copy of your response to Attorney Harmon-El. If you respond directly to her, please provide the Department with a copy of the response.

We look forward to your response by March 9, 2017.

Sincerely,

*Crystal Dietrich*

Crystal Dietrich
Consumer Services Specialist

Enclosure

cc: Ms. Harmon-El, Esquire





February 27, 2017

Office of the Pennsylvania Attorney General
Bureau of Consumer Protection
Attn: Dana Price
21 South 12th Street, 2nd Floor
Philadelphia, PA 19107-3614

Re: BCP-17-05-000815

Dear Ms. Price:

Thank you for your letter we received on January 24, 2017 regarding May McCloud's Flagstar home loan.

As way of background, on April 14, 2011, Ms. McCloud obtained a loan from Flagstar in the amount of $70,000. In exchange for the loan, Ms. McCloud gave, as security, an interest in the subject property located at 1361 South 46th Street, Philadelphia, Pennsylvania.

Flagstar is the current servicer of the loan and holder of the note. Subject to and without waiving any objections, Flagstar is providing the following information:
1. Note
2. Deed of Trust
3. Payment History

Ms. McCloud's obligations pursuant to the loan agreement are outlined in the security deed and note.

Please be aware Ms. McCloud's loan was established with an escrow account, which means we collect money from her each month to be applied to the escrow. When we receive her tax and insurance bills, funds are disbursed from the escrow account on her behalf. Enclosed is a copy of the most recent escrow analysis statement for the analysis we completed on October 25, 2016. Additionally, we have enclosed a copy of Ms. McCloud's insurance policy declaration page from Continental Mutual Insurance Company. The disbursement and policy amounts match and represent the true and accurate amount we paid on her behalf. If Ms. McCloud has obtained a new policy, we encourage her to email a copy of the policy to fsbins@pfic.com, so we can update the account and potentially adjust her payment.

With respect to the mailing address, our records indicate on March 7, 2016, the mailing address of record was updated. Enclosed is a copy of the letter we sent to confirm the update. Furthermore, we have removed both the property and mailing addresses from future marketing campaign lists.

Lastly, as Vera Jones, Ms. McCloud's authorized representative, indicates in her correspondence, RLH Ma'at Law is currently representing Ms. McCloud. As such, unless we receive authorization in writing, we are only permitted to speak with RLH Ma'at Law and the disclosure of account information should be provided to RLH Ma'at Law accordingly.

If you have questions or concerns, please call me at (248) 312-1581, Monday-Friday 9 a.m.-5:30 p.m. ET.

EQUAL HOUSING LENDER      Member FDIC

Sincerely,

Michael Swain
Office of the President

Enclosures (6)

From: unknown          Page: 2/2     Date: 12/9/2016 10:38:08 AM

# DECLARATION PAGE
## SCHEDULE OF COVERAGES
## CONTINENTAL MUTUAL INSURANCE COMPANY

**NAME OF INSURED AND INSURED PREMISES:**
MAY E MCCLOUD
1361 S 46TH ST

PHILADELPHIA, PA  19143

**SALES REPRESENTATIVE:**
SESAY, ALFRED B

**ACCOUNT NUMBER:**
F-0510-4725

**RIDERS (if any)**

| | |
|---|---|
| **POLICY NUMBER:** | 1250510AF |
| **EFFECTIVE DATE:** | 1-1-2017 to 1-1-2018 |
| **PLAN DESCRIPTION:** | CONTENTS |
| **BENEFIT AMOUNT:** | 40,000 |
| **INITIAL PREMIUM:** | 110.00 |

**DWELLING**
BENEFIT AMOUNT: 150,000

**BURGLARY**
BENEFIT AMOUNT: 2,000

**MODAL RENEWAL PREMIUM:**

**RENEWAL DATE:**      CONTINUANCE UPON
                      PAYMENT OF PREMIUM

| | |
|---|---|
| ANNUAL | 1,320.00 |
| SEMI-ANNUAL | 660.00 |
| QUARTERLY | 330.00 |
| MONTHLY | 110.00 |

**MORTGAGEE (if any)**      FLAGSTAR BANK FSB ISAOA
                            P O BOX 7026
                            TROY, MI  48007

**LOAN NO:**      0503182676

CAUTION: DO NOT SIGN ANY PAPERS OR BE MISLED by any outside parties asking you to sign any papers regarding, or in reference to, any FIRE OR EXTENDED COVERAGE CLAIM due you on this policy. Any benefit or value payable under this policy can be obtained, without help or alleged influence of outside parties, through the Home Office of the Company. There is no need to pay anyone a fee for alleged services in collecting any sum which is rightuflly due you. The Company wishes to pay every claim without delay and any representative of the Company will be glad to render assistance without cost to you. For your own protection, deal only with our sales representative or call our Claims Manager at 610-853-2100.

Should you have any questions regarding the enclosed insurance policy, or if any other agent tried to persuade you to change insurance coverages, please contact your agent or call CONTINENTAL policyholder service department at 610-853-2100.

## Continental Mutual Insurance Company
8049 West Chester Pike, Upper Darby, PA 19083-0222
Phone: (610) 853 - 2100 Fax: (610) 853 - 2107

FORM FM1-06

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-531-1


APN #: 272165800
APN #:

———————————— [Space Above This Line For Recording Data] ————————————

V1 WBCD LOAN # 503182676

# MORTGAGE

MIN: 100052550318267605

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **APRIL 14, 2011**, together with all Riders to this document.

(B) "Borrower" is **May E. McCloud and Vera L. Jones.**

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D) "Lender" is **FLAGSTAR BANK, FSB.**

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page 1 of 13                    PAEDEED    PAEDEDL 1011
                                                                          04-13-2011 14:00

Lender is a **FEDERALLY CHARTERED SAVINGS BANK**     **V1 WBCD LOAN # 503182676** organized and existing under the laws of **UNITED STATES OF AMERICA**.     Lender's address is **5151 CORPORATE DR, TROY, MI   48098-2639**.

(E) "Note" means the promissory note signed by Borrower and dated **APRIL 14, 2011.** The Note states that Borrower owes Lender ••••••••••••••••**SEVENTY THOUSAND AND NO/100** •••••••••••••••••••••••••••••••••••••••••••**Dollars (U.S.   $70,000.00   )** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2041.**

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider
- ☐ Balloon Rider
- ☐ 1-4 Family Rider
- ☐ V.A. Rider
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Biweekly Payment Rider
- ☐ Second Home Rider
- ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _[signature]_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.      Page   2   of 13      PAEDEDL  1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the    COUNTY
[Type of Recording Jurisdiction] of  PHILADELPHIA                                    [Name of Recording Jurisdiction]:
SEE TITLE
APN #: 272165800

which currently has the address of  1361 S 46TH ST, PHILADELPHIA,
                                                                                                                          [Street] [City]
Pennsylvania       19143-3827       ("Property Address"):
                                 [Zip Code]
        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
        UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
        1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
                                                                                        Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                        Page   3   of  13                        PAEDEDL  1011
                                                                                                         04-13-2011 14:00

V1 WBCD LOAN # 503182676

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                     Page  4  of 13                          PAEDEDL 1011
                                                                                   04-13-2011 14:00

V1 WBCD LOAN # 503182676

by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page 5 of 13                    PAEDEDL 1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676

services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Initials:

V1 WBCD LOAN # 503182676

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page   7   of   13                    PAEDEDL 1011
                                                                               04-13-2011 14:00

V1 WBCD LOAN # 503182676

a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage Insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                     Page   8   of  13                         PAEDEDL 1011
                                                                                     04-13-2011 14:00

V1 WBCD LOAN # 503182676

by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend,

Initials: _____

Case 3:21-cv-00006-MHL   Document 3-12   Filed 01/06/21   Page 45 of 100 PageID# 739

V1 WBCD LOAN # 503182676

modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page    10  of  13                          PAEDEDL 1011
                                                                                    04-13-2011 14:00

V1 WBCD LOAN # 503182676

to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of

Initials: _____

V1 WBCD LOAN # 503182676

acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page   12 of 13                    PAEDEDL  1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676

present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____
Vctd L. Jones

_____ (Seal)
MAY E. MCCLOUD

Commonwealth of **PENNSYLVANIA**
County of **PHILADELPHIA**

On this, the **14** day of **April 2011** before me, _____, the undersigned officer, personally appeared _____ May F. McCloud _____,

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

My commission expires: **1/20/14**

_____
Notary Public
Title of Officer

```
NOTARIAL SEAL
YELENA SNIGUR
Notary Public
LOWER MORELAND TWP., MONTGOMERY COUNTY
My Commission Expires Jan 20, 2014
```

Certificate of Residence
I, **The subscriber**
do hereby certify that the correct address of the within-named Mortgagee is **5151 CORPORATE DR, TROY, MI  48098-2639**

Witness my hand this **14** day of **April 2011**

_____
Agent of Mortgagee

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                   Page **13** of 13                   PAEDEDL 1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676
MIN: 100052550318267605

# NOTE

APRIL 14, 2011                Philadelphia,                      PENNSYLVANIA
[Date]                        [City]                            [State]

1361 S 46TH ST, PHILADELPHIA, PA 19143-3827
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $70,000.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED
SAVINGS BANK.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of   5.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     1ST    day of each month beginning on   JUNE 1, 2011.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on   MAY 1, 2041,          I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
5151 CORPORATE DR
TROY, MI  48098-2639

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.     $386.54.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.                Page 1  of 3                   F3200NOT  0701
                                                                                04-13-2011 14:00

503182676

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of          15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.                Page 2 of 3                         F3200NOT  0701
                                                                                      04-13-2011 14:00

503182676

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*May E. McCloud* (1)

MAY E. MCCLOUD

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: *Melinda McNeal*

MELINDA McNEAL
VICE PRESIDENT

[Sign Original Only]

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.                    Page 3 of 3                    F3200NOT  0701
                                                                                     04-13-2011 14:00

503182676

ORIGINAL NOTE-1

Representation of Printed Document

# Flagstar Bank

Please send escrow shortage payments to:
PO Box 1608
Troy, MI 48099-1608

## ANNUAL ESCROW
### DISCLOSURE STATEMENT

Page 1 of 3

┌─────────────────────────────────────────────┐
│ **ANNUAL ESCROW ANALYSIS** │
│ │
│ Account Number: 503182676 │
│ Escrow Analysis Date: 10/25/16 │
│ New Monthly Payment Amount: $524.51 │
│ New Payment Effective Date: 12/01/2016 │
│ │
│ Property Address: 1361 S 46TH ST │
│ │
│ For questions, please call customer service (800) 968-7700. │
│ Monday - Friday 7:30 a.m. - 8 p.m., ET │
│ Saturday 7:30 a.m. - 4 p.m., ET │
│ │
│ Visit our website at flagstar.com. │
└─────────────────────────────────────────────┘

3-655-68829-0002711-001-000-110-000-000

MAY E MCCLOUD
C/O VERA JONES
1818 S ALDEN ST
PHILADELPHIA PA 19143-5504

## MORTGAGE PAYMENT

**New Monthly Payment Amount:$524.51  (With Shortage)  |  New Payment Effective:    December 01, 2016**

|  | CURRENT PAYMENT | NEW PAYMENT |
|---|---|---|
| PRINCIPAL/INTEREST | 386.54 | 386.54 |
| MONTHLY ESCROW PAYMENT | 137.96 | 137.97 |
| OTHER | 0.00 | 0.00 |
| **TOTAL PAYMENT** | **$524.50** | **$524.51 (Without Shortage)** |

### COMING YEAR ESCROW PROJECTION

| Please keep this statement for reference next year. DATE | DESCRIPTION | ESCROW PAYMENT | ESCROW DISBURSEMENTS | PROJECTED BALANCE | REQUIRED BALANCE |
|---|---|---|---|---|---|
|  | Beginning Balance | | | 1,517.63 | 1,517.65 |
| 12/16 | HAZARD | 137.97 | -1,320.00 | 335.60 | 335.62 |
| 1/17 | | 137.97 | 0.00 | 473.57 | 473.59 |
| 2/17 | CITY ANN/BOR | 137.97 | -335.62 | 275.92 | 275.94 |
| 3/17 | | 137.97 | 0.00 | 413.89 | 413.91 |
| 4/17 | | 137.97 | 0.00 | 551.86 | 551.88 |
| 5/17 | | 137.97 | 0.00 | 689.83 | 689.85 |
| 6/17 | | 137.97 | 0.00 | 827.80 | 827.82 |
| 7/17 | | 137.97 | 0.00 | 965.77 | 965.79 |
| 8/17 | | 137.97 | 0.00 | 1,103.74 | 1,103.76 |
| 9/17 | | 137.97 | 0.00 | 1,241.71 | 1,241.73 |
| 10/17 | | 137.97 | 0.00 | 1,379.68 | 1,379.70 |
| 11/17 | | 137.97 | 0.00 | 1,517.65 | 1,517.67 |
| **TOTAL:** | | | **-$1,655.62** | | |

### DETERMINING YOUR ESCROW SHORTAGE/SURPLUS

Your beginning escrow balance as of your 11/30/16 payment, assuming timely receipt of all payments and disbursement of all items due, will be $1,517.65.
Your base escrow payment beginning 12/01/16 is $137.97. This is determined by adding up the total disbursements (taxes and/or insurance) to be paid from your escrow account during the next year and dividing them by 12.

| HAZARD INS | 1,320.00 |
|---|---|
| CITY TAX | 335.62 |
| **TOTAL DISBURSEMENTS** | **$1,655.62**  divided by 12 = $137.97 base escrow payment |

If all disbursements are not reflected in the coming year escrow projections, it will be calculated correctly in the base escrow payment.

According to Federal Law, (RESPA) the escrow balance of your loan should not go below 1/6th of your total disbursements for the year and the escrow balance must reach the low point at least once during the year. This 1/6th represents a two month "escrow cushion" (minus PMI/MIP) which currently is $275.94.

The low point on your loan will be reached in the month of February. At that time, your escrow balance is projected to be short by $0.02. We determined this by subtracting your escrow cushion from the low point balance.

| Low Point Balance | 275.92 |
|---|---|
| Escrow Cushion | 275.94 |
| **ESCROW SHORTAGE** | **-0.02** |

If you pay your shortage in full using the coupon below, your new monthly payment will be as follows:

| PRINCIPAL/INTEREST | 386.54 |
|---|---|
| MONTHLY ESCROW PAYMENT | $137.97 |
| OTHER | $0.00 |
| **TOTAL MONTHLY PAYMENT** | **$524.51  (without shortage)** |

DETACH AND RETURN THE BOTTOM PORTION WITH PAYMENT USING ENCLOSED ENVELOPE. RETAIN TOP PORTION FOR YOUR RECORDS.

## ESCROW SHORTAGE COUPON

### INTERNET REPRINT

Name:
MAY E MCCLOUD

LOAN: 503182676         SHORTAGE AMOUNT:  $0.02

If you prefer to pay the shortage in full, simply detach the coupon and mail along with the shortage amount in the enclosed envelope. Paying the shortage does not guarantee that your payment will return to the previous amount, because there may have been an increase in your tax and/or insurance in the last year.

FLAGSTAR BANK
P O BOX 1608
TROY, MI 48099-1606

AMOUNT ENCLOSED $ ☐☐☐☐☐☐

Representation of Printed Document

Page 2 of 3

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
## ACCOUNT HISTORY

ACCOUNT NUMBER: 503182676

ANALYSIS DATE: 10/25/16

Your new monthly escrow payment is calculated by adding all of your disbursements (except for PMI, if applicable) and dividing this figure by 12, to represent 1/12th of your projected annual escrow disbursements.

This is a statement of actual activity in your escrow account from 06-01-16 thru 11-30-16. This section provides last year's projections and compares it with actual activity.

| MONTH | PROJECTED PAYMENTS TO ESCROW ACCOUNT | ACTUAL PAYMENTS TO ESCROW ACCOUNT | PROJECTED PAYMENTS FROM ESCROW ACCOUNT | ACTUAL PAYMENTS FROM ESCROW ACCOUNT | ITEM DESCRIPTION | PROJECTED ESCROW RUNNING BALANCE | ACTUAL ESCROW RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| STARTING BALANCE: | | | | | | $689.83 | $827.83 |
| June | 137.97 | 137.96 * | 0.00 | 0.00 | | 827.80 | 985.79 |
| July | 137.97 | 137.96 * | 0.00 | 0.00 | | 965.77 | 1,103.75 |
| August | 137.97 | 137.96 * | 0.00 | 0.00 | | 1,103.74 | 1,241.71 |
| September | 137.97 | 137.96 * | 0.00 | 0.00 | | 1,241.71 | 1,379.67 |
| October | 137.97 | 0.00 * | 0.00 | 0.00 | | 1,379.68 | 1,379.67 |
| November | 137.97 @ | 137.96 * | 0.00 @ | 0.00 | | 1,517.65 | 1,517.63 |
| December | 137.97 @ | 0.00 * | 1,320.00 @ | 0.00 * HAZARD | | 335.62 | 1,517.63 |
| January | 137.97 @ | 0.00 * | 0.00 @ | 0.00 | | 473.59 | 1,517.63 |
| February | 137.97 @ | 0.00 * | 335.62 @ | 0.00 * CITY ANN/BOR | | 275.94 | 1,517.63 |
| March | 137.97 @ | 0.00 * | 0.00 @ | 0.00 | | 413.91 | 1,517.63 |
| April | 137.97 @ | 0.00 * | 0.00 @ | 0.00 | | 551.88 | 1,517.63 |
| May | 137.97 @ | 0.00 * | 0.00 @ | 0.00 | | 689.85 | 1,517.63 |
| Total: | 1,655.64 | 689.80 | 1,655.62 | 0.00 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.
An @ symbol indicates a scheduled payment to or from your escrow account which has not been made.

Last year, we anticipated that payments from your account would be made during this period equaling $1,655.62. Under Federal law, your lowest monthly balance should not have exceeded $275.94 or 1/6th of anticipated payments from the account, unless your mortgage contract or State Law specifies a lower amount. Your actual lowest monthly balance was $985.79. The items with an asterisk on your Account History may explain this.

If you want a further explanation, please call us at (800) 968-7700.

### IMPORTANT MESSAGES

A change in an escrowed item has caused a raise in your monthly escrow payment and created a shortage in your escrow account. Please review the Account History for details.

Questions with regard to a change in your tax payment should be directed to your taxing authority and changes in your insurance premium should be directed to your insurance agent.

If you have auto debit for your mortgage payment and have an additional principal amount included, the principal amount will not change but will be added to your new payment amount. To change your monthly principal amount, please submit a signed written request to our Auto Debit Department at:
Fax: (888) 548-0528, or
Mail: Flagstar Bank, Auto Debit Department, Mail Stop E-115-3, 5151 Corporate Drive, Troy MI 48098

# Reminder

**Escrow Analysis Change**

We are changing your annual escrow review date. In the past, we reviewed your escrow account around the anniversary of your loan. We will now time your annual review to align with the payment of your property taxes. By making this change, we aim to provide you with accurate monthly escrow payment amounts and advise you sooner of adjustments that may need to be made to your escrowed items.

Please note that as a result of this change, you may receive two escrow analyses within 12 months. Once this transition is complete, we will normally review your escrow account annually.

If you have any questions, we can be reached at (800) 968-7700, Monday–Friday 7:30 a.m.–8 p.m. and Saturday 7:30 a.m.–4 p.m. ET.

 EQUAL HOUSING LENDER   Member FDIC



```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM
```

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/21/17
REQ BY MXS                                                       PAGE   1
```

```
MAY E MCCLOUD
C/O VERA JONES
1818 S ALDEN ST
PHILADELPHIA          PA 19143
```

LOAN NUMBER: 0503182676

**************************************************************************

------------------------ CURRENT ACCOUNT INFORMATION ------------------------

| DATE PAYMENT DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|
| 12-01-16 | 524.51 | 386.54 | 5.25000 | 63,784.05 | 1,181.51 |
| 2ND MORTGAGE: | | | 0.00  0.00000 | 0.00 | |

**************************************************************************

```
                    ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
```

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

----------------------------------------------------------------------------

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | ----------OTHER------------ AMOUNT  CODE/DESCRIPTION |
|---|---|---|---|---|

----------------------------------------------------------------------------

```
02-16-17  12-16  152  LATE CHARGE ASSESSMENT
        0.00      0.00       0.00       0.00       19.33-1 LATE CHARGE
01-27-17  02-17  313  CITY TAX
      335.62-     0.00       0.00     335.62-
                                     1181.51     NEW PRINCIPAL/ESCROW BALANCES
01-17-17  12-16  152  LATE CHARGE ASSESSMENT
        0.00      0.00       0.00       0.00       19.33-1 LATE CHARGE
12-28-16  11-16  174  PAYMENT
      524.00    107.02     279.52     137.46
               63,784.05             1517.13     NEW PRINCIPAL/ESCROW BALANCES
12-22-16  00-00  631  PROPERTY PRESERVATION
       15.00      0.00       0.00       0.00
12-16-16  11-16  152  LATE CHARGE ASSESSMENT
        0.00      0.00       0.00       0.00       19.33-1 LATE CHARGE
12-07-16  11-16  148  RETURNED CHECK
        0.00    107.02-    279.52-    137.96-
               63,891.07             1379.67     NEW PRINCIPAL/ESCROW BALANCES
12-05-16  11-16  172  PAYMENT
      524.50    107.02     279.52     137.96                              12-04-16
               63,784.05             1517.63     NEW PRINCIPAL/ESCROW BALANCES
11-16-16  11-16  152  LATE CHARGE ASSESSMENT
        0.00      0.00       0.00       0.00       19.33-1 LATE CHARGE
11-08-16  11-16  148  RETURNED CHECK
        0.00    107.02-    279.52-    137.96-
               63,891.07             1379.67     NEW PRINCIPAL/ESCROW BALANCES
```

```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM


                CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/21/17
REQ BY MXS                                                   PAGE   2


MAY E MCCLOUD
LOAN NUMBER: 0503182676

                ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS   DUE    TRANSACTION        TRANSACTION             EFFECTIVE DATE
DATE      DATE   CODE               DESCRIPTION             OF TRANSACTION
-----------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/      ESCROW PAID/ ------------OTHER------------
    AMOUNT       BALANCE   INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------
11-04-16  11-16  172  PAYMENT
    524.50      107.02     279.52   137.96
             63,784.05            1517.63   NEW PRINCIPAL/ESCROW BALANCES
10-06-16  11-16  148  RETURNED CHECK
      0.00      107.02-    279.52-  137.96-
             63,891.07            1379.67   NEW PRINCIPAL/ESCROW BALANCES
10-04-16  11-16  172  PAYMENT
    524.50      107.02     279.52   137.96
             63,784.05            1517.63   NEW PRINCIPAL/ESCROW BALANCES
09-06-16  10-16  172  PAYMENT                                     09-04-16
    524.50      106.55     279.99   137.96
             63,891.07            1379.67   NEW PRINCIPAL/ESCROW BALANCES
08-04-16  09-16  172  PAYMENT
    524.50      106.09     280.45   137.96
             63,997.62            1241.71   NEW PRINCIPAL/ESCROW BALANCES
07-05-16  08-16  172  PAYMENT                                     07-04-16
    524.50      105.62     280.92   137.96
             64,103.71            1103.75   NEW PRINCIPAL/ESCROW BALANCES
06-06-16  07-16  172  PAYMENT                                     06-04-16
    524.50      105.16     281.38   137.96
             64,209.33             965.79   NEW PRINCIPAL/ESCROW BALANCES
05-04-16  06-16  172  PAYMENT
    524.50      104.71     281.83   137.96
             64,314.49             827.83   NEW PRINCIPAL/ESCROW BALANCES
04-04-16  05-16  172  PAYMENT
    524.51      104.25     282.29   137.97
             64,419.20             689.87   NEW PRINCIPAL/ESCROW BALANCES
03-04-16  04-16  172  PAYMENT
    524.51      103.80     282.74   137.97
             64,523.45             551.90   NEW PRINCIPAL/ESCROW BALANCES
02-04-16  03-16  172  PAYMENT
    524.51      103.34     283.20   137.97
             64,627.25             413.93   NEW PRINCIPAL/ESCROW BALANCES
01-26-16  02-16  313  CITY TAX
    335.62-       0.00       0.00   335.62-
                                   275.96   NEW PRINCIPAL/ESCROW BALANCES
```

```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM


                 CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/21/17
REQ BY MXS                                                    PAGE   3


MAY E MCCLOUD
LOAN NUMBER: 0503182676


              ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS    DUE    TRANSACTION          TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                 DESCRIPTION              OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/      ESCROW PAID/ -----------OTHER------------
    AMOUNT       BALANCE   INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
01-04-16  02-16  172  PAYMENT
     524.51       102.89     283.65    137.97
                64,730.59              611.58   NEW PRINCIPAL/ESCROW BALANCES
12-04-15  01-16  172  PAYMENT
     524.51       102.45     284.09    137.97
                64,833.48              473.61   NEW PRINCIPAL/ESCROW BALANCES
11-25-15  12-15  351  INSURANCE
   1,320.00-        0.00       0.00   1320.00-
                                       335.64   NEW PRINCIPAL/ESCROW BALANCES
11-04-15  12-15  172  PAYMENT
     524.51       102.00     284.54    137.97
                64,935.93             1655.64   NEW PRINCIPAL/ESCROW BALANCES
10-05-15  11-15  172  PAYMENT                                    10-04-15
     524.51       101.55     284.99    137.97
                65,037.93             1517.67   NEW PRINCIPAL/ESCROW BALANCES
09-04-15  10-15  172  PAYMENT
     524.51       101.11     285.43    137.97
                65,139.48             1379.70   NEW PRINCIPAL/ESCROW BALANCES
08-04-15  09-15  172  PAYMENT
     524.51       100.67     285.87    137.97
                65,240.59             1241.73   NEW PRINCIPAL/ESCROW BALANCES
07-06-15  08-15  172  PAYMENT                                    07-04-15
     524.51       100.23     286.31    137.97
                65,341.26             1103.76   NEW PRINCIPAL/ESCROW BALANCES
06-04-15  07-15  172  PAYMENT
     524.51        99.80     286.74    137.97
                65,441.49              965.79   NEW PRINCIPAL/ESCROW BALANCES
05-04-15  06-15  172  PAYMENT
     524.51        99.36     287.18    137.97
                65,541.29              827.82   NEW PRINCIPAL/ESCROW BALANCES
04-06-15  05-15  172  PAYMENT                                    04-04-15
     524.51        98.93     287.61    137.97
                65,640.65              689.85   NEW PRINCIPAL/ESCROW BALANCES
03-23-15  04-15  172  PAYMENT                                    03-21-15
     524.51        98.50     288.04    137.97
                65,739.58              551.88   NEW PRINCIPAL/ESCROW BALANCES
```

```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM
```

```
                  CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 02/21/17
REQ BY MXS                                                        PAGE   4
```

MAY E MCCLOUD
LOAN NUMBER: 0503182676

```
                  ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS    DUE    TRANSACTION          TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                 DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/          ESCROW PAID/ -----------OTHER------------
   AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------
03-04-15  03-15  172  PAYMENT
    524.51       98.07    288.47     137.97
              65,838.08                413.91    NEW PRINCIPAL/ESCROW BALANCES
02-11-15  02-15  313  CITY TAX
    335.62-       0.00      0.00     335.62-
                                      275.94    NEW PRINCIPAL/ESCROW BALANCES
02-04-15  02-15  172  PAYMENT
    524.51       97.64    288.90     137.97
              65,936.15                611.56    NEW PRINCIPAL/ESCROW BALANCES
01-05-15  01-15  172  PAYMENT                                          01-04-15
    524.51       97.22    289.32     137.97
              66,033.79                473.59    NEW PRINCIPAL/ESCROW BALANCES
12-04-14  12-14  172  PAYMENT
    524.51       96.79    289.75     137.97
              66,131.01                335.62    NEW PRINCIPAL/ESCROW BALANCES
11-19-14  12-14  351  INSURANCE
  1,320.00-       0.00      0.00    1320.00-
                                      197.65    NEW PRINCIPAL/ESCROW BALANCES
11-04-14  11-14  172  PAYMENT
    524.51       96.37    290.17     137.97
              66,227.80               1517.65    NEW PRINCIPAL/ESCROW BALANCES
10-06-14  10-14  172  PAYMENT                                          10-04-14
    524.51       95.95    290.59     137.97
              66,324.17               1379.68    NEW PRINCIPAL/ESCROW BALANCES
09-04-14  09-14  172  PAYMENT
    524.51       95.53    291.01     137.97
              66,420.12               1241.71    NEW PRINCIPAL/ESCROW BALANCES
08-14-14  08-14  172  PAYMENT
      0.00       95.12    291.42     137.97
              66,515.65               1103.74    NEW PRINCIPAL/ESCROW BALANCES
08-14-14  07-14  172  PAYMENT
  1,049.02       94.70    291.84     137.97
              66,610.77                965.77    NEW PRINCIPAL/ESCROW BALANCES
07-16-14  07-14  152  LATE CHARGE ASSESSMENT
      0.00        0.00      0.00       0.00      19.33-1 LATE CHARGE
06-06-14  07-14  173  PAYMENT
     15.00        0.00      0.00       0.00      15.00 W WESTERN UNION
```

```
5151 CORPORATE DR.
TROY, MI 48098-2639
PHONE: (800)968-7700
FLAGSTAR.COM
```

CUSTOMER ACCOUNT ACTIVITY STATEMENT                 DATE 02/21/17
REQ BY MXS                                                      PAGE   5


MAY E MCCLOUD
LOAN NUMBER: 0503182676


ACTIVITY FOR PERIOD 04/01/11 - 02/21/17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | ----------OTHER------------ AMOUNT   CODE/DESCRIPTION |
|---|---|---|---|---|

```
06-06-14  06-14  172  PAYMENT
     524.51       94.29     292.25     137.97
               66,705.47               827.80   NEW PRINCIPAL/ESCROW BALANCES
05-05-14  05-14  172  PAYMENT                                            05-02-14
     636.68       93.88     292.66     250.14
               66,799.76               689.83   NEW PRINCIPAL/ESCROW BALANCES
04-18-14  00-00  307  ESCROW REFUND
     628.51-       0.00       0.00     628.51-
                                       439.69   NEW PRINCIPAL/ESCROW BALANCES
04-01-14  05-14  173  PAYMENT
      15.00        0.00       0.00       0.00     15.00 W WESTERN UNION
04-01-14  04-14  172  PAYMENT
     636.68       93.47     293.07     250.14
               66,893.64              1068.20   NEW PRINCIPAL/ESCROW BALANCES
03-05-14  04-14  173  PAYMENT
      15.00        0.00       0.00       0.00     15.00 W WESTERN UNION
03-05-14  03-14  172  PAYMENT
     636.68       93.06     293.48     250.14
               66,987.11               818.06   NEW PRINCIPAL/ESCROW BALANCES
02-05-14  03-14  173  PAYMENT
      15.00        0.00       0.00       0.00     15.00 W WESTERN UNION
02-05-14  02-14  172  PAYMENT
     656.34       92.66     293.88     250.14     19.66 1 LATE CHARGE
               67,080.17               567.92   NEW PRINCIPAL/ESCROW BALANCES
01-27-14  02-14  313  CITY TAX
     335.62-       0.00       0.00     335.62-
                                       317.78   NEW PRINCIPAL/ESCROW BALANCES
01-22-14  02-14  173  PAYMENT
      15.00        0.00       0.00       0.00     15.00 W WESTERN UNION
01-22-14  01-14  172  PAYMENT
     636.68       92.26     294.28     250.14
               67,172.83               653.40   NEW PRINCIPAL/ESCROW BALANCES
01-16-14  01-14  152  LATE CHARGE ASSESSMENT
       0.00        0.00       0.00       0.00     19.33-1 LATE CHARGE
01-10-14  01-14  173  PAYMENT
       0.00        0.00       0.00       0.00     19.33 1 LATE CHARGE
                                                 19.33-
```

```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM


                CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 02/21/17
REQ BY MXS                                                    PAGE    6


MAY E MCCLOUD
LOAN NUMBER: 0503182676

                ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS    DUE    TRANSACTION        TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE               DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/      ESCROW PAID/ ------------OTHER------------
   AMOUNT        BALANCE    INTEREST   BALANCE   AMOUNT   CODE/DESCRIPTION
-----------------------------------------------------------------------------
01-03-14  12-13  173  PAYMENT
       0.00       91.85    294.69    250.14    636.68-
                67,265.09            403.26    NEW PRINCIPAL/ESCROW BALANCES
01-03-14  12-13  173  PAYMENT
      15.00        0.00     0.00      0.00      15.00 W WESTERN UNION
01-03-14  12-13  172  PAYMENT
     656.01        0.00     0.00      0.00     656.01
12-16-13  12-13  152  LATE CHARGE ASSESSMENT
       0.00        0.00     0.00      0.00      19.33-1 LATE CHARGE
11-20-13  12-13  351  INSURANCE
   1,320.00-       0.00     0.00   1320.00-
                                     153.12    NEW PRINCIPAL/ESCROW BALANCES
11-01-13  12-13  173  PAYMENT
      15.00        0.00     0.00      0.00      15.00 W WESTERN UNION
11-01-13  11-13  172  PAYMENT
     636.68       91.45    295.09    250.14
                67,356.94           1473.12    NEW PRINCIPAL/ESCROW BALANCES
10-07-13  10-13  172  PAYMENT                                      10-05-13
     636.68       91.05    295.49    250.14
                67,448.39           1222.98    NEW PRINCIPAL/ESCROW BALANCES
09-06-13  09-13  172  PAYMENT
     636.68       90.66    295.88    250.14
                67,539.44            972.84    NEW PRINCIPAL/ESCROW BALANCES
08-14-13  08-13  172  PAYMENT
     636.68       90.26    296.28    250.14
                67,630.10            722.70    NEW PRINCIPAL/ESCROW BALANCES
07-05-13  07-13  172  PAYMENT
     636.68       89.87    296.67    250.14
                67,720.36            472.56    NEW PRINCIPAL/ESCROW BALANCES
06-04-13  06-13  168  REPAY OF ESCROW ADVANCE
       0.00        0.00     0.00     27.72-     27.72
06-04-13  06-13  172  PAYMENT
     636.68       89.48    297.06    250.14
                67,810.23            222.42    NEW PRINCIPAL/ESCROW BALANCES
05-07-13  05-13  168  REPAY OF ESCROW ADVANCE
       0.00        0.00     0.00    109.22-    109.22
```

```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM


              CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/21/17
REQ BY MXS                                                 PAGE    7


MAY E MCCLOUD
LOAN NUMBER: 0503182676

              ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS   DUE    TRANSACTION          TRANSACTION           EFFECTIVE DATE
DATE      DATE   CODE                 DESCRIPTION           OF TRANSACTION
-------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/       ESCROW PAID/ -----------OTHER-------------
   AMOUNT       BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------
05-07-13  05-13  172  PAYMENT
     515.09       89.09   297.45   109.22       19.33 1 LATE CHARGE
               67,899.71            27.72-  NEW PRINCIPAL/ESCROW BALANCES
04-23-13  04-13  168  REPAY OF ESCROW ADVANCE
       0.00        0.00     0.00   109.22-   109.22
04-23-13  04-13  172  PAYMENT
     495.76       88.70   297.84   109.22
               67,988.80           136.94-  NEW PRINCIPAL/ESCROW BALANCES
04-16-13  04-13  152  LATE CHARGE ASSESSMENT
       0.00        0.00     0.00     0.00       19.33-1 LATE CHARGE
02-25-13  03-13  168  REPAY OF ESCROW ADVANCE
       0.00        0.00     0.00   109.22-   109.22
02-25-13  03-13  172  PAYMENT
     495.76       88.31   298.23   109.22
               68,077.50           246.16-  NEW PRINCIPAL/ESCROW BALANCES
02-04-13  02-13  168  REPAY OF ESCROW ADVANCE
       0.00        0.00     0.00   109.22-   109.22
02-04-13  02-13  172  PAYMENT                                     02-02-13
     495.76       87.93   298.61   109.22
               68,165.81           355.38-  NEW PRINCIPAL/ESCROW BALANCES
01-29-13  02-13  161  ESCROW ADVANCE
     464.60        0.00     0.00   464.60
01-29-13  02-13  313  CITY TAX
     484.33-       0.00     0.00   484.33-
                                   464.60-  NEW PRINCIPAL/ESCROW BALANCES
12-26-12  01-13  168  REPAY OF ESCROW ADVANCE
       0.00        0.00     0.00    89.49-    89.49
12-26-12  01-13  172  PAYMENT
     495.76       87.55   298.99   109.22
               68,253.74            19.73   NEW PRINCIPAL/ESCROW BALANCES
12-14-12  01-13  161  ESCROW ADVANCE
      89.49        0.00     0.00    89.49
12-14-12  08-12  351  INSURANCE
   1,320.00-       0.00     0.00  1320.00-
                                    89.49-  NEW PRINCIPAL/ESCROW BALANCES
12-06-12  01-13  173  PAYMENT
      19.00        0.00     0.00     0.00       19.00 1 LATE CHARGE
```

```
                    5151 CORPORATE DR.
                    TROY, MI 48098-2639
                    PHONE: (800)968-7700
                    FLAGSTAR.COM


                 CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/21/17
REQ BY MXS                                                    PAGE    8


MAY E MCCLOUD
LOAN NUMBER: 0503182676


                ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS   DUE    TRANSACTION            TRANSACTION              EFFECTIVE DATE
DATE      DATE   CODE                   DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/      ESCROW PAID/ -----------OTHER------------
.  AMOUNT       BALANCE    INTEREST  BALANCE  AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------
11-06-12  12-12  172  PAYMENT
      495.76        87.17    299.37   109.22
                68,341.29            1230.51  NEW PRINCIPAL/ESCROW BALANCES
11-05-12  11-12  172  PAYMENT                                    11-03-12
      495.76        86.79    299.75   109.22
                68,428.46            1121.29  NEW PRINCIPAL/ESCROW BALANCES
10-17-12  10-12  172  PAYMENT
      495.76        86.41    300.13   109.22
                68,515.25            1012.07  NEW PRINCIPAL/ESCROW BALANCES
10-16-12  10-12  152  LATE CHARGE ASSESSMENT
        0.00         0.00      0.00     0.00      19.33-1 LATE CHARGE
09-10-12  09-12  172  PAYMENT                                    09-08-12
      495.76        86.03    300.51   109.22
                68,601.66             902.85  NEW PRINCIPAL/ESCROW BALANCES
08-03-12  08-13  351  INSURANCE
      187.50-        0.00      0.00   187.50-
                                      793.63  NEW PRINCIPAL/ESCROW BALANCES
08-03-12  09-12  175  PRINCIPAL PAYMENT
        5.00         5.00      0.00     0.00
                68,687.69                     NEW PRINCIPAL/ESCROW BALANCES
08-03-12  08-12  173  PAYMENT
      495.76        85.63    300.91   109.22
                68,692.69             981.13  NEW PRINCIPAL/ESCROW BALANCES
07-02-12  08-12  175  PRINCIPAL PAYMENT
        5.00         5.00      0.00     0.00
                68,778.32                     NEW PRINCIPAL/ESCROW BALANCES
07-02-12  07-12  173  PAYMENT
      495.76        85.24    301.30   109.22
                68,783.32             871.91  NEW PRINCIPAL/ESCROW BALANCES
06-04-12  07-12  175  PRINCIPAL PAYMENT                          06-02-12
        5.00         5.00      0.00     0.00
                68,868.56                     NEW PRINCIPAL/ESCROW BALANCES
06-04-12  06-12  173  PAYMENT                                    06-02-12
      495.76        84.85    301.69   109.22
                68,873.56             762.69  NEW PRINCIPAL/ESCROW BALANCES
05-15-12  01-13  351  INSURANCE
      435.00-        0.00      0.00   435.00-
                                      653.47  NEW PRINCIPAL/ESCROW BALANCES
```

```
              5151 CORPORATE DR.
              TROY, MI 48098-2639
              PHONE: (800)968-7700
              FLAGSTAR.COM
```

```
                 CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 02/21/17
REQ BY MXS                                                        PAGE    9
```

MAY E MCCLOUD
LOAN NUMBER: 0503182676

```
              ACTIVITY FOR PERIOD 04/01/11 - 02/21/17
PROCESS    DUE    TRANSACTION          TRANSACTION            EFFECTIVE DATE
 DATE      DATE   CODE                 DESCRIPTION            OF TRANSACTION
------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/       ESCROW PAID/ ------------OTHER------------
   AMOUNT        BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
------------------------------------------------------------------------------
05-03-12  05-12  172  PAYMENT
     506.99       84.48     302.06    120.45
               68,958.41             1088.47    NEW PRINCIPAL/ESCROW BALANCES
04-11-12  00-00  307  ESCROW REFUND
      36.71-       0.00       0.00     36.71-
                                      968.02    NEW PRINCIPAL/ESCROW BALANCES
04-02-12  05-12  175  PRINCIPAL PAYMENT
      19.33       19.33       0.00      0.00
               69,042.89                        NEW PRINCIPAL/ESCROW BALANCES
04-02-12  04-12  172  PAYMENT
     506.99       84.03     302.51    120.45
               69,062.22             1004.73    NEW PRINCIPAL/ESCROW BALANCES
03-05-12  04-12  175  PRINCIPAL PAYMENT                                03-03-12
      19.33       19.33       0.00      0.00
               69,146.25                        NEW PRINCIPAL/ESCROW BALANCES
03-05-12  03-12  172  PAYMENT                                          03-03-12
     516.99       83.57     302.97    120.45      10.00 2 RETURNED CHECK FEE
               69,165.58              884.28    NEW PRINCIPAL/ESCROW BALANCES
02-15-12  02-12  313  CITY TAX
     440.67-       0.00       0.00    440.67-
                                      763.83    NEW PRINCIPAL/ESCROW BALANCES
02-13-12  02-12  172  PAYMENT
     506.99       83.21     303.33    120.45
               69,249.15             1204.50    NEW PRINCIPAL/ESCROW BALANCES
```

```
I6461-721                    FLAGSTAR BANK, FSB                      LOAN HISTORY Y-T-D INV F1B CAT 819  INV# 1713903575 T13 12/31/11
                                                                                                                    PAGE 25214
0LN#   0503182676   MAY E MCCLOUD                 1361 S 46TH ST              PHILADELPHIA        PA 19143    EMP 0  POFO
01ST MTGE PRIN 2ND MTGE PRIN  ESC BAL    REST ESC   SUSPENSE      ADV BAL    REPL RES  HUD BAL    LC BAL   INT DUE DUE DATE HUD PRT OF M
       69,332.37        .00     1084.05        .00        .00        .00      .00       .00       .00       .00 02-01-12  .00 00 0
0 P & I 1ST  P&I 2ND    CO TAX CITY TAX  HAZ INS    M I P    LIEN  BSC A & H   LIFE     MISC      REP RES    TOT PAYMT INT RATE DT BM
      386.54       .00     .00    36.82    72.50     .00    11.13   .00   .00 0  .00 0     .00 0     .00      506.99 .0525000 1 8
0   1ST ORIG MTG  2ND ORIG MTG        PRIN BAL BEG  INT IND  CAP FLAG  MTGR SSN    DEF INT BAL  PRIOR YR PPD INT  PPD INT IND GPM ORG
         70,000            0          70,000.00          160 26 2956         0.00           0.00
0ASSUM-DT XPER-DEED FHA-SEC/NUM      LIP PAYOFF FC-TRK-SW YE-ACQ-RPT/DATE   SALE-ID EXEMPT PLGD-LN PMT-OPT CALC-METH ELOC BNKRPCY CH/DT
                                                          N                  2
0PMT PERIOD  1098-DET-HIST  POINTS-PAID/RPTG YR  SUPPR-MICR-STMT   DI-NOT-RPT-YR   REAS CAUS  RI-HDR-SW   1ST-DUE-DT   REO STAT/COMPL DT
   12                               .00                                                                     06-11
0IOE CREDIT YTD/W-H SW/W-H BALANCE     IORE CREDIT YTD/W-H SW/W-H BALANCE   CONSTR CD   NO PURGE FLAG/YR   BNKRPT STAT   LAST DEF DUE
    .00             .00                     .00            .00                                                            05-41
0REC CORP ADV BAL    3RD REC CORP ADV BAL    FORECL WKST  CODE/REINSTATE DATE   INIT ESC STMT CODE / DATE    LOSS MIT STATUS/COMPL DATE
    .00               .00                                                        Y          11-29-11
0 DUE  PROC  TP SQ   AMOUNT    PRINCIPAL  PRINCIPAL  INTEREST  ESCROW    ESCROW    ADVANCE   STATUS    STATUS    UNEARNED   OTHER    CFD
  DATE  DATE  TR NO  RECEIVED  PAID       BALANCE    PAID      PAID      BALANCE   BALANCE   AMOUNT    BALANCE   INT-BAL.   AMOUNTS  DCT
BAL-FWD                                   70000.00                       990.45      .00       .00      .00      .00
09-11 09-30 1 70  1  2148.78   323.27     69676.73   1343.71   481.80    1472.25                                                     1
                                                                                                              ACTION A540
09-11 09-30 3 51  2  CHECK #                                   870.00-   602.25              PAYEE CD
10-11 10-04 1 72  1   506.99    81.70     69595.03    304.84   120.45     722.70      .00      .00       .00      .00                 1
                                                                                     MPL-ID GLBL
                                                                                     PRV-PD FROM: 10-03-11   THRU: 10-03-11 L
                                                                                                                    14.52 AA
                                                                                     BATCH 601 EDIT-SEQ 602573
11-11 10-31 1 72  1   510.99    82.06     69512.97    304.48   120.45     843.15      .00      .00       .00      .00       4.00  11
                                                                                     MPL-ID GLBL
                                                                                     PRV-PD FROM: 10-03-11   THRU: 10-31-11 L
                                                                                                                    14.50 AA
                                                                                     BATCH 616 EDIT-SEQ 044796
12-11 12-01 1 72  1   522.32    82.42     69430.55    304.12   120.45     963.60      .00      .00       .00      .00      15.33  11
                                                                                     MPL-ID GLBL
                                                                                     PRV-PD FROM: 10-31-11   THRU: 12-01-11 L
                                                                                                                    14.48 AA
                                                                                     BATCH 616 EDIT-SEQ 120945
01-12 12-01 1 75  2    15.33    15.33     69415.22      .00      .00      963.60      .00      .00       .00      .00                 1
                                                                                     MPL-ID GLBL
                                                                                     PRV-PD FROM: 12-01-11   THRU: 12-01-11 L
                                                                                     BATCH 616 EDIT-SEQ 120945
01-12 12-29 1 72  1   506.99    82.85     69332.37    303.69   120.45    1084.05      .00      .00       .00      .00                 1
                                                                                     MPL-ID GLBL
                                                                                     PRV-PD FROM: 12-01-11   THRU: 12-29-11 L
                                                                                                                    14.46 AA
                                                                                     BATCH 600 EDIT-SEQ 148941
```

**MORTGAGE HISTORY LEDGER**
01/01/2011 - 12/31/2011

Page 1 of 1

Loan 503182676   Loan Type:  ML   Borrower:  May E Mccloud   XXX-XX-2956

Status  ACTIVE 09/01/11          Ctrl HGa          Int Status                    Type  CONV

P & I       386.54       Payment       506.99       Inv ID  1713903575          Late Due       19.33

| Desc | Tr-Dt | Pd-To | \|-----Principal----\| | | \|------Interest------\| | | \|------Escrow-----\| | | \|------Escrow2------\| | \|--Late--\| | \|-Total-\| |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BAL | 05/04 | 05/11 | | 70,000.00 | | 120.82 | | | 990.45 | | 0.00 | | |
| HSG | 05/12 | Payment updated by  See Audit Trail | | | | | | | | | | | |
| SAL | 05/12 | SOLD FROM   98 TO HGa | | | | | | | | | | | |
| HUS2 | 05/16 | HAZARD | | C#584834 VA4893 | | PRO | -870.00 | 120.45 | | 0.00 | 0.00 | | |
| LKB | 05/23 | 06/11 | 80.29 | 69,919.71 | 306.25 | 427.07 | 120.45 | 240.90 | | 0.00 | 0.00 | 0.00 | 506.99 |
| LKB | 05/31 | 07/11 | 80.64 | 69,839.07 | 305.90 | 732.97 | 120.45 | 361.35 | | 0.00 | 0.00 | 0.00 | 506.99 |
| WES | 08/22 | 08/11 | 80.99 | 69,758.08 | 305.55 | 1,038.52 | 120.45 | 481.80 | | 0.00 | 0.00 | 0.00 | 506.99 |
| WES | 08/22 | C WES | 0.00 | 69,758.08 | 0.00 | 1,038.52 | 0.00 | 481.80 | | 0.00 | 0.00 | 0.00 | 15.00 |
| WES | 09/01 | 09/11 | 81.35 | 69,676.73 | 305.19 | 1,343.71 | 120.45 | 602.25 | | 0.00 | 0.00 | 0.00 | 506.99 |
| WES | 09/01 | C WES | 0.00 | 69,676.73 | 0.00 | 1,343.71 | 0.00 | 602.25 | | 0.00 | 0.00 | 0.00 | 15.00 |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

MAY 2017

003419

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION | MAY E. MCCLOUD |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5151 CORPORATE DRIVE<br>TROY MI 48098 | 1361 SOUTH 46TH STREET<br>PHILADELPHIA PA 19143 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | VERA L. JONES |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1361 SOUTH 46TH STREET<br>PHILADELPHIA PA 19143 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[ ] More than $50,000.00 | [ ] Arbitration<br>[ ] Jury<br>[ ] Non-Jury<br>[X] Other: MORTGAGE FORECLOSURE | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

CASE TYPE AND CODE

3D - RESIDENTIAL OWNER OCCUPIED-MR

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
|---|---|

FILED
PRO PROTHY

MAY 23 2017

M. BRYANT

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: MATRIX FINANCIAL SERVICES CORPORATION

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ABIGAIL BRUNNER | 1617 JOHN F KENNEDY BLVD<br>PHILADELPHIA PA 19103 |
| PHONE NUMBER: (215)563-7000 | FAX NUMBER: (215)563-7009 | |
| SUPREME COURT IDENTIFICATION NO<br>319034 | E-MAIL ADDRESS<br>ABIGAIL.BRUNNER@PHELANHALLINAN.COM |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>ABIGAIL BRUNNER | DATE SUBMITTED<br>Tuesday, May 23, 2017, 08:01 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral and Information Service
Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia, PA 19107
Telephone (215) 238-6333

**(SEE ATTACHED ESPANOL AVISO)**

File #: 1004559

Case ID: 170503419

## AVISO

Le han demandado a usted en la corte. Si usted desea defenderse de las demandas expuestas en las paginas siguientes, debe tomar acción dentro de veinte (20) dias al partir de la fecha de la demanda y el aviso y debe asentar una comparencia escrita, en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciónes a las demandas en su contra. Sea avisado que si usted no se defiende, el caso puede proceder sin usted y se puede registrar una sentencia contra usted por la corte sin otro aviso para cualquier dinero reclamado en esta demanda u otros reclamos o compensación solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importante para ti.

USTED DEBE LLEVAR ESTE PAPEL A SU ABOGADO CUANTO ANTES. SI USTED NO TIENE UN ABOGADO, VAYA O LLAME POR TELEFONO A LA OFICINA QUE ESTA SIGUIENTE. ESTA OFICINA PUEDE PROVEERLE INFORMACIÓN SOBRE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ESTA OFICINA PODRIA PROVEERLE INFORMACIÓN SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES GRATIS O BAJO COSTO PARA PERSONAS ELEGIBLE.

ASSOCATION DE LICENCIDADOS DE FILADELFIA
SERVICE DE REFERENCIA E INFORMACION LEGAL
1101 MARKET STREET, 11TH FLOOR
PHILADELPHIA, PA 19107
(215)238-6300

File #: 1001559

Case ID: 170503419

**FILED**

01 AUG 2017 06:05 pm

Civil Administration

K. KALOGRIAS

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION | : | Court of Common Pleas |
| Plaintiff | : | Civil Division |
| | : | |
| vs. | : | PHILADELPHIA County |
| | : | |
| MAY E. MCCLOUD | : | No. 170503419 |
| VERA L. JONES | : | |
| Defendants | | |

**ORDER**

AND NOW, this **9** day of **AUG**, 2017, upon consideration of Plaintiff's

motion for Service Pursuant to Special Order of Court, it is hereby **ORDERED** and **DECREED**,

that said Motion is **GRANTED**.

It is further **ORDERED** and **DECREED** that Plaintiff may obtain service of the

Complaint ~~and of the Notice of Sheriff's Sale~~ as authorized by Pa.RCP. 3129.2 (c)(1)(i)(C), on

the above captioned Defendants, MAY E. MCCLOUD and VERA L. JONES, by:

1.    Posting of the premises: 1361 SOUTH 46TH STREET, PHILADELPHIA,

PA 19143-3827 by the Sheriff or a non-party competent adult; and

*CERTIFIED*

2.    /First class mail to MAY E. MCCLOUD and VERA L. JONES at the last

known address, 1818 SOUTH ALDEN STREET, PHILADELPHIA, PA 19143-5504 and

the mortgaged premises located at 1361 SOUTH 46TH STREET, PHILADELPHIA, PA

19143-3827. Service by mail is complete upon the date of mailing.

It is further **ORDERED** and **DECREED** that counsel for Plaintiff is hereby directed to file

a certificate of service with the Prothonotary's office to ensure compliance with this Court Order.

**BY THE COURT:**

Matrix Financial Servic-ORDER

Abbe F. Fa

J.

PH # 1004559/BCA

Case ID: 170503419

Control No.: 17080222

PHELAN HALLINAN DIAMOND & JONES, LLP
Abigail Brunner, Esq., Id. No.319034
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
Abigail.Brunner@phelanhallinan.com
215-563-7000

ATTORNEY FOR PLAINTIFF

MATRIX FINANCIAL SERVICES CORPORATION
5151 CORPORATE DRIVE
TROY, MI 48098

COURT OF COMMON PLEAS

CIVIL DIVISION

        Plaintiff

v.

TERM

NO.

MAY E. MCCLOUD
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

PHILADELPHIA COUNTY

VERA L. JONES
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

        Defendants

## CIVIL ACTION - LAW (3.0 REAL PROPERTY)
## COMPLAINT IN MORTGAGE FORECLOSURE
### 3010 FORECLOSURE

File #:  1004559

Case ID: 170503419

1.  Plaintiff is

    MATRIX FINANCIAL SERVICES CORPORATION
    5151 CORPORATE DRIVE
    TROY, MI 48098

2.  The name(s) and last known address(es) of the Defendant(s) are:

    MAY E. MCCLOUD
    1361 SOUTH 46TH STREET
    PHILADELPHIA, PA 19143-3827

    VERA L. JONES
    1361 SOUTH 46TH STREET
    PHILADELPHIA, PA 19143-3827

    who is/are the mortgagor(s) and/or real owner(s) of the property hereinafter described.

3.  On 04/14/2011 MAY E. MCCLOUD and VERA L. JONES made, executed and

    delivered a mortgage upon the premises hereinafter described to Mortgage Electronic

    Registration Systems, Inc. as Nominee for FLAGSTAR BANK, FSB. , which mortgage

    is recorded in the Office of the Recorder of Deeds of PHILADELPHIA County, in

    Mortgage Document ID 52340885. By Assignment of Mortgage recorded 03/17/2017 the

    mortgage was assigned to PLAINTIFF, which Assignment is recorded in Assignment of

    Mortgage Document ID 53187986. The mortgage and assignment(s), if any, are matters

    of public record and are incorporated herein by reference in accordance with Pa.R.C.P.

    1019(g); which Rule relieves the Plaintiff from its obligations to attach documents to

    pleadings if those documents are of public record.

4.  The premises subject to said mortgage is described as attached.

Case ID: 170503419

5. The mortgage is in default because monthly payments of principal and interest upon said mortgage due 12/01/2016 and each month thereafter are due and unpaid, and by the terms of said mortgage, upon failure of Mortgagor to make such payments after a date specified by written notice sent to Mortgagor, the entire principal balance and all interest due thereon are collectible forthwith.

6. The following amounts are due on the mortgage as of 04/29/2017:

| | |
|---|---|
| Principal Balance | $63,784.05 |
| Interest | $1,652.18 |
| 11/01/2016 through 04/29/2017 | |
| Late Charges | $96.65 |
| Property Inspections | $60.00 |
| Subtotal | $65,592.88 |
| Escrow Credit | ($1,181.51) |
| **TOTAL** | **$64,411.37** |

7. Plaintiff is _not_ seeking a judgment of personal liability (or an _in personam_ judgment) against the Defendant(s) in the Action; however, Plaintiff reserves its right to bring a separate Action to establish that right, if such right exists. If Defendant(s) has/have received a discharge of personal liability in a bankruptcy proceeding, this Action of Mortgage Foreclosure is in no way an attempt to reestablish such personal liability discharged in bankruptcy, but only to foreclose the mortgage and sell the mortgaged premises pursuant to Pennsylvania Law.

Case ID: 170503419

File #: 1004559

8.   Notice of Intention to Foreclose as set forth in Act 6 of 1974, Notice of Homeowner's

Emergency Mortgage Assistance Program pursuant to Act 91 of 1983, as amended in

2008, and/or Notice of Default as required by the mortgage document, as applicable, have

been sent to the Defendant(s) on the date(s) set forth thereon, and the temporary stay as

provided by said notice has terminated because Defendant(s) has/have failed to meet with

the Plaintiff or an authorized consumer credit counseling agency, or has/have been denied

assistance by the Pennsylvania Housing Finance Agency. A copy of said notice(s),

redacted to remove account information, is attached hereto as Exhibit "A".

WHEREFORE, Plaintiff demands an in rem judgment against the Defendant(s) in the

sum of $64,411.37, together with interest, costs, fees, and charges collectible under the mortgage

including but not limited to attorney fees and costs, and for the foreclosure and sale of the

mortgaged property.

PHELAN HALLINAN DIAMOND & JONES, LLP

By: _____
Abigail Brunner, Esq., Id. No.319034
Attorney for Plaintiff

Case ID: 170503419

## VERIFICATION

I, _____Vanessa M. Ellison_____, hereby state that I am _Loan Administration Analyst_ of

FLAGSTAR BANK F.S.B., mortgage servicing agent for Plaintiff in this matter. The Plaintiff

has delegated the mortgage servicing responsibility to FLAGSTAR BANK F.S.B. for the

mortgage loan which is the subject of this action. Plaintiff lacks sufficient information to make

this verification because Plaintiff is not the entity which maintains the business records for the

mortgage. FLAGSTAR BANK F.S.B. is in possession and control of all documents and records

supporting the statements in the foregoing complaint and therefore the servicer, rather than the

Plaintiff, is the appropriate entity to make this verification.

I have reviewed the business records relating to this account, and am authorized to make

this verification. I hereby verify that the statements made in the foregoing Civil Action in

Mortgage Foreclosure are true and correct to the best of my information and belief. I understand

that this statement is made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn

falsification to authorities.

DATE: _5/15/17_

Name: _____Vanessa M. Ellison_____

Title: Loan Administration Analyst

FLAGSTAR BANK F.S.B.

File #: 1004559

Name: MCCLOUD

Case ID: 170503419

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northeasterly side of 46th Street at the distance of 478 feet, 4 inches Southeastward from the Southeast side of Woodland Avenue in the 27th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 46th Street 14 feet, 4 inches and extending of that width in length or depth Northeastward 80 feet to a certain alley 3 feet wide.

BEING KNOWN AS 1361 South 46th Street.

TAX ID #27-2-1658-00

TOGETHER with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever.

BEING THE SAME premises, which John A. Morris, Executor by Deed dated 12/1/82 and recorded 12/9/82 in Philadelphia County in Deed Book EFP 615 page 436 granted and conveyed unto Leon Womack and Jessie Womack, his wife, in fee.

BEING the same premises which Leon A. Womach and Jessie Womach H/W, by Deed dated March 18, 1996, and recorded June 28, 1996, in the Office of the Recorder of Deeds in and for

County of Philadelphia, Pennsylvania, in Book JTD 27, Page 480, granted and conveyed unto

May E. McCloud and Vera L. Jones, in fee.


**PROPERTY ADDRESS: 1361 SOUTH 46TH STREET, PHILADELPHIA, PA 19143-3827**

**BRT#27-2-1658-00**

Case ID: 170503419



RESPONSE DATE

FEB 2 2 2018

OFFICE OF JUDICIAL
RECORDS

015398

|  |  |  |
|---|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, 5151 CORPORATION DRIVE TROY, MI 48098 | : : : : | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY CIVIL DIVISION – LAW |

MATRIX FINANCIAL SERVICES
CORPORATION,
5151 CORPORATION DRIVE
TROY, MI 48098

     Plaintiff,

*v.*

:MAY-E. MCCLOUD:
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

-AND-

:VERA-L. JONES: *in propria persona*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

     Respondents.

     IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

CIVIL DIVISION – LAW

DOCKET NO.  170503419

## **NOTICE TO PLEAD**

To Plaintiff:

You are hereby notified to file a written response to the enclosed Preliminary Objections

within twenty (20) days from the date of service or a judgment will be entered against you.

In Honor,

"All Rights Reserved"

Date of Execution: 02.02.2018

*Autograph of Trustee for the
Be Kind and Unified Indigenous
Foreign Family Trust
On behalf of ©May E. McCloud™
and © Vera L. Jones™ and the
Authorized Living woman and
Representative :Vera-Lynn: Jones:*

Matrix Financ Srvc Vs Mccloud, May E -PROBJ



17050341900036

015398

| | |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, 5151 CORPORATION DRIVE TROY, MI 48098 | : IN THE COURT OF COMMON PLEAS : OF PHILADELPHIA COUNTY : : CIVIL DIVISION – LAW : : DOCKET NO.  170503419 |
|        Plaintiff, | : : |
| *v.* | : : |
| :MAY-E. MCCLOUD: 1361 SOUTH 46TH STREET PHILADELPHIA, PA 19143-3827 | : : : : |
| -AND- | |
| :VERA-L. JONES: *in propria persona* 1361 SOUTH 46TH STREET PHILADELPHIA, PA 19143-3827 | |
|        Respondents. | |

## <u>ORDER</u>

**AND NOW, this _____day of _____, 2018, upon acceptance, comprehension and consideration of the RESPONSE TO ORDER TO FILE ANSWER TO DEFENDANTS' COMPLAINT of beneficiaries of the LODIAL *RES* 1361 S. 46th Street, Colonial territorial designation: Philadelphia, Pennsylvania 19143, it is hereby ORDERED and DECREED that the PRELIMINARY OBJECTIONS are SUSTAINED and that:**

    1.  **The Complaint in the above captioned matter is DISMISSED for:**

        a.  **Lack of personal and subject matter jurisdiction;**

        b.  **Improper from of service of a complaint;**

    c.  **Improper venue under Rule 1006 (e) and *Forum Non-Conveniens* and inability to hold a fair and impartial trial;**

    d.  **Insufficient specificity in a pleading;**

    e.  **Legal insufficiency of a pleading; and**

    f.  **Lack of capacity to sue.**

By THE COURT:

_____ J.

|  |  |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, 5151 CORPORATION DRIVE TROY, MI 48098 | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY CIVIL DIVISION – LAW DOCKET NO. 170503419 |

:
:
:
:
:
:

             **Plaintiff,**

                                **015398**

*v.*

:MAY-E. MCCLOUD:*In Propria Persona*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

-AND-

:VERA-L. JONES: *In Propria Persona, Sui Juris*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

             **Respondents.**

### TRUSTEE AND BENEFICIARIES OF 1361 SOUTH 46TH STREET PRELIMINARY OBJECTIONS TO MATRIX FINANCIAL SERVICES CORPORATION FORECLOSURE PETITION

Pursuant to Pa.R.C.P. 1028, the *Res* 1361 South 46th Street, by and through its authorized Trustee(s) and living woman and Representative-beneficiary :Vera-Lynn Jones: *in propria persona de facto* and *de jure* (Beneficiary), and files the herein **PRELIMINARY OBJECTIONS** to Plaintiff's Mortgage Foreclosure for the following factual reasons:

### BACKGROUND

1. Plaintiff, Matrix Financial Services Corporation filed a Mortgage Foreclosure Complaint according to prothonotary docket, May 23, 2017.

2. On or about August 23, 2017, *Res, 1361 S. 46th Street* found documents placed in the United States Postal personal mail box without envelopes, stamps or indications of professional

mail service or personal service as required under the Pennsylvania Code 400.1 for the First Judicial District governing service of process.

3. On or about August 23, 2017, *Res, 1818 S. Alden Street* found documents left on the outside steps in a brown envelope not conforming to the Pennsylvania Code 400.1 for the First Judicial District governing service of process.

4. On or about August 23, 2017, were the first time Notice of a Mortgage Foreclosure law suit was received.

1. Attached to the Complaint is an Order dated August 9, 2017, approving Plaintiff's *request* for alternative service, and providing Plaintiff with the "alternative" means of serving the Respondents, pursuant to Pa.R.C.P 3129.2(c ) (1) (i) (C), which specifically was to be posted "of the premises 1361 SOUTH 46TH STREET, PHILADELPHIA, PA 19143-3827 by the Sheriff or a non-party competent adult; and 2. *Certified First Class mail* to MAY E. MCCLOUD and VERA L. JONES at the last known address, 1818 SOUTH ALDEN STREET, PHILADELPHIA, PA 19143-5504 and 1361 SOUTH 46TH STREET, PHILADELPHIA, PA 19143." As per the Order and the Rules governing process, service was NEVER effectuated by CERTIFIED MAIL or by a sheriff or non-party competent adult. *Strict Proof is Demanded Otherwise.*

2. Prior to August 23, 2017, Respondents were unaware of a person called MATRIX FINANCIAL SERVICES CORPORATION.

3. The Complaint specifically indicates the Mortgage was assigned by FLAGSTAR BANK, with whom RESPONDENTS had been in communication concerning the questionable FRAUDULENT MORTGAGE allegedly provided in return for a $70,000 loan to Respondent-Beneficiary : May-E. McCloud: who was stricken with chronic Dementia and therefore fully incompetent.

4. From January 2017 until about April of 2017 records evidencing documents were requested for review and substantiating automated payments from "May-E. McCloud: account by FLAGSTAR BANK and FLAGSTAR never provided.

5. FLAGSTAR BANK is not a Plaintiff or party to this Mortgage Foreclosure Complaint.

6. MATRIX FINANCIAL SERVICES CORPORATION asserts in its Complaint that there has been "an assignment" of the alleged Loan.

7. MATRIX FINANCIAL SERVCES CORPORATION attaches a mere summary of alleged amounts allegedly owed by Respondent-Beneficiaries without providing any additional evidence.

8. MATRIX FINANCIAL SERVCES CORPORATION fails to attach any substantive and evidentiary relevant documents proving their relationship and claim as a Creditor-Lender against Respondent-Beneficiaries.

9. MATRIX FINANCIAL SERVICES CORPORATION Complaint asserts superior rights of claim and ownership to the *Res* and denies being required o produce evidence asserting that such evidence are "matters of public record" citing Pa.R.C.P1019(g) and ignoring the precedential common law and statutory Contract and Agreement history as per Pa.R.C.P 1019(h) and (i) which specifically states:

> "(h)  When any claim or defense is based upon an agreement, the pleading shall state specifically if the agreement is oral or written.
>
> Official Note:
>
> If the agreement is in writing, it must be attached to the pleading. See subdivision (i) of this rule.
>
> (i)      When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance of the writing."[1]

10. MATRIX FINANCIAL SERVICES CORPORATION Complaint is a boilerplate standard Mortgage Foreclosure Complaint that is utilized by the company to give the appearance of legitimate standing, that is presented by attorneys on behalf of their clients in assisting them to steal property and harass legitimate real property owners

11. Plaintiff and Plaintiff's attorneys are operating under color of authority and is utilizing the United States Court System as a means to advance its unlawful and corrupt objectives.

---

[1] Pa.R.C.P 1019(h) and (i)

|  |  |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, 5151 CORPORATION DRIVE TROY, MI 48098 | : IN THE COURT OF COMMON PLEAS : OF PHILADELPHIA COUNTY : : CIVIL DIVISION – LAW : : DOCKET NO.  170503419 |

MATRIX FINANCIAL SERVICES
CORPORATION,
5151 CORPORATION DRIVE
TROY, MI 48098

        Plaintiff,

*v.*

:MAY-E. MCCLOUD: *In Propria Persona*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

-AND-

:VERA-L. JONES: *In Propria Persona, Sui Juris*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

        Respondents.

015398

**LEGAL MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY OBJECTIONS
FILED IN RESPONSE TO PLAINTIFF'S COMPLAINT**

### I.      STANDARD FOR PRELIMINARY OBJECTIONS

Under, Rule 1028(a) of the Pennsylvania Rules of Civil procedure, in pertinent part, the rules state that "preliminary objections may be filed by any party to any pleading [on] the following grounds:

      **(1) lack of jurisdiction over the subject matter of the action or the person of the**

      **defendant, improper venue or improper form or service of a writ of summons**

or a complaint;

(2) failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter;

(3) insufficient specificity in a pleading;

(4) legal insufficiency of a pleading (demurrer);

(5) Lack of capacity to sue, nonjoinder of a party or misjoinder of a cause of action;

(8) failure to exercise or exhaust a statutory remedy

Pa. R.C.P. 1028(a)(1)-(8).

In making its determination upon preliminary objections, the court must accept as true all well-pleaded *material facts* alleged in the complaint, as well as all inferences deductible from them. *Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc.*, 340 Pa. Super. 253, 260, 489 A.2d 1364, 1368 (Pa. Super. Ct. 1985). Preliminary objections will be sustained only if they are clear and free from doubt. *Pennsylvania AFL-CIO ex rel. George v. Com.*, 563 Pa. 108, 114, 757A.2d 917, 920 (Pa. 2000). The test is whether it is clear from all of the facts pled that pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Bourke v.Kazaras*, 746 A.2d 642, 643 (Pa. Super. Ct. 2000) (quotation omitted).

## II.   PRELIMINARY OBJECTION TO PERSONAL AND SUBJECT MATTER JURISDICTION

Jurisdiction is a fundamental and elemental right to due process as indicated by the Pennsylvania Constitution, United States Constitution and Pennsylvania Statutes.

42 Pa.C.S. § 5301 provides:

"(a) General rule.--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

**(1) Individuals.--**

    **(i)    Presence in this Commonwealth at the time when process is served.**

    **(ii)   Domicile in this Commonwealth at the time when process is served.**

    **(ii)   Consent, to the extent authorized by the consent."**

Here, Respondents as indigenous peoples are asserting allative rights under:

1. the Declaration of the Rights of Indigenous peoples *in passim;*
2. The American Declaration on the Rights of Indigenous Peoples, and utilizing the Constitution for the Commonwealth of Pennsylvania, and United States Constitution, which all persons and citizens of the Commonwealth are duty bound to enforce. This includes persons operating as entities as well as the States and their agents *et cetera.*

It is factual that Respondents were never properly served according to Pennsylvania Procedural rules governing processes: (i) process was never properly served; (ii) process was never properly served; and (iii) respondents do not freely authorize consent. Any and all assertions made by Plaintiff's or Plaintiff's attorneys are false and strict proof is demanded.

Further, by responding to this herein frivolous and fraudulent lawsuit filed by Plaintiff against Respondents, Respondents vehemently declare that they do not waive any rights and that they reserve any and all rights under the U.C.C. 1-308, International Laws and Customary Laws.

## III. PRELIMINARY OBJECTION FAILURE OF COMPLAINT TO CONFORM TO PENNSYLVANIA TERRITORIAL LAW OR RULE UNDER Pa.R.C.P 1028(a)(2) by FAILURE OF 1019(i) and (h)

Pennsylvania Rule of Civil Procedure 1019(i) requires written documents forming the basis of a claim to be attached to a pleading. Specifically, "[w]hen any claim or defense is based upon a writing, the pleader *shall* attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." Pa. R.C.P. 1019(i). Here, it is clear that Plaintiff's have alleged

that a contractual agreement exists between Plaintiff and Respondents and have failed to attach the alleged contract to the Complaint.

Further, Rule 1019(h) *requires* that if a pleading bases a claim or defense upon a written agreement, "it must be attached to the pleading." Pa. R.C.P. 1019(h). Again, the written agreement was not and is not attached to the Complaint.

Here, Plaintiff asserts standing and claims against Respondent upon a contractual right and not merely a contractual right but an *assigned* contractual right, of which neither Respondent-beneficiaries were an offeror/offeree or the conveyor/conveyee of lawful consideration wherein MATRIX FINANCIAL SERVICES CORPORATION is concerned.

By failing to attach any *lawful* agreements/contracts/promissory notes/deposit *slips et cetera* to the Complaint, Plaintiff has failed to conform to the territorial laws of the Commonwealth of Pennsylvania. *Strict proof is demanded of the contractual relationship or agreement and mutual obligations and duties existing between the parties.*

Further, by asserting that one has rights to a void contract, fraudulent contract or a contract to which Plaintiff is not a party, flies in the face of the very nature of contract law and the enforceability of contracts. Such assertions are fraudulent at most and scandalous in the least of which those who are engaged in the acts of criminality are involved and prone.

## IV.   PRELIMINARY OBJECTION FAILURE TO SUFFICIENTLY PLEAD UNDER Pa.RCP 1028(a)(3)

Plaintiff's Complaint contends that they are entitled to some form of relief or remedy under number (7) pleading, and further desires to wickedly dispossess Respondent-beneficiaries of all their rights, without providing any evidence of a valid contract or consideration.

Plaintiff fails to provide sufficient facts that creates a factual nexus or sufficient relationship between Plaintiff and Respondents that creates mutual rights, duties and obligations on both parties that gives rise to Plaintiff's assertion.

## V.   PRELIMINARY OBJECTION FAILURE TO LEGALLY SUFFICIENTLY PLEAD UNDER Pa.RCP 1028(a)(4)

Plaintiff further asserts that Plaintiff is entitled to recover by utilizing Pennsylvania Law to foreclose the mortgage and sell the mortgaged premises that Plaintiff has failed:

    a.   To prove legally and lawfully exists, and

    b.  To prove that Plaintiff is in lawful possession by merely attaching:

    a)  To prove Possession of Lawful Contract between Plaintiff and Respondents;

    b)  To prove Possession of Promissory Notes;

    c)  To prove Possession of book keeping or Accounting evidencing ownership of funds or consideration provided;

    d)  To prove Possession of Affidavit or sworn testimony evidencing Plaintiff is lawful Creditor;

    e)  To provide Document Evidencing transfer of funds or consideration in exchange for alleged lawful mortgage;

    f)  To provide Copy of Bank Transfer of consideration; *i.e wire transfer, check et cetera;* OR

    g)  To provide any lawful documentation containing the signature of MATRIX FINANCIAL SERVICES CORPORATION establishing a lawful and binding relationship as Plaintiff being lawful Creditor and Respondents being debtors who received lawful consideration.

Plaintiff's Complaint pleads no relevant facts providing why these documents were not attached and has provided no documentary evidence that Plaintiff is the legitimate party with standing to assert such a claim against Respondents.

The Complaint fails to provide relevant, required and necessary documents to provide a scintilla of acceptance of Plaintiff's pleadings and are therefore not in compliance with the rules.

## VI.    PRELIMINARY OBJECTION LACK OF CAPACITY TO SUE UNDER Pa.RCP 1028(a)(5)

Plaintiff's Complaint provides seven (7) insufficiently plead pleadings and one number (8) that evidences theft and extortion.  None of the assertions provide factual evidence that Plaintiff and Respondent have ever met/ had a meeting of the minds or that Plaintiff has suffered a direct injury as a result of a duty/obligation that has been breached by Respondents.

    c.  Respondent :May-E. McCloud: has dementia.

    d.  Respondent :Vera-L. Jones:, former owner in fee and current beneficiary of Res 1361 SOUTH 46TH STREET was listed on the original Purchase Deed as Fee prior to conveyance of property to the **Be Kind and Unified Indigenous Foreign Private Family Trust.** Respondent: Vera-L. Jones: has never entered into any agreement or contract with Plaintiff.

    e.  **Be Kind and Unified Indigenous Foreign Private Family Trust,** has never entered into any agreement or contract with Plaintiff.

Plaintiff fails to provide any documentary evidence that any such Agreements or Contracts existed between Plaintiff and Respondents and that as a result Plaintiff suffered injury at the direct and proximate cause and effect of Respondent-beneficiaries duty owed to Plaintiff.

Plaintiff Complaint fails to establish capacity and standing to sue as required by Pa.R.C.P. 1028(a)(5) and therefore lacks the capacity to sufficiently come to dock as a vessel in distress seeking assistance from its Court for justice

## VII.   PRELIMINARY OBJECTION CONCLUSION

Plaintiff has failed to proffer any factual and legal evidence through pleadings or attaching material documents as evidence to the Complaint and establishing any cognizable and honorable basis for this law suit. Therefore any remedy to be provided at Common Law, International Law, or by Statutory Law is beyond Plaintiff's reach in this matter.

Furthermore, it is evident from Plaintiff's Complaint that Plaintiff is an opportunist and looking to take part in the housing mortgage foreclosure crisis that is currently occurring in Philadelphia, although not solely, and primarily against a marginalized and discriminated group of people who are not only indigenous to these lands but who have been targeted for the sole purpose of advancing the Gentrification scheme.

Such tactics are direct violations of the Declaration on the Rights of Indigenous Peoples established under the United Nations for the protection of people who have been and continue to be detrimentally affected by colonialization.

**WHEREFORE,** based upon the aforementioned and by Plaintiff's very own Complaint which serves as an admission that Plaintiff lacks credible and cognizable grounds to Plaintiff's Complaint, Respondent-beneficiaries and their trustee demand that Plaintiff's Complaint be **DISMISSED** and that Respondents are reasonably compensated for the frivolous and scandalous fraudulent attempt to instill terror in Respondent-beneficiary through such conveyance of paper terrorism fraudulently providing rights to dispossess of real property *res.*

Honorably Submitted,

All Rights Reserved

Date of Execution: 02.02.2018

Autograph of Trustee for the
Be Kind and Unified Indigenous
Foreign Private Family Trust
On behalf of ©May E. McCloud™
and © Vera L. Jones™ and
the Authorized Living woman and
Representative :Vera-Lynn: Jones:
Al-ways in Proprio Persona

Autograph of: Vera L. Jones:
The Authorized Representative,
Foreign Indigenous Beneficiary and
Living Woman as Created by the
Creator
-All Rights Reserved-

## VERIFICATION

By my autographed hand ensealed _Vera L. Jones_ , I verify that the factual statements herein are true, correct and made with honor and free of any misleading information, lies, deceit or untruths according to my knowledge and comprehension.

Respondent-beneficiary _Vera L. Jones_ and Trustee _Lynn El_ of the **Be Kind and Unified Indigenous Foreign Private Family Trust** verify that **in accordance with the laws of the Creator, Jus Cogens (International Law)**, and **Customary Laws**, that the statements presented herein are made with the utmost knowledge and intent to represent **TRUTH** and that it is comprehended that having intentionally being made of the corrupt mind with the intent to commit wicked, deceitful and perjuries and that such actions cause an understanding of the established 18 Pa. C.S. 4904 relating to unsworn falsifications, that have customarily been codified as per Jus Cogens.

Honorably Submitted,

All Rights Reserved

Date of Execution: 02.02.2018

*Autograph of Trustee for the*
*Be Kind and Unified Indigenous*
*Foreign Private Family Trust*
*On behalf of ©May E. McCloud™*
*and © Vera L. Jones™ and*
*the Authorized Living woman and*
*Representative :Vera-Lynn: Jones:*
*Al-ways in Propria Persona*
*Juris*

*Autograph of: Vera-L. Jones:.*
*Propria Persona, Sui Juris*
*The Authorized Representative,*
*Foreign Indigenous Beneficiary and*
*Living Woman as Created by the*
*Creator*
*-All Rights Reserved-*

Cause No. _____   Docket No: 170503419 _____

| | | |
|---|---|---|
| In the matter of:<br>**MATRIX FINANCIAL SERVICES**<br>**CORPORATION** | ) | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY, PENNSYLVANIA |
| | ) | DOCKET NUMBER: 170503419 |
| **vs.** | ) | |
| **MAY E. MCCLOUD**<br>**VERA L. JONES**<br>c/o 1361 S. 4th STREET<br>Philadelphia, Pennsylvania 19143 | )<br>)<br>) | |

<u>NOTICE AND DECLARATION OF REVOCATION OF POWER OF ATTORNEY</u>
<u>AND NOTICE AND DECLARATION OF NULLIFICATION</u>
<u>AND NOTICE TO CEASE AND DESIST OF ESCHEAT</u>
<u>OF ALL ALIEN PROPERTY FIEFDOM AND FREEHOLDS</u>
<u>AND *IN REM* CLAIMS AND COLONIAL RIGHTS TO POSSESSION BY A LLATIVE SUBJECTS AND</u>
<u>FOREIGN COLONIAL DESCENDANT INVADERS AND THEIR AGENTS, ET CETERA</u>

In the common law, International Law and for the Amexum Public and Private Indigenous record.

---

### Sovereign Natal Incarnation Recording Services Trust

Territory: NORTH GATE
Situs:  AMEXUM -JONES ESTATES

Before me came a NATIONAL LIVING TRUSTEE executing a PRIVATE INTERNATIONAL
DOCUMENT under the HAGUE CONVENTION, POSTED 02.02.2018 A.D.

Witness Signature By: _____
Date of Certificate: _____

All Rights Reserved, At Arm's Length by: _____

Witness Name (printed): _Tarald Ren_ _____

Date of Mailing: _____

---

FILED

10 APR 11 PM 3:25

|                                               |   |
|-----------------------------------------------|---|
| MATRIX FINANCIAL SERVICES                     | : |
| CORPORATION,                                  | : |
| 5151 CORPORATION DRIVE                        | : |
| TROY, MI 48098                                | : |
|                                               | : |
|         Plaintiff,                            | : |
|                                               | : |
| v.                                            | : |
|                                               | : |
| :MAY-E. MCCLOUD:                              | : |
| 1361 SOUTH 46TH STREET                        | : |
| PHILADELPHIA, PA 19143-3827                   | : |
|                                               | : |
| -AND-                                         | : |
|                                               | : |
| :VERA-L. JONES: *in propria persona*          | : |
| 1361 SOUTH 46TH STREET                        | : |
| PHILADELPHIA, PA 19143-3827                   | : |
|                                               |   |
|         Respondents.                          |   |

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

CIVIL DIVISION – LAW

DOCKET NO.  170503419

-JURY TRIAL DEMANDED-

## NOTICE TO DEFEND

### ***Notice***

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

 YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

Matrix Financ Srvc. Vs Mccloud Etal-ANCOM



17050341900051

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Lawyer Referral and Information Service**

**Philadelphia Bar Association**

**1101 Market Street, 11th Floor**

**Philadelphia, PA 19107**

**Telephone (215)238-6333**

| | |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION,<br>5151 CORPORATION DRIVE<br>TROY, MI 48098 | : IN THE COURT OF COMMON PLEAS<br>: OF PHILADELPHIA COUNTY<br>:<br>: CIVIL DIVISION – LAW<br>: |
| Plaintiff, | : DOCKET NO. 170503419<br>:<br>: |

*v.*

:MAY-E. MCCLOUD:
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

-AND-

:VERA-L. JONES: *in propria persona*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

Respondents.

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2018, upon review, comprehension and consideration of the RESPONSE TO ORDER TO FILE ANSWER TO DEFENDANTS' COMPLAINT of beneficiaries of the LODIAL *RES* 1361 S. 46th Street, Colonial territorial designation: Philadelphia, Pennsylvania 19143, it is hereby ORDERED and DECREED that the RESPONDENTS' NEW-MATTER AND DEFENSES are SUSTAINED and that Plaintiffs Complaint is DISMISSED.

By THE COURT:

_____
                                                              J.



| | |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, 5151 CORPORATION DRIVE TROY, MI 48098           Plaintiff, *v.* :MAY-E. MCCLOUD: *In Propria Persona* 1361 SOUTH 46TH STREET PHILADELPHIA, PA 19143-3827 -AND- :VERA-L. JONES: *In Propria Persona, Sui Juris* 1361 SOUTH 46TH STREET PHILADELPHIA, PA 19143-3827           Respondents. | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY CIVIL DIVISION – LAW DOCKET NO.  170503419 |

## TRUSTEE AND BENEFICIARIES OF 1361 SOUTH 46TH STREET ANSWER TO COMPLAINT INITIATED BY PLAINTIFF MATRIX FINANCIAL SERVICES CORPORATION

Pursuant to Pa.R.C.P. 1019 and Pa.R.C.P. 1147, the *Res* 1361 South 46th Street, by and through its authorized Trustee(s) and living woman and Representative-Trustee beneficiary :Vera-Lynn Jones: *in propria persona de facto* and *de jure* (Beneficiary), files the herein **RESPONSE, NEW-MATTER, COUNTERCLAIM against DEFENDANTS** in Plaintiff's Mortgage Foreclosure action and presents the following:

## RESPONSE TO PLAINTIFF'S COMPLAINT

1. Admitted, to the extent that Matrix Financial Services Corporation is listed in the Caption of the herein matter as Plaintiffs.

2. Denied. Respondents last known address is: 1818 S. Alden Street. Respondents are the beneficiaries of the Estate of the BE KIND and UNIFIED INDIGENOUS FOREIGN FAMILY TRUST, which holds 1361 S. 46th Street, the subject RES of this herein matter,

in Foreign Trust. Respondents have been intentionally targeted, chosen, labeled and titled in this herein matter as 'Defendants". *Respondents Reserve All Rights and Waive None.*

3. Admitted in part. Denied in part. Admitted to the extent that the alleged documents Plaintiff(s) assert are of issue and evidence are recorded. Denied to the extent that Respondent(s) "made, executed and delivered a mortgage". Further, Denied to the extent that Pa.R.C.P. 1019(g) "relieves the Plaintiff from its obligation to attach documents to pleadings if those documents are of pubic record". Under Pa.R.C.P. 1019(h), which specifically states: "When *any* claim or defense is based upon an agreement, the pleading *shall* state specifically if the agreement is oral or written." Under Pa.R.C.P.. 1019(i), the rule specifically states: "When any claim or defense is based upon a writing, the pleader *shall* attach a copy of the writing, or material part thereof, *but if* the writing or copy is *not accessible to pleader,* it is sufficient so to state, together with the reason, and to set forth the substance of the writing." Further, the Official[1] Note within the Pa.R.C.P. 1019 Contents of Pleadings. General and Specific Averments states: "*If the agreement is in writing, it __must__ be attached to the pleading. See subdivision (i) of this rule*". *Strict Proof is demanded. Respondents Reserve All Rights and Waive None.*

4. Admitted in part. Denied in part. Admitted, solely to the limited extent that the premises is "described". Denied to the extent that the premises "described" is "subject to said mortgage" as if Plaintiff's continued claim will render that which is false, truth by mere continued assertion or claim. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

5. Denied. Plaintiffs have failed to comply with Pa..R.C.P. 1019 and the accompanying Pa.R.C.P. 1147, which must be followed in tandem and not standing alone. Plaintiff failed to:

    a. Attach the Original Written Mortgage Agreement or Certified Copy of the Original Written Mortgage Agreement;

    b. Attach the Original Mortgage Note or a Certified Copy of the Original Mortgage Note;

---

[1] Official is defined as: "Pertaining to an office; Invested with the character of an officer; proceeding from, sanctioned by, or done by an officer." *See, Black's Law Dictionary, Revised Fourth Edition,* Pg. 1236 (1968).

      **c.** Attach the Original Note Endorsement or a Certified Copy of the Note Endorsement; and

      **d.** Attach the Allonge.

Plaintiff(s) has failed to provide evidence and therefore proof that a valid and lawful Mortgage Agreement exist between :May-E. McCloud: and :Vera-L. Jones:. Further, at all times prior the filing of this herein suit and thereafter, Vera L. Jones has asserted and averred that she in *propria persona* and that Respondent(s):

a) Never had knowledge about Plaintiff's existence;

b) Never offered or accepted any agreement with Plaintiff(s);

c) Never executed any documents agreeing to mortgage the subject Res Property; and

d) Never executed and agreed to make any payments to Plaintiff(s).

*To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**6.** Denied. Respondent(s) is without sufficient knowledge or information to form a belief to the truth or falsity of this pleading. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**7.** Denied. Plaintiffs seek to establish a Fraudulent basis to a claim for real property without providing evidence that a valid mortgage contract exists by averting and circumventing applicable and valid rules of procedure required for Plaintiffs to follow. Furthermore, asserting empty accusations of frivolous claims of defense asserted by Respondent are mere attempts by Plaintiff to divert and distract the Court from Plaintiffs unlawful and/or questionable actions concerning the issue of this herein Foreclosure suit. A valid mortgage contract does not exist and that is FACT and TRUTH. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**8.** Admitted in part. Denied in part. Admitted to the extent that the following documents were received:

      **a.** Act 6 of 1974;

      **b.** Act 91 of 1983.

Denied to the extent that a "temporary stay has terminated". Plaintiffs' averments are unclear and confusing. When there is confusion there is no Truth. Therefore, Respondent lacks sufficient knowledge or information to form a belief to the truth or falsity of this specific denial. Additionally, Plaintiffs blatantly dissembles, perhaps with the foreseeable