# VIII

# U

# 2018

i. Application for Relief and Injunction Denied 141 EM 2017 Supreme Court of Pennsylvania (Exhibit "AAA")

ii. Pennsylvania Human Relations (Exhibit "BBB")

iii. Case 170503419 Court of Common Pleas Response to Matrix Financial Complaint w/ New Matter (Exhibit "")

iv. Case 1812019079 December 10, 2018 New Case Filed by Matrix Financial for Quiet Title (Exhibit "CCC")

1. Assignment of Mortgage Attached

2. Uniform Residential Loan Application Attached (no signature or mention of Vera L Jones)

3.    Mortgage Attached (Vera L Jones name added to Notary page)

4.    Mortgage Foreclosure Complaint Attached (claiming Signature and Agreement between both May E. McCloud and Vera L. Jones with Matrix Financial)

5.    Answer and New Matter to Plaintiff's 170503419 Complaint

6.    Note (without any signature of Vera L. Jones)







### Supreme Court of Pennsylvania

John W. Person Jr., Esq.
Deputy Prothonotary
Patricia A. Johnson
Chief Clerk

Eastern District

468 City Hall
Philadelphia, PA 19107
(215) 560-6170
www.pacourts.us

January 29, 2018

Vera L. Jones
1361 South 46th Street
Philadelphia, PA 19143-3827

RE:   McCloud v. First Jud Dist of PA, Pet. of: Jones, V
      No. 141 EM 2017
      Lower Appellate Court Docket No:
      Agency/Trial Court Docket No:

Dear Vera L. Jones:     .

    Enclosed please find a certified copy of an order dated January 29, 2018 entered in the above-captioned matter.

                              Very truly yours,
                              Office of the Prothonotary

/sdm
Enclosure
cc:  May E. McCloud
     A. Taylor Williams, Esq.

## IN THE SUPREME COURT OF PENNSYLVANIA
### EASTERN DISTRICT

| | | |
|---|---|---|
| MAY E. MCCLOUD AND VERA L.<br>JONES, IN PROPRIA PERSONA | : | No. 141 EM 2017 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE FIRST JUDICIAL DISTRICT OF<br>PENNSYLVANIA, OFFICE OF JUDICIAL<br>RECORDS FOR FILING (AGENTS AND<br>AGENCIES) | : | |
| | : | |
| | : | |
| PETITION OF:  VERA L. JONES | : | |

### ORDER

**PER CURIAM**

　　　　**AND NOW**, this 29th day of January, 2018, the "Application for Relief for Mandate and Injunction" is DENIED.

　　　　Justice Donohue concurs in the result.

A True Copy
As Of 1/29/2018

Attest: _____
John W. Person Jr., Esquire
Deputy Prothonotary
Supreme Court of Pennsylvania

PHILADELPHIA
PA 191
30 JAN '18
PM 5 1.

19143-382761

PROTHONOTARY'S OFFICE
SUPREME COURT OF PENNSYLVANIA
468 CITY HALL
PHILADELPHIA, PA. 19107





**pennsylvania**
HUMAN RELATIONS COMMISSION

March 30, 2018

Vera Jones
c/o 1361 S. 46th Street
Philadelphia, PA 19143

RE:  Vera Jones Vs. The First Judicial District of Pennsylvania Office of Judicial Records
Case No. 201701873

Dear Vera Jones,

This notice is to confirm that you have been informed that your complaint may not be accepted for filing, pursuant to Section 9(a) of the Pennsylvania Human Relations Act (PHRA), 43 P.S. §959(a). This also confirms that you have been told of your right to submit your complaint for filing and receive a formal decision as to whether your complaint would be accepted for filing. You have also been informed that your decision not to file a complaint may prevent you from filing an action in a Court of Common Pleas under the PHRA.

**You have been told that your complaint may not be accepted because it is clearly not within the jurisdiction of the Pennsylvania Human Relations Commission.**

The Commission does not have the jurisdiction to adjudicate any complaints against the judicial branch.

You may wish to consult a private attorney familiar with discrimination law about whether any other remedies exist for your complaint.

Sincerely,

Lisa Collins
Intake Investigator

**pennsylvania**
HUMAN RELATIONS COMMISSION

Philadelphia Regional Office
110 N. 8th Street, Suite 501
Philadelphia, PA 19107

PHILADELPHIA
PA 191
03 APR '18
PM 4 L

19101-744646



LAW OFFICES
## PINNOLA & BOMSTEIN

MICHAEL S. BOMSTEIN
PETER J. PINNOLA

ELKINS PARK OFFICE
8039 OLD YORK ROAD
ELKINS PARK, PA 19027
(215) 635-3070
FAX (215) 635-3944

100 SOUTH BROAD STREET, SUITE 2126
PHILADELPHIA, PA 19110
(215) 592-8383
FAX (215) 574-0699
EMAIL mbomstein@gmail.com

MT. AIRY OFFICE
7727 GERMANTOWN AVENUE, SUITE 100
PHILADELPHIA, PA 19119
(215) 248-5800

REPLY TO:
Center City

December 14, 2018

Vera L. Jones
1818 South Alden Street
Philadelphia, PA 19143

May E. McCloud
1818 South Alden Street
Philadelphia, PA 19143

Re: Matrix Financial Services Corp., vs. May E. McCloud, et al.
C.P. Phila., December Term, 2018, No. 1061

Dear Ms. Jones and Ms. McCloud:

A new suit has now been filed against you in the Court of Common Pleas of Philadelphia County. The Complaint in that suit is herewith enclosed.

You should take these papers to your attorney at once. If you do not have an attorney, you can go to the Philadelphia Bar Association for assistance. Contact information is contained in the Complaint. If you choose not to respond, your rights may be adversely affected.

Very truly yours,

MICHAEL S. BOMSTEIN

MSB:mik
Encl.

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

DECEMBER 2018

E-Filing Number: 1812019079

001061

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MATRIX FINANCIAL SERVICES CORP. | VERA L. JONES |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5151 CORPORATION DRIVE<br>TROY MI 48098 | 1818 SOUTH ALDEN STREET<br>PHILADELPHIA PA 19143 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | MAY E. MCCLOUD |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1818 SOUTH ALDEN STREET<br>PHILADELPHIA PA 19143 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 2 | [X] Complaint<br>[ ] Writ of Summons | [ ] Petition Action<br>[ ] Transfer From Other Jurisdictions | [ ] Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[ ] Jury<br>[X] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

| CASE TYPE AND CODE |
|---|
| E2 - EQUITY - REAL ESTATE |

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

FILED
PRO PROTHY

DEC 10 2018

M. BRYANT

IS CASE SUBJECT TO
COORDINATION ORDER?
YES          NO

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>MATRIX FINANCIAL SERVICES CORP.</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| MICHAEL S. BOMSTEIN | STE. 2126 LAND TITLE BUILDING<br>100 SOUTH BROAD STREET<br>PHILADELPHIA PA 19110 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)592-8383 | (215)574-0699 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 21328 | mbomstein@gmail.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *MICHAEL BOMSTEIN* | Monday, December 10, 2018, 02:48 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

PINNOLA & BOMSTEIN, ATTORNEYS AT LAW
BY: Michael S. Bomstein, Esq.
Attorney I.D. No. 21328
Email: mbomstein@gmail.com            Attorney for Plaintiff
Suite 2126 land Title Building
100 South broad Street
Philadelphia, PA 19110
Tel.: (215) 592-8383



---

| | |
|---|---|
| MATRIX FINANCIAL SERVICES CORP., | : COURT OF COMMON PLEAS |
| 5151 Corporate Drive | |
| Troy, Michigan 48098, | : PHILADELPHIA COUNTY |
|         Plaintiff | |
| | : CIVIL ACTION - LAW |
|     v. | |
| | : DECEMBER TERM, 2018 |
| VERA L. JONES | |
| 1818 South Alden Street | : NO. |
| Philadelphia, PA 19143 | |
| | : |
|     and | |
| | : |
| MAY E. McCLOUD | |
| 1818 South Alden Street | : |
| Philadelphia, PA 19143, | |
|         Defendants | : |

## COMPLAINT

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br><br>PHILADELPHIA BAR ASSOCIATION<br>LAWYER REFERRAL AND INFORMATION SERVICE<br>One Reading Center<br>Philadelphia, PA 19107<br>Telephone: 215-451-6197 | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de las fecha de las demanda y la notificación. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a la demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomàra medidas y puede continuar las demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Used puede perder dinero o sus propiedades u otros derechos importantes para usted.<br><br>LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.<br><br>ASOCIACIÓN DE LICENCIADOS DE FILADELFIA<br>SERVCICIO DE REFERENCIA E INFORMACION LEGAL<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>Telefono: 215-451-6197 |

PINNOLA & BOMSTEIN, ATTORNEYS AT LAW
BY: Michael S. Bomstein, Esquire
PA I.D. No. 21328
Email: mbomstein@gmail.com
Suite 2126 Land Title Building                     Attorney for Plaintiff
100 South Broad Street
Philadelphia, PA 19110
Tel.: (215) 592 -8383

---

MATRIX FINANCIAL SERVICES CORP. : COURT OF COMMON PLEAS
5151 Corporate Drive
Troy, Michigan 48098,                        : PHILADELPHIA COUNTY
              Plaintiff
                       : CIVIL ACTION - LAW

   v.                                   : DECEMBER TERM, 2018

VERA L. JONES
1818 South Alden Street                      : NO.
Philadelphia, PA 19143

      and                             :

MAY E. McCLOUD                               :
1818 South Alden Street
Philadelphia, PA 19143,                      :
             Defendants          :

## QUIET TITLE COMPLAINT

1. Plaintiff is Matrix Financial Services Corporation ("Matrix"), a foreign

company doing business in the Commonwealth with offices headquarters at 5151

Corporate Drive, Troy, Michigan 48098. This action is brought by Matrix as

corporate assignee of Flagstar Bank, FSB ("Flagstar") by virtue of assignment

recorded in the Department of Records of Philadelphia County on March 17, 2017

Case ID: 181201060

as Document I.D. No. 53187986.  A true and correct copy of the assignment is attached hereto as **Exhibit A**.

2.  Defendants are:

(a) May E. McCloud, an adult resident of the Commonwealth who resides at 1361 South 46th Street, Philadelphia, PA 19143; and

(b) Vera L. Jones, an adult resident of the Commonwealth who resides at 1818 South Alden Street, Philadelphia, PA 19143.  Upon information and belief, defendant Jones is defendant McCloud's daughter.

3.  In April 2011, defendants both signed and submitted to Flagstar, plaintiff's assignor, an application for a mortgage loan to pay off an existing mortgage, originally given to Key Bank USA, N.A., subsequently assigned to U.S. Bank National Association, as Trustee, and serviced by Select Portfolio Servicing ("Select Portfolio") for premises  1361 South 46th Street ("the property").  A true and correct copy of the executed loan application is attached hereto as **Exhibit B**.

4.  Defendants were approved by Flagstar for the requested mortgage loan. Closing on the loan took place on April 14, 2011, at which time the mortgage instrument was signed by both defendants in the presence of a notary public who verified their identities and notarized the instrument.  The said mortgage was then recorded in the Department of Records as Document I.D. No. 52340885 on April

27, 2011. A true and correct copy of the recorded mortgage is attached hereto as **Exhibit C**.

5. The prior mortgage, originally given to Key Bank USA, N.A., subsequently assigned to U.S. Bank National Association, as Trustee, and serviced by Select Portfolio Servicing, was paid off and satisfied by instrument recorded in the Department of Records on May 9, 2011 as Document I.D. No. 52345364. A true and correct copy of the satisfaction of mortgage is attached hereto as **Exhibit D**.

6. Commencing June 1, 2011, defendants made loan payments to Flagstar. No further payments were received after November 1, 2016.

7. Plaintiff then sued defendants in a foreclosure action, which action was docketed at C.P. Philadelphia County, May Term, 2017, No. 03419. A true and correct copy of the foreclosure complaint is attached hereto as **Exhibit E**.

8. Defendants' answer to the foreclosure complaint defends, *inter alia*, on the ground that Vera Jones never signed the Promissory Note and May E. McCloud either was or is incompetent and, therefore, did not have the legal capacity to sign the Promissory Note and mortgage instrument. That action is pending at the time of filing of the instant Complaint and, if successful, will make it unnecessary to impose the relief requested hereinbelow. A true and correct copy of Defendants' answer is attached hereto as **Exhibit F**.

9. Notwithstanding defendants' contentions in the foreclosure action, both defendants borrowed the sums identified in the mortgage and utilized the loan funds to satisfy the debt owed to Select Portfolio.

10. Defendant McCloud continues to reside in the subject premises.

11. Title to the premises remains in both defendants' names.

12. Plaintiff, upon a review of court records, believes and avers that May E. McCloud was not declared incompetent until February 8, 2016 when the Orphans Court declared her incompetent. The petition that was the basis for the Order was filed October 20, 2015. Defendant Jones was appointed her guardian. A true and correct copy of the October 20, 2015 petition is attached hereto as **Exhibit G.**

13. The Orphans' Court petition does not allege a date of onset of dementia. The loan and mortgage papers were signed by McCloud in April, 2011, over 4 ½ years prior to the petition being filed. The exhibits attached to the petition do not allege an onset date. Exhibit 5, a letter signed by a physician, states only that as of February, 2015 Ms. McCloud had dementia. A true and correct copy of Exhibit 5 of the petition that included the physician's letter is attached hereto as **Exhibit H.**

14. Plaintiff believes and avers that defendant McCloud was not incompetent at the time of execution of the loan and mortgage.

Case ID: 18120106

15.  Whether defendants signed the mortgage or not, they benefitted from it through the repayment of their prior mortgage debts and they validated further their intent by making timely payment to plaintiff's assignor for a period of years.

## COUNT I:

## QUIET TITLE – VALIDITY OF ENCUMBRANCE

16.  Plaintiff hereby incorporates ¶¶ 1-15 above as though set forth more fully at length below.

17.  Pa. R. Civ. P. 1061(b)(2) recognizes an action to quiet title to "determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land."

18.  Pa. R. Civ. P. 1061(b)(3) authorizes the Court to "enter a final judgment ordering the defendant, the prothonotary, or the recorder of deeds to file, record, cancel, surrender or satisfy of record, as the case may be, any plan, document, obligation or deed determined to be valid, invalid, satisfied or discharged, and to execute and deliver any document, obligation or deed necessary to make the order effective."

19.  Pa. R. Civ. P. 1061(b)(4) authorizes the Court to "enter any other order necessary for the granting of proper relief."

20.    Plaintiff believes and avers that the subject mortgage was and remains valid for the reasons already set forth above.

WHEREFORE, plaintiff prays this Honorable Court enter a final judgment declaring that the subject mortgage was valid.

## COUNT II: EQUITABLE LIEN

21.  ¶¶ 1-15 above are hereby incorporated by reference thereto as though set forth more fully below.

22.  An equitable "lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." *Baranofsky v. Weiss*, 182 A. 47, 48–49 (Pa.Super.1935).

23.  Before an equitable lien may be imposed upon real estate as security for a debt, there must be an unambiguous and clear agreement evidencing an intent to impose a lien on the subject property.

24.  "Typically, courts look to the existence of an agreement or to the attendant circumstances to determine whether an equitable lien arises." *In re CS Associates*, 121 B.R. 942, 955 (Bankr.E.D.Pa.1990) (internal citations omitted). "An equitable lien arises from a contract indicating an intent to make certain property security for an obligation or from a situation which otherwise would

result in an unjust enrichment." *R.M. Shoemaker Co. v. Southeastern Pennsylvania Development Corp.*, 419 A.2d 60, 63 (Pa.Super.1980).

25.  The loan documents, the payment history, the notary's involvement, and defendants continuing possession of the premises all show that defendants clearly intended to grant plaintiff's assignor a security interest in their Property.

26.  Further, defendant's acceptance of the discharge of their prior mortgage debts and satisfaction of the prior mortgage lien militate in favor of imposing an equitable lien against the subject property.

WHEREFORE, in the event this Court does not find in plaintiff's favor in the foreclosure action, plaintiff prays this Court enter judgment in its favor and against defendants by:

(a) Imposing an equitable lien against the property in the principal amount of $63,784.05, with interest from November 1, 2016, on the same terms as set forth in the subject mortgage;

(b) Directing the Department of Records to make a notation in the appropriate mortgage index to reflect the Court's determination in this matter;

(c) Directing the Department of Records to record a copy of this Court's final order in the appropriate mortgage book to reflect the Court's determination in this matter;

(d) Directing the Office of Judicial Records to make a notation on the docket in the foreclosure action to reflect the Court's determination in this matter;

(e) Directing the Office of Judicial Records to file a copy of this Court's final order on the docket in the foreclosure action to reflect the Court's determination in this matter; and

(f) Granting such other and further relief as may be reasonable, just and proper.

## COUNT III: EQUITABLE SUBROGATION

27. ¶¶ 1-15, 25 and 26 above are hereby incorporated by reference thereto as though set forth more fully at length below.

28. Pennsylvania law recognizes the doctrine of equitable subrogation where the claimant paid a creditor to protect its own interests, the claimant did not act as a volunteer, the claimant was not primarily liable for the debt, and subrogation would not cause injustice to the rights of others.

29. Prior to the closing, the property was subject to and encumbered by the lien of the Key Bank mortgage.

30. At the closing plaintiff's Assignor disbursed proceeds from the loan memorialized in the note to satisfy and pay off defendants' debt to Key Bank in order to protect its own interests in the property.

31. The said mortgage was then marked satisfied of record.

32. In disbursing the proceeds of the new mortgage loan, plaintiff's Assignor was not acting as a volunteer.

33. Plaintiff's Assignor was not primarily liable for the debt incurred by defendants to Key Bank.

34. Equitable subrogation will not cause injustice to the rights of others.

35. Defendants would be unjustly enriched if permitted to retain their interest in the property without bearing responsibility for the subject mortgage.

WHEREFORE, in the event this Court does not find in plaintiff's favor in the foreclosure action, plaintiff prays this Court enter judgment in its favor and against defendants by:

(a) Imposing an equitable lien against the property in the principal amount of $63,784.05, with interest from November 1, 2016, on the same terms as set forth in the subject mortgage;

(b) Directing the Department of Records to make a notation in the appropriate mortgage index to reflect the Court's determination in this matter;

(c) Directing the Department of Records to record a copy of this Court's final order in the appropriate mortgage book to reflect the Court's determination in this matter;

(d) Directing the Office of Judicial Records to make a notation on the docket in the foreclosure action to reflect the Court's determination in this matter;

(e)  Directing the Office of Judicial Records to file a copy of this Court's final order on the docket in the foreclosure action to reflect the Court's determination in this matter; and

(f) Granting such other and further relief as may be reasonable, just and proper.

PINNOLA & BOMSTEIN

/s/ Michael S. Bomstein
Michael S. Bomstein, Esq.

Attorney for Plaintiff

Dated: December 10, 2018

Case ID: 181201006

## VERIFICATION

I, ___Bella Kharson_____, verify that the statements set forth in the foregoing

Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statement therein are made subject to the penalties of 18 Pa.C.S.

§4904 relating to unsworn falsification to authorities.

Dated: November _21_, 2018

Name _____Bella Kharson_____
Title _____Assistant Vice President_____

# 3725428  v. 1

# EXHIBIT A

Case ID: 18120106

Case ID: 1812

BS80901121M-AM-PA

Page 1 of 2

MIN: 100052550318267605   MERS PHONE: 1-888-679-6377

[Notary Seal: CHRISTY BROWN   NOTARY PUBLIC   STATE OF IDAHO]

CHRISTY BROWN (COMMISSION EXP.: 02/13/2021)   NOTARY PUBLIC

instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

to be the VICE PRESIDENT of the corporation that executed the instrument or the person who executed the

On MARCH 16, 2017, before me, CHRISTY BROWN, personally appeared CRISTINA GOMEZ, known to me

COUNTY OF BONNEVILLE      )-ss:

STATE OF IDAHO

CRISTINA GOMEZ, VICE PRESIDENT

FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed this MARCH 16, 2017.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

CITY OF PHILADELPHIA.

Property Address: 1361 S 46TH ST, PHILADELPHIA, PA 19143

WIDTH IN LENGTH OR DEPTH NORTHEASTWARD 80 FEET, 4 INCHES AND EXTENDING OF THAT

CONTAINING IN FRONT OR BREADTH ON THE SAID 48TH STREET 14 FEET, 4 INCHES AND EXTENDING OF THAT

PHILADELPHIA.

SOUTHEASTWARD FROM THE SOUTHEAST SIDE OF WOODLAND AVENUE IN THE 27TH WARD OF THE CITY OF

SITUATE ON THE NORTHEASTERLY SIDE OF 48TH STREET AT THE DISTANCE OF 478 FEET, 4 INCHES

IMPROVEMENTS THEREON ERECTED.

LEGAL DESCRIPTION: ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND

Document No. 53240885, more particularly described and commonly known as:

of the Register, Recorder, or County Clerk of PHILADELPHIA County, State of PENNSYLVANIA, as

AND ASSIGNS, Original Mortgagee, in the amount of $70,000.00 and recorded on APRIL 27, 2011 in the Office

SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS

MCCLOUD AND VERA L. JONES, Mortgagor, to MORTGAGE ELECTRONIC REGISTRATION

Assignor, its successors and assigns, that certain Mortgage dated APRIL 14, 2011 executed by MAY E.

SERVICES CORPORATION located at 601 CARLSON PKWY., STE 1400, MINNETONKA, MN 55305,

VOORHEES STREET SUITE C, DANVILLE, IL 61834 or P.O. Box 2026, FLINT, MICHIGAN 48501-2026,

NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS, located at 1901 E

Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto MATRIX FINANCIAL

acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby

## ASSIGNMENT OF MORTGAGE

SECURITY CONNECTIONS, INC., 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID 83401, Ph. (208)528-9895

WHEN RECORDED MAIL TO:

PREPARED BY: SECURITY CONNECTIONS, INC.

[barcode]

LOAN NO.: 50318267.6

COUNTY OF PHILADELPHIA

PENNSYLVANIA

Receipt# 17-28353
eRecorded in Philadelphia PA  Doc Id: 53187986
03/17/2017 10:14 AM   Page 1 of 2   (Rec Fee: $220.00

I do hereby certify that the precise address of the Assignee Residence is:
MATRIX FINANCIAL SERVICES  CORPORATION, 601 CARLSON PKWY, STE 1400, MINNETONKA,
MN 55305

CRISTINA GOMEZ, VICE PRESIDENT

Case ID: 18120106

# EXHIBIT B

Case ID: 1812010

Case ID: 181201010

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____  Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA | [X] Conventional | [ ] Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | [ ] FHA | [ ] USDA/Rural Housing Service | | | 5691816176 |

| Amount $ 70,000.00 | Interest Rate 5.250 % | No. of Months 360 | Amortization Type: [X] Fixed Rate [ ] GPM | [ ] Other (explain): [ ] ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 1363 S 46TH ST, PHILADELPHIA, PA 19143-1827 | | No. of Units 1 |
|---|---|---|
| Legal Description of Subject Property (attach description if necessary) SEE TITLE | | Year Built 1940 |

| Purpose of Loan | [ ] Purchase | [ ] Construction | [ ] Other (explain): | Property will be: |
|---|---|---|---|---|
| [X] Refinance | [ ] Construction-Permanent | | [X] Primary Residence [ ] Secondary Residence [ ] Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | [ ] made [ ] to be made |
|---|---|---|---|---|---|
| 1994 | $ 10,000.00 | $ 37,175.00 | | | Cost: $ |

| Title will be held in what Name(s) MAY E. MCCLOUD | Manner in which Title will be held [X] Sole [ ] Joint | Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) MAY E. MCCLOUD | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) 09/06/1964 | Yrs. School 14 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
| [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) no. ages | [ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) no. ages |
| Present Address (street, city, state, ZIP) [X] Own [ ] Rent 17 Yrs. PHILADELPHIA, PA 19143 | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No.Yrs. |

Mailing Address, if different from Present Address

Mailing Address, if different from Present Address

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No.Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No.Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer [ ] Self Employed Yrs. on this job | | Name & Address of Employer [ ] Self Employed Yrs. on this job |
| | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer [ ] Self Employed | Dates (from–to) | Name & Address of Employer [ ] Self Employed | Dates (from–to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer [ ] Self Employed | Dates (from–to) | Name & Address of Employer [ ] Self Employed | Dates (from–to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)       Page 1 of 4       Fannie Mae Form 1003   7/05 (rev.6/09)
Online Documents, Inc.                                          GURLA   1004
24-13-2011 14:00

VI HSCO LOAN # 503182676

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 395.00 | $ 386.54 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 35.00 | 72.50 |
| Dividends/Interest | | | | Real Estate Taxes | 41.00 | 47.95 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 1,291.00<br>150.00 | | 1,291.00<br>150.00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 1,441.00 | $ | $ 1,441.00 | Total | $ 473.00 | $ 506.99 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B | PENSION | $ 1,291.00 |
| B | SOCIAL SECURITY | 150.00 |
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash Deposit toward purchase held by: | $ |
| **List checking and savings accounts below** | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Stocks & Bonds (Company name/number & description) | $ |
| Life insurance net cash value | $ |
| Face amount: $ | |
| Subtotal Liquid Assets | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 100,000 |
| Vested interest in retirement fund | $ |
| Net worth of business(es) owned (attach financial statement) | $ |
| Automobiles owned (make and year) | $ |
| Other Assets (itemize) | $ |
| Total Assets a. | $ 100,000 |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company (B1)<br>SUN FEDERAL CREDIT U<br>1627 HOLLAND RD MAUMEE OH 43537<br>Acct. no. [redacted]5652 | $ Pmt./Mos. 90 /4 | $ 403 |
| Name and address of Company (B1)<br>SELECT PORTFOLIO SVC<br>Acct. no. [redacted]5257 | $ Pmt./Mos. 395 /96 | $ 37,775 |
| Name and address of Company (B1)<br>HSBC/CBSD<br>PO BOX 6497 SIOUX FALLS SD 57117<br>Acct. no. [redacted]5181 | $ Pmt./Mos. 16 /86 | $ 1,370 |
| Name and address of Company<br>Acct. no. | $ Pmt./Mos. | $ |
| Name and address of Company<br>Acct. no. | $ Pmt./Mos. | $ |
| Name and address of Company<br>Acct. no. | $ Pmt./Mos. | $ |
| Name and address of Company<br>Acct. no. | $ Pmt./Mos. | $ |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job Related Expense (child care, union dues, etc.) | $ | |
| Total Monthly Payments | $ 502 | |
| Net Worth (a minus b) $ 60,452 | Total Liabilities b. | $ 39,548 |

Uniform Residential Loan Application
Freddie Mac Form 65 7/05 (rev.6/09)
Online Documents, Inc.

04-13-2011 14:00
Fannie Mae Form 1003 7/05 (rev.6/09)
GURLA 1004

Case ID: 1812010

VL MGCD LOAN # 503182576

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| SEE ADDENDUM | | $ | $ | $ | $ | $ | $ |
| | Totals | $ 100,000 | $ 37,775 | $ | $ 395 | $ 76 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 37,775.00 |
| e. Estimated prepaid items | 801.82 |
| f. Estimated closing costs | 2,740.27 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 41,317.09 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| Lender Credit | 950.00 |
| Paid Outside Closing | 350.00 |
| Other Credits Total | 1,300.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 70,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 70,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (29,982.91) |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et. seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns, may in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X [signature] | 4/14/11 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish this information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| [X] I do not wish to furnish this information | | [ ] I do not wish to furnish this information | |
| Ethnicity: | [ ] Hispanic or Latino [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White | Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White |
| Sex: | [X] Female [ ] Male | Sex: | [ ] Female [ ] Male |

To be Completed by Loan Originator:

This information was provided: [ ] In a face-to-face interview [X] In a telephone interview [ ] By the applicant and submitted by fax or mail [ ] By the applicant and submitted via e-mail or the Internet

| Loan Originator's Signature | | Date |
|---|---|---|
| X | | |
| Loan Originator's Name (print or type): Eugene Bedorman | Loan Originator Identifier: 133132 | Loan Originator's Phone Number (including area code) |
| Loan Origination Company's Name: B & B FINANCIAL, INC. | Loan Origination Company Identifier: 133115 | Loan Origination Company's Address |

# CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower: MAY B. MCCLOUD | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: 503182676 |

## SCHEDULE OF REAL ESTATE OWNED CONT'D

| Property Address | Type Prop | Market Value | Mortgage & Liens | Gross Rnt Income | Mortgage Payments | Mntnce Taxes | Net Rnt Income |
|---|---|---|---|---|---|---|---|
| 13615 46TH ST   PHILADELPHIA PA 19143 | SFR | 100,000 | 37,775 | | 395 | 76 | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et. seq.

| Borrower's Signature: X *May E. McCloud* | Date 4/14/11 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Online Documents, Inc.

Page 4 of 4

04-13-2011 14:00
Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA  1004

Case ID: 18120106

# EXHIBIT C

Record and Return to:
MBA Abstract, Inc.
2337 Philmont Ave, Suite 103
Huntingdon Valley, PA 19006

*MBH - 2758*
*1 of 1*

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-531-1

APN #: 272165800
APN #:



52340885
Page: 1 of 14
04/27/2011 10:03AM

This Document Recorded
04/27/2011
10:03AM
Doc Code· M      Commissioner of Records, City of Philadelphia

Doc Id: 52340885
Receipt #: 1008841
Rec Fee: 170.00

———————————[Space Above This Line For Recording Data]———————————

V1 WBCD LOAN # 503182676

# MORTGAGE

MIN: 100052550318267605

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **APRIL 14, 2011,**
together with all Riders to this document.
**(B) "Borrower"** is **May E. McCloud and Vera L. Jones.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has
a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees
Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
**(D) "Lender"** is **FLAGSTAR BANK, FSB.**

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                     Page 1 of 13

Initials: _MEMc_
                                    _VLJ_
PAEDEED    PAEDEDL 1011
04-13-2011 14:00

Case ID: 18120106

Lender is a **FEDERALLY CHARTERED SAVINGS BANK** organized and existing under the laws of **UNITED STATES OF AMERICA.** Lender's address is
**5151 CORPORATE DR, TROY, MI  48098-2639.**

**V1 WBCD LOAN # 503182676**

(E) "Note" means the promissory note signed by Borrower and dated **APRIL 14, 2011.**
The Note states that Borrower owes Lender *****************SEVENTY THOUSAND AND NO/100**
****************************************************Dollars (U.S.    **$70,000.00   )**
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt
in full not later than **MAY 1, 2041.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider   ☐ Condominium Rider       ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider        ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to
debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated
teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section
5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part
of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as
to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As
used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed
in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related
mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether
or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                   Page  2  of 13                          PAEDEDL 1011
                                                                                 04-13-2011 14:00

Case ID: 1812010€

**TRANSFER OF RIGHTS IN THE PROPERTY**                    V1 WBCD LOAN # 503182676

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the  COUNTY
[Type of Recording Jurisdiction] of  PHILADELPHIA                              [Name of Recording Jurisdiction]:
SEE TITLE
APN #: 272165800

which currently has the address of 1361 S 46TH ST, PHILADELPHIA,

Pennsylvania     19143-3827       ("Property Address"):                    [Street] [City]
                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
                                                                    Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.            Page  3  of 13                      PAEDEDL  1011
                                                                     04-13-2011 14:00

Case ID: 1812010e

V1 WBCD LOAN # 503182676

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3038 1/01
Online Documents, Inc.                    Page   4   of 13                          PAEDEDL  1011
                                                                                   04-13-2011 14:00

Case ID: 18120106

V1 WBCD LOAN # 503182676

by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification

Initials: _[signature]_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                      Page 5 of 13                      PAEDEDL 1011
                                                                              04-13-2011 14:00

Case ID: 1812010€

V1 WBCD LOAN # 503182676

services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repair and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                     Page   6   of 13                     PAEDEDL  1011
04-13-2011 14:00

Case ID: 1812010e

V1 WBCD LOAN # 503182676

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at

Initials: _____

**V1 WBCD LOAN # 503182676**

a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page  8  of 13                    PAEDEDL  1011
                                                                      04-13-2011 14:00

Case ID: 1812010€

V1 WBCD LOAN # 503182676

by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend,

Initials: [signature]

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                Page 9 of 13                PAEDEDL  1011
                                                                 04-13-2011 14:00

Case ID: 18120106

V1 WBCD LOAN # 503182676

modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                          Page   10  of  13                          PAEDEDL  1011
                                                                                           04-13-2011 14:00

Case ID: 1812010€

V1 WBCD LOAN # 503182676

to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3039 1/01
Online Documents, Inc.                  Page  11 of 13                  PAEDEDL  1011
                                                                        04-13-2011  14:00

Case ID: 18120106

V1 WBCD LOAN # 503182676

acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                Page   12 of 13                PAEDEDL  1011
                                                                     04-13-2011 14:00

Case ID: 1812010€

V1 WBCD LOAN # 503182676

present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____        _____(Seal)
Vera L. Jones                           MAY E. MCCLOUD

Commonwealth of PENNSYLVANIA
County of PHILADELPHIA

On this, the ___14___ day of _April 2011_ before me, _____
_____, the undersigned officer, personally appeared
_____MAY E MCCLOUD + VERA L JONES_____
known to me (or satisfactorily proven) to be the person whose name(s)
is/are subscribed to the within instrument and acknowledged that
he/she/they executed the same for the purposes therein contained.
   In witness whereof I hereunto set my hand and official seal.

My commission expires: ___1/20/14___        _____
                                             Notary Public
                                             Title of Officer

> NOTARIAL SEAL
> YELENA SNIGUR
> Notary Public
> LOWER MORELAND TWP, MONTGOMERY COUNTY
> My Commission Expires Jan 20, 2014

Certificate of Residence
I, ___The subscriber___
do hereby certify that the correct address of the within-named Mortgagee is _5151 CORPORATE_
DR, TROY, MI   48098-2639

Witness my hand this ___14___ day of _April 2011_
                                             _____
                                             Agent of Mortgagee

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.              Page 13 of 13                   PAEDEDL 1011
                                                                   04-13-2011 14:00

Case ID: 18120106

 **Commonwealth**™
LAND TITLE INSURANCE COMPANY

**SCHEDULE A**
*(continued)*

File No. MBA-2758

**LEGAL DESCRIPTION**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northeasterly side of 48th Street at the distance of 478 feet, 4 inches Southeastward from the Southeast side of Woodland Avenue in the 27th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 48th Street 14 feet, 4 inches and extending of that width in length or depth Northeastward 60 feet to a certain alley 3 feet wide.

BEING KNOWN AS 1281 South 48th Street.

TAX ID #27-3-1653-00.

TOGETHER with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever.

BEING THE SAME premises which John A. Morris, Executor by Deed dated 12/1/82 and recorded 12/9/82 in Philadelphia County in Deed Book EFP 615 page 496 granted and conveyed unto Leon Womack and Jessie Womack, his wife, in fee.

BEING the same premises which Leon A. Womach and Jessie Womach H/W, by Deed dated March 18, 1996, and recorded June 28, 1996, in the Office of the Recorder of Deeds in and for the County of Philadelphia, Pennsylvania, in Book JTD 27, Page 480, granted and conveyed unto May E. McCloud and Vera L. Jones, in fee.

ALTA Commitment
Schedule A *(continued)*

Case ID: 18120106

# EXHIBIT D

RECORDING REQUESTED
AND PREPARED BY:
T.D. Service Company
1820 E. First St., Suite 300
Santa Ana, CA 92705
(714) 543-8372
JULIE KIDDER



52345364
Page: 1 of 2
05/09/2011 03:31PM

This Document Recorded
05/09/2011
03:31PM
Doc Code: S        Commissioner of Records, City of Philadelphia

Doc Id: 52345364
Receipt #: 1634303
Rec Fee: 169.00

And When Recorded Mail To:
T.D. Service Company
1820 E. First St., Suite 300
Santa Ana, CA 92705

Property Address: 1361 SOUTH 46TH STREET, PHILADELPHIA PA 19143-0000
_____ Space above for Recorder's use _____

## SATISFACTION OF MORTGAGE

Customer#: 586   Service#: 3649300RL1

Loan#: 0007105257

Original Mortgagor: MAY E MCCLOUD, AN UNMARRIED WOMAN VERA L JONES

Original Mortgage Holder: KEY BANK USA, NATIONAL ASSOCIATION

Original Mortgage Amount: 45,000.00

Assignment from KEY BANK NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO KEY BANK USA, NA to U.S. NATIONAL BANK ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE CSFB HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2005-AGE1 was recorded simultaneously herewith.

Mortgage dated SEPTEMBER 17, 1998 and recorded on SEPTEMBER 28, 1998 in the office of the recorder of deeds of PHILADELPHIA county, PHILADELPHIA CITY, state of PENNSYLVANIA, as Instrument No. 000274 in Book No. M 1514, at Page No. 556.

The undersigned hereby certifies that the debt secured by the above-referenced Mortgage has been fully paid or otherwise discharged, and that upon the recording of this document, the said mortgage shall be hereby fully and forever satisfied, discharged and released. "We hereby empower the Recorder of Deeds to mark the same of record."

Page 1

Case ID: 18120106

Loan#: 0007105257   Srv#: 3649300RL1

In witness whereof, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument on ___05-157 —11___

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE CSFB HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2005-AGE1 BY SELECT PORTFOLIO SERVICING, INC AS ATTORNEY IN FACT

Power of Attorney was recorded simultaneously herewith.

By: _____

Brenda Cortez, Assistant Secretary

Power of Attorney Recorded on_____
As Inst#_____on Book_____Page____

State of    CALIFORNIA          }
County of   ORANGE              } ss.

On __MAY 0 2 2011__, before me, Laurence F. Lim, a Notary Public, personally appeared  Brenda Cortez, who acknowledged herself/himself to be the  Assistant Secretary of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE CSFB HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2005-AGE1 BY SELECT PORTFOLIO SERVICING, INC AS ATTORNEY IN FACT, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct. Witness my hand and official seal.

_____

(Notary Name): Laurence F. Lim
My commission expires: 07/06/2012

LAURENCE F. LIM
COMM. # 1801588
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires July 8, 2012

Page 2

# EXHIBIT E

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral and Information Service
Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia, PA 19107
Telephone (215) 238-6333

## (SEE ATTACHED ESPANOL AVISO)

File #: 1004559

Case ID: 170503419

Case ID: 18120106

## AVISO

Le han demandado a usted en la corte.  Si usted desea defenderse de las demandas expuestas en las paginas siguientes, debe tomar acción dentro de veinte (20) dias al partir de la fecha de la demanda y el aviso y debe asentar una comparencia escrita, en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciónes a las demandas en su contra.  Sea avisado que si usted no se defiende, el caso puede proceder sin usted y se puede registrar una sentencia contra usted por la corte sin otro aviso para cualquier dinero reclamado en esta demanda u otros reclamos o compensación solicitado por el demandante.  Usted puede perder dinero o sus propiedades u otros derechos importante para ti.

USTED DEBE LLEVAR ESTE PAPEL A SU ABOGADO CUANTO ANTES.  SI USTED NO TIENE UN ABOGADO, VAYA O LLAME POR TELEFONO A LA OFICINA QUE ESTA SIGUIENTE.  ESTA OFICINA PUEDE PROVEERLE INFORMACIÓN SOBRE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ESTA OFICINA PODRIA PROVEERLE INFORMACIÓN SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES GRATIS O BAJO COSTO PARA PERSONAS ELEGIBLE.

ASSOCATION DE LICENCIDADOS DE FILADELFIA
SERVICE DE REFERENCIA E INFORMACION LEGAL
1101 MARKET STREET, 11TH FLOOR
PHILADELPHIA, PA  19107
(215)238-6300

File #:  1004559

Case ID: 170503419

Case ID: 1812010€

PHELAN HALLINAN DIAMOND & JONES, LLP
Abigail Brunner, Esq., Id. No.319034
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
Abigail.Brunner@phelanhallinan.com
215-563-7000

ATTORNEY FOR PLAINTIFF

MATRIX FINANCIAL SERVICES CORPORATION
5151 CORPORATE DRIVE
TROY, MI 48098

COURT OF COMMON PLEAS

CIVIL DIVISION

             Plaintiff

TERM

v.

NO.

MAY E. MCCLOUD
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

PHILADELPHIA COUNTY

VERA L. JONES
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

        Defendants

## CIVIL ACTION - LAW (3.0 REAL PROPERTY)
## COMPLAINT IN MORTGAGE FORECLOSURE
### 3010 FORECLOSURE

Case ID: 170503419

Case ID: 18120106

1.   Plaintiff is

MATRIX FINANCIAL SERVICES CORPORATION
5151 CORPORATE DRIVE
TROY, MI 48098

2.   The name(s) and last known address(es) of the Defendant(s) are:

MAY E. MCCLOUD
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

VERA L. JONES
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

who is/are the mortgagor(s) and/or real owner(s) of the property hereinafter described.

3.   On 04/14/2011 MAY E. MCCLOUD and VERA L. JONES made, executed and

delivered a mortgage upon the premises hereinafter described to Mortgage Electronic

Registration Systems, Inc. as Nominee for FLAGSTAR BANK, FSB. , which mortgage

is recorded in the Office of the Recorder of Deeds of PHILADELPHIA County, in

Mortgage Document ID 52340885. By Assignment of Mortgage recorded 03/17/2017 the

mortgage was assigned to PLAINTIFF, which Assignment is recorded in Assignment of

Mortgage Document ID 53187986. The mortgage and assignment(s), if any, are matters

of public record and are incorporated herein by reference in accordance with Pa.R.C.P.

1019(g); which Rule relieves the Plaintiff from its obligations to attach documents to

pleadings if those documents are of public record.

4.   The premises subject to said mortgage is described as attached.

Case ID: 170503419
Case ID: 18120106

5.  The mortgage is in default because monthly payments of principal and interest upon said mortgage due 12/01/2016 and each month thereafter are due and unpaid, and by the terms of said mortgage, upon failure of Mortgagor to make such payments after a date specified by written notice sent to Mortgagor, the entire principal balance and all interest due thereon are collectible forthwith.

6.  The following amounts are due on the mortgage as of 04/29/2017:

| | |
|---|---|
| Principal Balance | $63,784.05 |
| Interest | $1,652.18 |
| 11/01/2016 through 04/29/2017 | |
| Late Charges | $96.65 |
| Property Inspections | $60.00 |
| Subtotal | $65,592.88 |
| | |
| Escrow Credit | ($1,181.51) |
| **TOTAL** | **$64,411.37** |

7.  Plaintiff is <u>not</u> seeking a judgment of personal liability (or an <u>in personam</u> judgment) against the Defendant(s) in the Action; however, Plaintiff reserves its right to bring a separate Action to establish that right, if such right exists. If Defendant(s) has/have received a discharge of personal liability in a bankruptcy proceeding, this Action of Mortgage Foreclosure is in no way an attempt to reestablish such personal liability discharged in bankruptcy, but only to foreclose the mortgage and sell the mortgaged premises pursuant to Pennsylvania Law.

Case ID: 170503419

Case ID: 1812010€

8. Notice of Intention to Foreclose as set forth in Act 6 of 1974, Notice of Homeowner's Emergency Mortgage Assistance Program pursuant to Act 91 of 1983, as amended in 2008, and/or Notice of Default as required by the mortgage document, as applicable, have been sent to the Defendant(s) on the date(s) set forth thereon, and the temporary stay as provided by said notice has terminated because Defendant(s) has/have failed to meet with the Plaintiff or an authorized consumer credit counseling agency, or has/have been denied assistance by the Pennsylvania Housing Finance Agency. A copy of said notice(s), redacted to remove account information, is attached hereto as Exhibit "A".

WHEREFORE, Plaintiff demands an in rem judgment against the Defendant(s) in the sum of $64,411.37, together with interest, costs, fees, and charges collectible under the mortgage including but not limited to attorney fees and costs, and for the foreclosure and sale of the mortgaged property.

PHELAN HALLINAN DIAMOND & JONES, LLP

By: _____

Abigail Brunner, Esq., Id. No.319034
Attorney for Plaintiff

Case ID: 170503419

Case ID: 18120106

## VERIFICATION

I, ___Vanessa M. Ellison___, hereby state that I am ___Loan Administration Analyst___ of

FLAGSTAR BANK. F.S.B., mortgage servicing agent for Plaintiff in this matter. The Plaintiff

has delegated the mortgage servicing responsibility to FLAGSTAR BANK F.S.B. for the

mortgage loan which is the subject of this action. Plaintiff lacks sufficient information to make

this verification because Plaintiff is not the entity which maintains the business records for the

mortgage. FLAGSTAR BANK F.S.B. is in possession and control of all documents and records

supporting the statements in the foregoing complaint and therefore the servicer, rather than the

Plaintiff, is the appropriate entity to make this verification.

I have reviewed the business records relating to this account, and am authorized to make

this verification. I hereby verify that the statements made in the foregoing Civil Action in

Mortgage Foreclosure are true and correct to the best of my information and belief. I understand

that this statement is made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn

falsification to authorities.

DATE: ___5 /15/17___

Name: ___Vanessa M. Ellison___

Title: Loan Administration Analyst

FLAGSTAR BANK F.S.B.

File #: 1004559

Name: MCCLOUD

File #: 1004559

Case ID: 170503419

Case ID: 18120106

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northeasterly side of 46th Street at the distance of 478 feet, 4 inches Southeastward from the Southeast side of Woodland Avenue in the 27th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 46th Street 14 feet, 4 inches and extending of that width in length or depth Northeastward 80 feet to a certain alley 3 feet wide.

BEING KNOWN AS 1361 South 46th Street.

TAX ID #27-2-1658-00

TOGETHER with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever.

BEING THE SAME premises, which John A. Morris, Executor by Deed dated 12/1/82 and recorded 12/9/82 in Philadelphia County in Deed Book EFP 615 page 436 granted and conveyed unto Leon Womack and Jessie Womack, his wife, in fee.

BEING the same premises which Leon A. Womack and Jessie Womach H/W, by Deed dated March 18, 1996, and recorded June 28, 1996, in the Office of the Recorder of Deeds in and for

File #: 1004559

Case ID: 170503419

Case ID: 1812010€

County of Philadelphia, Pennsylvania, in Book JTD 27, Page 480, granted and conveyed unto May E. McCloud and Vera L. Jones, in fee.

**PROPERTY ADDRESS: 1361 SOUTH 46TH STREET, PHILADELPHIA, PA 19143-3827**

**BRT#27-2-1658-00**

Case ID: 170503419
Case ID: 18120106

# EXHIBIT F

Case ID: 181201066

FILED

10 APR 11  PH 3: 25

OFFICE OF JUDICIAL RECORDS
CIVIL ADMINISTRATION-PA

MATRIX FINANCIAL SERVICES
CORPORATION,
5151 CORPORATION DRIVE
TROY, MI 48098

       Plaintiff,

*v.*

:MAY-E. MCCLOUD:
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

-AND-

:VERA-L. JONES: *in propria persona*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

       Respondents.

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

CIVIL DIVISION – LAW

DOCKET NO. 170503419

-JURY TRIAL DEMANDED-

## NOTICE TO DEFEND

### ***Notice***

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.



Matrix Financ Srvc. Vs Mccloud Etal-ANCOM

17050341900051

Case ID: 18120106

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Lawyer Referral and Information Service**

**Philadelphia Bar Association**

**1101 Market Street, 11th Floor**

**Philadelphia, PA 19107**

**Telephone (215)238-6333**

Case ID: 18120106

| | |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, 5151 CORPORATION DRIVE TROY, MI 48098 | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY |
| Plaintiff, | CIVIL DIVISION – LAW DOCKET NO. 170503419 |

:                       :
MATRIX FINANCIAL SERVICES          :       IN THE COURT OF COMMON PLEAS
CORPORATION,                       :       OF PHILADELPHIA COUNTY
5151 CORPORATION DRIVE             :
TROY, MI 48098                     :       CIVIL DIVISION – LAW
                                   :
            Plaintiff,             :       DOCKET NO. 170503419
                                   :
                                   :
                                   :
*v.*                               :
                                   :
:MAY-E. MCCLOUD:                   :
1361 SOUTH 46TH STREET             :
PHILADELPHIA, PA 19143-3827        :
                                   :
     -AND-                         :


:VERA-L. JONES: *in propria persona*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

            Respondents.

## ORDER

AND NOW, this _____ day of _____, 2018, upon review, comprehension and consideration of the RESPONSE TO ORDER TO FILE ANSWER TO DEFENDANTS' COMPLAINT of beneficiaries of the LODIAL *RES* 1361 S. 46th Street, Colonial territorial designation: Philadelphia, Pennsylvania 19143, it is hereby ORDERED and DECREED that the RESPONDENTS' NEW-MATTER AND DEFENSES are SUSTAINED and that Plaintiffs Complaint is DISMISSED.

By THE COURT:

_____
                                                                J.

MATRIX FINANCIAL SERVICES          :     IN THE COURT OF COMMON PLEAS
CORPORATION,                       :     OF PHILADELPHIA COUNTY
5151 CORPORATION DRIVE             :
TROY, MI 48098                     :
                                   :     CIVIL DIVISION – LAW
                                   :
            Plaintiff,             :     DOCKET NO. 170503419
                                   :
                                   :
v.                                 :
                                   :
:MAY-E. MCCLOUD: *In Propria*      :
*Persona*                          :
1361 SOUTH 46TH STREET             :
PHILADELPHIA, PA 19143-3827        :
                                   :
-AND-                              :

:VERA-L. JONES: *In Propria Persona*,
*Sui Juris*
1361 SOUTH 46TH STREET
PHILADELPHIA, PA 19143-3827

            Respondents.

---

### TRUSTEE AND BENEFICIARIES OF
### 1361 SOUTH 46TH STREET
### ANSWER TO COMPLAINT INITIATED BY
### PLAINTIFF MATRIX FINANCIAL SERVICES CORPORATION

Pursuant to Pa.R.C.P. 1019 and Pa.R.C.P. 1147, the *Res* 1361 South 46th Street, by and through its authorized Trustee(s) and living woman and Representative-Trustee beneficiary :Vera-Lynn Jones: *in propria persona de facto* and *de jure* (Beneficiary), files the herein **RESPONSE, NEW-MATTER, COUNTERCLAIM** against **DEFENDANTS** in Plaintiff's Mortgage Foreclosure action and presents the following:

### RESPONSE TO PLAINTIFF'S COMPLAINT

1. Admitted, to the extent that Matrix Financial Services Corporation is listed in the Caption of the herein matter as Plaintiffs.

2. Denied. Respondents last known address is: 1818 S. Alden Street. Respondents are the beneficiaries of the Estate of the BE KIND and UNIFIED INDIGENOUS FOREIGN FAMILY TRUST, which holds 1361 S. 46th Street, the subject RES of this herein matter,

Case ID: 18120106

in Foreign Trust. Respondents have been intentionally targeted, chosen, labeled and titled in this herein matter as 'Defendants". *Respondents Reserve All Rights and Waive None.*

3.  Admitted in part. Denied in part. Admitted to the extent that the alleged documents Plaintiff(s) assert are of issue and evidence are recorded. Denied to the extent that Respondent(s) "made, executed and delivered a mortgage". Further, Denied to the extent that Pa.R.C.P. 1019(g) "relieves the Plaintiff from its obligation to attach documents to pleadings if those documents are of pubic record". Under Pa.R.C.P. 1019(h), which specifically states: "When *any* claim or defense is based upon an agreement, the pleading *shall* state specifically if the agreement is oral or written." Under Pa.R.C.P.. 1019(i), the rule specifically states: "When any claim or defense is based upon a writing, the pleader *shall* attach a copy of the writing, or material part thereof, *but if* the writing or copy is *not accessible to pleader*, it is sufficient so to state, together with the reason, and to set forth the substance of the writing." Further, the Official[1] Note within the Pa.R.C.P. 1019 Contents of Pleadings. General and Specific Averments states: "*If the agreement is in writing, it must be attached to the pleading. See subdivision (i) of this rule*". *Strict Proof is demanded. Respondents Reserve All Rights and Waive None.*

4.  Admitted in part. Denied in part. Admitted, solely to the limited extent that the premises is "described". Denied to the extent that the premises "described" is "subject to said mortgage" as if Plaintiff's continued claim will render that which is false, truth by mere continued assertion or claim. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

5.  Denied. Plaintiffs have failed to comply with Pa.R.C.P. 1019 and the accompanying Pa.R.C.P. 1147, which must be followed in tandem and not standing alone. Plaintiff failed to:

    a.  Attach the Original Written Mortgage Agreement or Certified Copy of the Original Written Mortgage Agreement;

    b.  Attach the Original Mortgage Note or a Certified Copy of the Original Mortgage Note;

---

[1] Official is defined as: "Pertaining to an office; invested with the character of an officer; proceeding from, sanctioned by, or done by an officer." *See, Black's Law Dictionary, Revised Fourth Edition*, Pg. 1236 (1968).

    **c.** Attach the Original Note Endorsement or a Certified Copy of the Note Endorsement; and

    **d.** Attach the Allonge.

Plaintiff(s) has failed to provide evidence and therefore proof that a valid and lawful Mortgage Agreement exist between :May-E. McCloud: and :Vera-L. Jones:. Further, at all times prior the filing of this herein suit and thereafter, Vera L. Jones has asserted and averred that she in *propria persona* and that Respondent(s):

    a) Never had knowledge about Plaintiff's existence;

    b) Never offered or accepted any agreement with Plaintiff(s);

    c) Never executed any documents agreeing to mortgage the subject Res Property; and

    d) Never executed and agreed to make any payments to Plaintiff(s).

*To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**6.** Denied. Respondent(s) is without sufficient knowledge or information to form a belief to the truth or falsity of this pleading. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**7.** Denied. Plaintiffs seek to establish a Fraudulent basis to a claim for real property without providing evidence that a valid mortgage contract exists by averting and circumventing applicable and valid rules of procedure required for Plaintiffs to follow. Furthermore, asserting empty accusations of frivolous claims of defense asserted by Respondent are mere attempts by Plaintiff to divert and distract the Court from Plaintiffs unlawful and/or questionable actions concerning the issue of this herein Foreclosure suit. A valid mortgage contract does not exist and that is FACT and TRUTH. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**8.** Admitted in part. Denied in part. Admitted to the extent that the following documents were received:

    **a.** Act 6 of 1974;

    **b.** Act 91 of 1983.

Denied to the extent that a "temporary stay has terminated". Plaintiffs' averments are unclear and confusing. When there is confusion there is no Truth. Therefore, Respondent lacks sufficient knowledge or information to form a belief to the truth or falsity of this specific denial. Additionally, Plaintiffs blatantly dissembles, perhaps with the foreseeable

expectation, due to the nature of past dealings and developing a livelihood from stealing people's property, that Respondent **will** fail "to meet with Plaintiffs or an authorized consumer credit counseling agency or [will] den[y] assistance by the Pennsylvania Housing Finance Agency". Again, Respondent(s) reserves ALL RIGHTS and WAIVES NONE at no time EVER in this matter and continues to assert in TRUTH that Plaintiffs lack standing as well as any valid and lawful claim(s) against Respondent(s) because a valid mortgage contract does not exist in law, in fact or in truth and **Plaintiff's Complaint** fails for this very reason. But for the existence of such a **valid Agreement**, Respondent(s) is not lawfully required by **any law** to meet with person(s) (alive or dead), merely because Plaintiff dictates Respondent comply, when Respondent(s) has not contracted, owes no legal duty or legal obligation or moral or ethical responsibility. *To the extent this pleading is factual and truthful, strict proof is demanded. Respondents Reserve All Rights and Waive None.*

**WHEREFORE,** Respondents having ANSWERED Plaintiff's assertions, Respondent NOW COMES and RAISES AFFIRMATIVE DEFENSES AND NEW MATTER in the nature of DEMURRERS or other appropriate RESPONSES to Plaintiffs Fraudulent and unlawful Foreclosure suit.

## NEW MATTER & DEMURRER

9. Plaintiff(s) lack standing to assert a valid claim against Respondent(s). There is no valid lawful contract and therefore no relationship that exists between Plaintiffs and Respondent(s).

   a. Plaintiffs never presented owner's in fee with an opportunity to enter into a valid mortgage agreement; Owners in Fee never presented Plaintiffs with an offer to enter into a valid mortgage agreement.

   b. Respondent never entered into a mutually agreed upon contractual relationship with Plaintiffs to borrow funds of any kind and in return for such funds to then repay a specific amount. There was no bargain for exchange/consideration.

   c. At no time did Respondent ever execute any documents knowingly, willingly or intentionally so as to create any duty or obligation upon Respondent to Plaintiff.

10. Plaintiff(s) fail to state a cause of action for which relief can be granted.

11. Plaintiff(s) failed to join all *necessary* parties.

12. Plaintiff(s) failed to attach all *written contracts,* which they assert the basis of the claim rest upon, and for which the Pa.R.C.P unequivocally require that such attachments "*shall*" be included, despite Plaintiff's false assertions of material fact(s) that "there is no such requirement".

13. Plaintiff(s) failed to produce evidence of **valid consideration** for the alleged mortgage agreement they claim the herein action is based. Sham consideration is no consideration.

14. Plaintiff(s) have failed to produce factual evidence that supports their false assertions that Respondents in Fee knowingly, intentionally and willingly executed the alleged mortgage contracts asserted. On numerous occasions, Respondent(s) requested copies of:

    a.  Documents evidencing the loan transaction;
    b.  A copy of the cancelled check and/or the wire transfer;
    c.  A valid mortgage agreement with the signature of both owner in fees;
    d.  A valid mortgage note with the signature of both owner in fees;
    e.  Any documents other than documents that could be falsely contrived to advance a Scam and Fraud.

At all times, Plaintiffs have failed to produce said:

    a)  Valid executed agreements;
    b)  Valid documents supporting the transaction/transfer of funds; and
    c)  Valid allonge.

Failure to ignore Respondents' request and failure to produce the requested documents is a direct violation of RESPA. This is Fact and this is Law.

15. Respondent(s) aver that the mortgage contract is invalid and void *ab initio* for lack of a valid signature by Respondent and therefore is a violation of common law contract law and statutory contract law as well as a violation of the Statute of Frauds, which requires for contracts concerning real property to be in writing and executed by the parties to be charged at the time of the agreement.

16. As per educated deducements of the attached documents enclosed with Plaintiffs' filed Complaint, several alleged foreclosure assistant agencies were contacted:

a. On February 22, 2018, NACA was contacted. Respondent informed them of the situation and the false signature and was advised to merely file a loan modification or file for Chapter 7 or Chapter 13 bankruptcy and that Respondent(s) just have to pay. The specific assistance was "make two payments then figure out what you want to do with your home; "most people just move out".

b. On February 22, 2018 HUD was contacted and Respondent was provided with a number to call. Respondent contacted the Dickenson House and scheduled an appointment. Respondent has been working with the Dickenson House. On Monday April 10, 2018 Respondent had an appointment and learned that her case worker was no longer employed with the Agency. In fact, everyone with whom Respondent had dealt had been replaced.

c. On April 5, 2018, Respondent followed up with Legal Aide as per advisement by the case worker at Dickenson House. At the appointment, Respondent was informed Legal Aide could not assist her and that cases of her nature were not the type of cased they addressed. Respondent was provided with information regarding recent filings and orders from the docket and informed that a Response was due April 11, 2018. Additionally, Respondent was asked "why don't you just hire a lawyer" to which Respondent replied: "I cannot afford one; that is why I am here".

Respondent avers that the attached documents with lists of alleged agencies to assist are merely Racket agencies and providing such documents is a mere unlawful formality scam to entrap and cause undue stress and emotional distress under the already traumatic circumstances, which is intentionally and deliberately directly being caused by Plaintiff and Plaintiff's lawyers. Such injurious and nefarious tactics are a violation of a duty of good faith and fair dealing, whether a valid contract exists or not. Further, Respondent(s) contends that such actions committed against both she and her mother :May-E. McCloud: are nefariously intentional and that due to their indigenous status they are the targets of the housing Fraud prevalently occurring in the City of Philadelphia and displacing thousands of indigenous people, just as the Homestead Acts and other united states policies and laws have in the past.

17. Respondents have been unlawfully discriminately targeted in a city that is determined to push out the indigenous population. Respondents raised several issues in Preliminary Objections that were constantly viewed by Plaintiff as being attempts to waste the courts time and cause unnecessary delay. On numerous occasions in this herein matter, Respondents have faced discrimination in filing their documents, denied access to electronically file documents and then seek nondiscriminatory relief concerning these matters. The series of factual truthful acts committed by Plaintiffs, Plaintiff's lawyer(s) and the judicial system gives factual baseful grounds for unclean hands and violations of a duty that is owed by all court officers, clerks and lawyers to the public regardless of race, status and nationality. Discriminately targeting and creating through acts, directly or indirectly, constituting threat, duress and coercion that may dissuade one (Respondent(s)) from pursuing a lawful right is a direct violation of the United States Constitution, Pennsylvania Constitution and the United Nations Rights of Indigenous Peoples and American Declaration of the Rights of Indigenous Peoples, which have been adopted by the United Nations Treaty on Human Rights, which the United States is a signatory. When the clerks office denied all documents attempted to be filed on line, access to the courts were denied. When Plaintiff dissembled about serving Respondents and then made reference to documents not attached as exhibits, further acts of intentional dissembling and misrepresentations were committed; when Respondent(s) request for documents evidencing a valid contract and payment of consideration for an alleged mortgage contract Respondent did not execute are denied yet clearly required by the Court's rules, Fraud and illegality is not only being committed but is ongoing and continuing until remedy is received. Plaintiffs continued avoidance to provide requested documents to support Plaintiffs position and allegations and claims against Respondent remain.

18. Respondent(s) further asserts that Plaintiff's contention and assertion of continued payment owed without Plaintiff in good faith producing required documents not only required for a well pled complaint, but also evidencing a valid and lawful contract, is Fraud and Misrepresentation, and illegality that is continuing and ongoing. and does not in law provide lawful grounds for Plaintiff to file a foreclosure action. Therefore, Plaintiffs' suit is not only Frivolous but also an intentional wrongful use of civil proceedings.

19. Respondent(s) further asserts, that in the event Plaintiff's Complaint is not dismissed, Plaintiff is not the genuine party of interest in the matter and therefore barred from making

any claims against Respondents or the Foreign Trust that holds the real property in trust as an asset.

20. Respondent(s) further assert the defense of "unclean hands".

21. Respondent(s) reserves all rights and waives none regardless of any decisions that have made and regardless of any objections that have been overruled. All objections herein in this Answer, New Matter and Counterclaim and raised in any previously responded documents are preserved. Additionally, Respondent reserves the right to raise any additional defenses including affirmative defenses as discovery progresses. Again, Respondent(s) as a non-willing or voluntary or intentional signatory to the alleged mortgage contract asserted and presented by Plaintiffs reserves ALL RIGHTS.

22. Respondent, further demands that in the event this matter moves forward, that the matter receives a trial by jury.

23. Respondent(s), NOW having raised NEW MATTER and DEMURRER respectfully demand:

    1. Plaintiff's Complaint be DISMISSED with Prejudice; and

    2. Respondents be compensated compensatorily and punitively to the fullest extent of the law.

## COUNTER-CLAIM

## UNJUST ENRICHMENT

1. Respondent(s) **never** entered into a valid mortgage contract with Plaintiffs. Plaintiffs have provided and admit evidence of payments made by Respondent :May-E. McCloud: who has chronic progressive Dementia.

2. Plaintiff received payment in return for not providing a loan to Respondent under fraudulently contrived mortgage agreement documents. Therefore, Plaintiffs are thieves and pirates hiding behind a shielded corporation.

3. When Respondent(s) :Vera-L. Jones: became the legal guardian of :May E. McCloud: an inventory of the Estate was conducted and the fraudulent mortgage agreement was discovered.

4. Respondent(s) contacted Plaintiffs, whose contact and good faith inquiry and request for more information was ignored.

5. Respondent(s) ceased automatic withdrawal payments. Shortly thereafter, Plaintiffs assigned the mortgage to Matrix Financial Services Corporation.

6. Respondent(s) aver that Plaintiff's and/or FlagStar were unjustly enriched at Respondent(s) expense because a valid mortgage contract did not/does not exist and never existed.

7. Respondent(s) contend that all times Plaintiffs were fully aware of the mental state of :May-E. McCloud: and fully aware that :Vera-L. Jones: had not in fact or truth executed any mortgage contract documents.

## LACK OF CONSIDERATION

8. Plaintiff failed to provide Respondent on numerous occasions with evidence of the valid mortgage contract and transaction or transfer of any funds to Respondent :May-E. McCloud:

9. Respondent, :Vera-L. Jones: at all times was unaware that a mortgage existed on premises 1361 S. 46th Street until she became the legal guardian of the Estate and was required to perform an inventory of the Estate to be filed in Orphans' Court.

10. Respondent, :May-E. McCloud: suffers from chronic progressive Dementia and suffered from Dementia at the alleged time Plaintiffs assert a mortgage was entered by Respondent(s).

Case ID: 18120106

11. Plaintiff has not provided any evidence that consideration (the alleged loan) was ever provided to effectuate the final element of a valid and bilateral mortgage contract.

## FRAUD

12. Plaintiffs presented Respondent(s) with a mortgage contract with a forged or copied and pasted signature on the document.

13. Plaintiffs presented Respondent with a copy of the note that lacked Respondent, :Vera -L. Jones: signature, with Plaintiff reasoning and stating to the housing counselor "the note does not require her signature because she was not the one making the payments".

14. The note and mortgage lawfully must remain together. The note follows the mortgage agreement and under contract law all agreements that are to be charged against the party must be executed by the party.

15. Plaintiffs refused to provide Respondent with an original copy of the mortgage contract.

16. Plaintiffs refused to provide Respondent with a copy of cancelled check, wire transfer of funds or any documents evidencing the validity of an existing valid mortgage contract.

17. Respondent on numerous occasions, in writing and over the phone informed Plaintiffs that she had never executed any mortgage agreements with Plaintiffs.

18. Plaintiff dismissed Respondents request and continued to pursue and move forward, in bad faith, to foreclose on the property without providing evidence of the existence of a valid mortgage contract.

19. Plaintiff intentionally ignored a material fact and instead of addressing the issue that documents could have been forged and falsified, Plaintiffs chose to intentionally ignore the probative information as if their sole intention was to foreclose and dispossess Respondents of their Family Tribal Estate, whether a valid mortgage existed or not.

20. Respondent upon learning of the truth of the fraudulent mortgage on her property blocked access to the automatically withdrawn payments.

21. At no time were Plaintiffs concerned about whether the mortgage was fraudulent; Plaintiffs solely were concerned about receiving payment and who paid and under whatever circumstance was not their concern.

22. Plaintiffs did not address or respond to Respondents inquiries until payments ceased.

23. Respondents have suffered injury of being defamed, denied access to defend the foreclosure lawsuit and dismissed as it they do not matter by Plaintiff's lawyer contending that their concerns are frivolous and attempts used to delay the foreclosure process.

24. Plaintiffs actions exhibit a clear pattern of violations and detest for those who attempt to challenge an otherwise obvious and yet comfortable lifestyle Plaintiffs have managed to achieve through committing such unlawful acts.

## VIOLATION OF FAIR DEBT COLLECTION ACT

25. Plaintiffs violated various provisions of the FDCPA by using unfair and unconscionable means to collect the debt they would not provide evidentiary documents to substantiate their claim.

26. Plaintiff contacted Respondent :May-E. McCloud: at all times of the day and evening. The contacts continued incessantly, even after they were contacted and informed by correspondence and phone not once, but three (3x's) that their acts were in violation. Plaintiff's ignored all notices and continued calling Respondent :May-E. McCloud: threatening to foreclose on the home even though it had/has no right to possession of the property. The phone calls caused Respondent :May-E. McCloud, a chronic dementia patient to become visibly upset and emotionally distressed and confusion.

**WHEREFORE,** Respondent DEMANDS compensation in actual damages, including for mental anguish; statutory damages and any other compensation the Court deems reasonable and fair.

## VIOLATION OF RESPA

27. Plaintiffs have consistently refused to provide Respondent with documents and information requested in their alleged foreclosure action.

28. Plaintiffs have charged late fees for timely payments that were automatically deducted from Respondents' account, although they were not entitled to payment.

29. Plaintiffs have ignored and refused to cease its harassing collection efforts and foreclosure proceedings after receiving numerous consumer reporting warnings and complaints due to late phone calls and harassing personal visits to 1361 S. 46th Street.

Case ID: 18120106

30. Plaintiffs have provided information to consumer reporting agencies regarding overdue payments allegedly owed by Respondent(s), which remains a genuine issue of material fact.

**WHEREFORE,** Respondent(s) request that this Court DISMISS Plaintiffs' Complaint and provide equitable, just and compensatory relief to Respondent(s) as Truth and Justice so require.

Honorably Submitted,

'All Rights Reserved'

Date of Execution: 04.11.2018

By: _____
*Autograph of Trustee for the Be Kind and Unified Indigenous Foreign Private Family Trust On behalf of ©May E. McCloud™ and © Vera L. Jones™ and the Authorized Living woman and Representative :Vera-Lynn: Jones: -Al-ways in Propria Persona, Sui-Juris-*

By: _____
*Autograph of Jones:: The Authorized Representative, Foreign Indigenous Beneficiary and Living Woman as Created by the Creator -All Rights Reserved-*

Case ID: 18120106

## VERIFICATION

By my autographed hand ensealed, I _____, verify that the factual statements herein are true, correct and made with honor and free of any misleading information, lies, deceit or untruths according to my knowledge, information and comprehension. Respondent-beneficiary _____ and Trustee _____ of the Be Kind and Unified Indigenous Foreign Private Family Trust, verify that in accordance with the laws of the Creator, Jus Cogens (International Law), and Customary Laws, that the statements presented herein are made with the utmost knowledge and intent to represent **TRUTH** and that it is comprehended that having intentionally being made of the corrupt mind with the intent to commit nefarious, deceitful and perjuries and that such actions cause an understanding of the established 18 Pa. C.S. §4904 relating to unsworn falsifications, that have customarily been codified as per Jus Cogens.

Honorably Submitted,

All Rights Reserved

Date of Execution: 04.11.2018

*Autograph of Trustee for the*
*Be Kind and Unified Indigenous*
*Foreign Private Family Trust*
*On behalf of ©May E. McCloud™*
*and © Vera L. Jones™ and*
*the Authorized Living woman and*
*Representative : Vera-Lynn: Jones:*
*Al-ways in Propria Persona, Sui*
*Juris*

*Autograph   Vera-L.   Jones:,*
*Propria Persona, Sui Juris*
*The   Authorized   Representative,*
*Foreign Indigenous Beneficiary and*
*Living Woman as Created by the*
*Creator*
*-All Rights Reserved-*

## CERTIFICATE OF SERVICE

By my autograph and seal, and in conformance with the Uniform Postal Act and laws governed by the Uniform Postal Union, I _____, have certified that I have caused a true and correct copy of the RESPONSE/ANSWER, NEW MATTER AND COUNTER-CLAIM in Support thereof to be filed on _____ and mailed by the U.S. Postal Service (USPS) First Class Mail on: _____ to the following persons (entity) or living men or women:

**MICHAEL A. PELLIGRINO, ESQUIRE**
**DBA ATTORNEY FOR PLAINTIFF**
**· PHELAN HALLINAN LLC**
**1617 JOHN F. KENNEDY BLVD**
**SUITE 1400, ONE PENN CENTER PLAZA**
**PHILADELPHIA, PENNSYLVANIA 19103**

Date of Execution: _____ By: _____
Autograph of living man or woman.

# EXHIBIT G

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
ORPHANS' COURT DIVISION

O. C. NO. _____ AI of 20__

Estate of May McCloud,
an alleged incapacitated person

PETITION FOR ADJUDICATION OF INCAPACITY AND APPOINTMENT OF PLENARY
GUARDIAN OF THE ESTATE AND PERSON PURSUANT TO 20 PA.C.S. §5511

TO THE HONORABLE JUDGE OF SAID COURT:

1.  Petitioner is the daughter of May McCloud ("the alleged incapacitated person").

2.  The alleged incapacitated person was born on September 6, 1934, is 81 years old, widowed, and resides at 1361 South 46th St, Philadelphia, Pennsylvania, 19143

3.  The following persons, to the best of Petitioner's knowledge, information and belief, are the living next-of-kin of the alleged incapacitated person:

    Roslyn Evans, 2 Duncan Court, Sewell, NJ, 08080, Daughter

    Donald Andrew Jones, 3844 North Franklin St, Philadelphia, PA, 19140, Son

4.  To the extent known by the petitioner the alleged incapacitated person owns property valued at $13,363.20 in the form of: real property.

5.  Petitioner estimates the alleged incapacitated person's annual income to be $17,614.80, including current monthly Social Security benefits of $1,665.60.

6.  The alleged incapacitated person was not a member of the armed services of the United States and is not receiving benefits from the United States Veterans' Administration.

7.  The alleged incapacitated person suffers from progressive dementia, currently at moderate severity.

8.  Because of her mental condition, the alleged incapacitated person is totally unable to manage her financial affairs, property and business and to make and communicate responsible decisions relating thereto, including the ability to communicate her need for assistance in these areas. By way of example, the alleged incapacitated person hides her checkbook and then cannot remember where to find it. When she has her check book she cannot remember how to fill out the check. She forgets she has automatic payment set up and wants to pay the bill. Tax services were provided, but the incapacitated person repeatedly brought the accountant bags of unrelated documents. Thus the provider could not help her. She thinks that the address labels sent from charities in the mail are stamps. She uses them on her mail in place of actual stamps. She switched her health insurance when an alternate provider called her. She does not desire it, but the petitioner could not change her insurance back. She has multiple IDs which she hides. Although she has one in her wallet, she still wants to go get another one.

9.  Because of her impaired mental and/or physical condition, the alleged incapacitated person lacks the capacity to make or communicate responsible decisions concerning her person and is unable to: consistently feed herself and take care of her health. The alleged incapacitated person concentrates on one task that needs to be accomplished such as a bill or paperwork and cannot focus on anything else, including eating. She went outside to the back yard on a hot day and did not come back in

even though she was about to faint when discovered. She is on medication for dementia, but she hides the bottle. Ms. Jones was unaware of the need for refills until she had run out.

10. The following alternatives to the appointment of a guardian of the person have been considered: The Philadelphia Corporation of Aging provided a worker to assist the alleged incapacitated person, but these alternatives are ineffective for the following reasons: The person attempted to assist the alleged incapacitated person with bills and taxes. The alleged incapacitated person would initially allow assistance and then snatch back papers asking why the helper had them. The alleged incapacitated person will only allow assistance from Ms. Jones and Ms. Jones' son, Yuhanna, who is 33 years old.

11. The severity of the alleged incapacitated person's mental and/or physical condition and the lack of viable, less restrictive alternatives necessitate that a plenary guardian of her estate be appointed to manage and handle all aspects of the alleged incapacitated persons' estate, specifically, but not limited to: all issues relating to cash, checks, bank savings, stocks, bonds, personal property, real property, insurance policies, government entitlements, taxes, execution of documents, entry in contracts and the payment of reasonable compensation for services provided to the person.

12. The following alternatives to the appointment of a guardian of the person have been considered: The Philadelphia Corporation of Aging provided a worker to assist the alleged incapacitated person, but these alternatives are ineffective for the following reasons: The alleged incapacitated person was mean to the worker and denied her need for help. Even when Yuhanna attempts to help, he has to negotiate her limitations. The alleged incapacitated person will ask to go somewhere that Yuhanna knows is incorrect, but she insists. He takes her to the wrong place, and when they arrive, she blames him for taking her to the wrong place.

13. The severity of the alleged incapacitated person's mental and/or physical condition and the lack of viable, less restrictive alternatives necessitate that a plenary guardian of her person be appointed to handle all issues relating to the person of the alleged incapacitated person, specifically, but not limited to: living arrangements, medical and psychiatric care, administration of medication, employment and discharge of physicians, and other medical decisions as may be required.

14. Petitioner is not aware that the alleged incapacitated person signed any powers of attorney or advance health directives or in any other way designated anyone to serve as her agent over any of her personal or financial affairs or as her surrogate over her medical care, or that she designated in writing her wishes with regard to health care, including the use or refusal of life sustaining treatment.

15. The proposed plenary guardian of the person and the estate is Vera Jones, daughter, 1818 South Alden St, Philadelphia, PA, 19143.

16. The proposed plenary guardian, Vera Jones, is 57. She has nursing experience. She is employed as a certified nursing assistant at Sara Care. Ms. Jones already cares for her mother. She is there every day and sleeps there almost every night. Occasionally, she needs a break and takes a night off. The alleged incapacitated person previously lived with Ms. Jones' sister in New Jersey while she was recovering from a fall. Her sister found the task impossible. Mr. Jones was in prison for violating a protection order taken out against him by the alleged incapacitated person and thus violating his parole from previous crimes.

17. The proposed plenary guardian has no interest adverse to the alleged incapacitated person.

18. The consent of the proposed plenary guardian is attached as an exhibit.

19. No other court has ever assumed jurisdiction in any proceeding to determine the capacity of the alleged incapacitated person.

20. No other guardian has been appointed for the estate or person of the alleged incapacitated person.

WHEREFORE, Petitioner respectfully requests that this Court issue a Citation, directed to the alleged incapacitated person, with notice thereof to be given to her next of kin and to such other persons as this Court may direct, to show cause why May McCloud should not be adjudged fully incapacitated and Vera Jones should not be appointed plenary guardian of her estate and her person.

Respectfully submitted,

Julie Hillman Rose, Esquire

Date: 10/20/2015

<u>Verification</u>

Petitioner verifies that the statements made in this Petition are true and correct. Petitioner understands that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

VBRA JONES, Petitioner

Date: 10/28/15

# EXHIBIT H



PHA
ADULT MEDICINE
DELIVERING THE CARE YOU NEED

Sidney Hillman
Medical Center

Text PHA to 55469
1740 South Street, Suite 300, Philadelphia, PA 19146
TEL: 215-732-0876
FAX: 215-732-1812
www.phaadultmedicine.com

## MEDICAL NECESSITY LETTER

TO:     Whom It May Concern

RE:     May McCloud  09/06/1934
        1361 S 46th Street
        Philadelphia PA 19143

RE:

DATE:   3/9/2015

Hello,

This letter is written in support of Ms Vera Jones to handle the financial affairs of Ms. McCloud. Ms. McCloud suffers from progressive dementia. She was last seen in early 2/2015 and examination shows she has moderate severity. It is recommended that someone takes charge of her financial affairs. She also has multiple medical issues and depends on family to assist her. Ms. Jones has been consistent in being the caregiver of her mother, interacting regularly with the medical team on her behalf.

Within reasonable degree of medical certainty, Ms McCloud is unable to handle her finanial affairs and it is important to have a family member do this for her.

Sincerely yours,

Commonwealth of Pennsylvania

County of _Montgomery_ } ss:

Sworn to and subscribed before me
this _26_ day of _Oct_ 20__

Wilbert Warren, MD

(Notary Public)
(SEAL) My Commission Expires _MAY 13/18_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Tiger D. Raven Melchiz-El, Notary Public
Cheltenham Twp., Montgomery County
My Commission Expires May 13, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
ORPHANS' COURT DIVISION

O. C. NO. _____ of _____ AI

In Re: _____, AN ALLEGED INCAPACITATED PERSON

WRITTEN DEPOSITION PURSUANT TO 20 PA.C.S. § 5518

Written Deposition of Dr. _____

Q.   Please state your name and your office address.

A.   Wilbert Warren

> **Philadelphia Health Associates**
> **Adult Medicine, PC**
> **1740 South Street, Suite 300**
> **Philadelphia, PA 19146-1514**
> **P 215-732-0876 F 215-732-1383**
> **www.phaadultmedicine.com**

Q.   Please state your educational background including the schools you have attended, the academic and professional degrees you have received, and the dates you received these degrees.

A.   University of Rochester School of Medicine & Dentistry – M.D 1993

Medical College of Pennsylvania – Residency completed (Allegheny University Hospitals – MCP)

1

Q.   What is your current position?

A.   Physician — Internal medicine

Q.   How long have you practiced your profession and how long have you held your current position?

A.   22 years Practicing as an internist in primary Care.

Q.   State the names of the Pennsylvania professional licensing agencies that have issued licenses to you? Include the date of issuance of such licenses and whether they are still current. (In conjunction with this question, please attach a copy of your curriculum vitae.)

A.   Bureau of Professional + Occupational Affairs Since 12/15/1995

2

Case ID: 18120106

Q. Have you ever testified as a witness in a court proceeding, either in person or by deposition?

A.   Yes

Q. What is the age and date of birth of the alleged incapacitated person? A.

Age 81     DOB 9/6/1934

Q. Have you ever examined, interviewed or tested the alleged incapacitated person? A.

Yes

Q. Was a mini-mental status test performed, and if so, what was the result? A.

14/30     on     2/2/2015

26/30     on     4/26/2013

3

Q.   If so, on what dates did you have an opportunity to examine, interview or test the alleged incapacitated person?

A.   *See previous question*

Q.   Please explain the nature of the examinations referred to in the previous three questions. You may attach any written reports if necessary.

A.   *Mini mental status exam*

Q.   Have you regularly treated the alleged incapacitated person, and if so, for how long?

A.   *Yes*

4

Q.   Please state your diagnosis of the patient, including the nature and extent of the
subject's incapacities and disabilities and his/her mental, emotional and physical condition.

A.   Dementia — progressive
had history 7 Alcohol Abuse
had recent history 7 falling (6/2014) suffering
Thoracic spine fracture with spinal cord contusion
and hand + rib fractures
has fall/Syncope 6/2015 due to dehydration at home

Q.   Please explain how these incapacities and/or disabilities manifest themselves in the
subject's adaptive behavior and social skills?

A.   Poor shortterm memory
not fully oriented
Did not follow 3-point instructions

Q.   In your opinion, is the alleged incapacitated person's ability to receive and evaluate
information effectively and communicate decisions in any way significantly impaired?

A.   yes

Q.   Which methods/techniques, if any, are being utilized to help develop and/or regain the alleged incapacitated person's abilities?

A.   Medication — Aricept

Q.   What kind of assistance does the subject require?

A.   Needs Assistance with Activities Daily Living financial Management Transportation She should live with someone

Q.   Are there any appropriate less restrictive alternatives? If so, please elaborate. If not, please explain why.

A.   No

7

COMMONWEALTH OF PENNSYLVANIA       :
                                                            :SS
COUNTY OF Montgomery                    :

being duly sworn according to law, deposes and says that the answers set forth in this forgoing deposition are true and correct to the best of his/her knowledge, information or belief.

SWORN TO AND SUBSCRIBED

before me this 26 day of Oct , 20 15

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Tiger D. Raven Melchiz-El, Notary Public
Cheltenham Twp., Montgomery County
My Commission Expires May 13, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

9

Case ID: 18120106

V1 WBCD LOAN # 503182676
MIN: 100052550318267605

# NOTE

APRIL 14, 2011                    Philadelphia,                    PENNSYLVANIA
[Date]                           [City]                          [State]

1361 S 46TH ST, PHILADELPHIA, PA 19143-3927
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $70,000.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED
SAVINGS BANK.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of  5.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on  JUNE 1, 2011.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on   MAY 1, 2041,        I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
5151 CORPORATE DR
TROY, MI 48098-2639

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.    $386.54.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.            Page 1  of 3                      F3200NOT  0701
                                                                                04-13-2011 14:00

Initials:

503182676

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _CmGmc_

**503182676**

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_May E. McCloud_ (Seal)

MAY E. MCCLOUD

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: _Melinda McNeal_
MELINDA McNEAL
VICE PRESIDENT

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2007 Online Documents, Inc.                    Page 3 of 3                    F3200NOT 0701
                                                                                    04-13-2011 14:00

503182676

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676
MIN: 100052550318267605

# NOTE

APRIL 14, 2011                    Philadelphia,                        PENNSYLVANIA
[Date]                              [City]                              [State]

1361 S 46TH ST, PHILADELPHIA, PA 19143-3827
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $70,000.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED
SAVINGS BANK.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of   5.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on  JUNE 1, 2011.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on    MAY 1, 2041,     I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
5151 CORPORATE DR
TROY, MI 48098-2639

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.    $386.54.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.                       Page 1  of 3                    F3200NOT  0701
                                                                                         04-13-2011 14:00

Initials:

503182676

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of            15         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _CmGmc_

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.                      Page 2  of  3                      F3200NOT  0701
04-13-2011 14:00

503182676

ORIGINAL NOTE-1

V1 WBCD LOAN # 503182676

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*May E. McClou...*

MAY E. MCCLOUD

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: *Melinda McNeal*

MELINDA McNEAL
VICE PRESIDENT

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2007 Online Documents, Inc.                    Page 3  of  3                   F3200NOT  0701
                                                                              04-13-2011 14:00

503182676

ORIGINAL NOTE-1

**After Recording Return To:**
**FLAGSTAR BANK**
**5151 CORPORATE DRIVE**
**TROY, MI 48098**
**FINAL DOCUMENTS, MAIL STOP W-531-1**

**APN #: 272163800**
**APN #:**

—————————— [Space Above This Line For Recording Data] ——————————
V1 WBCD LOAN # 503182676

# MORTGAGE

> MIN: 100052550318267605

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **APRIL 14, 2011,** together with all Riders to this document.

(B) "Borrower" is **May E. McCloud and Vera L. Jones.**

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D) "Lender" is **FLAGSTAR BANK, FSB.**

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.              Page   1   of 13              PAEDEED      PAEDEDL  1011
                                                                  04-13-2011 14:00

Lender is a **FEDERALLY CHARTERED SAVINGS BANK**
laws of **UNITED STATES OF AMERICA.**
**5151 CORPORATE DR, TROY, MI  48098-2639.**

**V1 WBCD LOAN # 503182676**
organized and existing under the
Lender's address is

(E) "Note" means the promissory note signed by Borrower and dated **APRIL 14, 2011.**
The Note states that Borrower owes Lender ••••••••••••••••**SEVENTY THOUSAND AND NO/100**
••••••••••••••••••••••••••••••••••••••••••Dollars (U.S.     **$70,000.00    )**
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt
in full not later than **MAY 1, 2041.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to
debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated
teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section
5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part
of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as
to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As
used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed
in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related
mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether
or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    **Page  2  of  13**                    PAEDEDL  1011
                                                                04-13-2011 14:00

V1 WBCD LOAN # 503182676

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the   COUNTY
[Type of Recording Jurisdiction] of  PHILADELPHIA                                    [Name of Recording Jurisdiction]:
SEE TITLE
APN #: 272165800

which currently has the address of  1361 S 46TH ST, PHILADELPHIA,
                                                                                         [Street] [City]

Pennsylvania       19143-3827       ("Property Address"):
                    [Zip Code]
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                        Page   3   of  13                        PAEDEDL  1011
                                                                                      04-13-2011 14:00

V1 WBCD LOAN # 503182676

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time

Initials: _____

V1 WBCD LOAN # 503182676

by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification

Initials: _____

V1 WBCD LOAN # 503182676

services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Initials:

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                          Page   6   of  13                    PAEDEDL  1011
                                                                                     04-13-2011 14:00

V1 WBCD LOAN # 503182676

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page 7 of 13                    PAEDEDL 1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676

a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured

Initials: [signature]

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page   8   of   13                    PAEDEOL 1011
                                                                                04-13-2011 14:00

V1 WBCD LOAN # 503182676

by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend,

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page   9   of   13                    PAEDEDL 1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676

modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited

Initials: [signature]

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc. **Page · 10 of 13** PAEDEDL 1011
04-13-2011 14:00

V1 WBCD LOAN # 503182676

to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of

Initials: _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                     Page   11 of 13                        PAEDEDL 1011
                                                                                  04-13-2011 14:00

V1 WBCD LOAN # 503182676

acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any

Initials: _____

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page  12 of 13                    PAEDEDL 1011
                                                                            04-13-2011 14:00

V1 WBCD LOAN # 503182676

present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

   25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

   26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

   27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____
Veda L. Jones

_____ (Seal)
MAY E. MCCLOUD

Commonwealth of PENNSYLVANIA
County of PHILADELPHIA

   On this, the ___14___ day of __April 2011__ before me, _____, the undersigned officer, personally appeared

_____ May E. McCloud _____,

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.
   In witness whereof I hereunto set my hand and official seal.

   My commission expires: __1/20/14__

                                          _____
                                          Notary Public
                                          Title of Officer

```
┌─────────────────────────────────────────┐
│            NOTARIAL SEAL                  │
│           YELENA SNIGUR                   │
│             Notary Public                 │
│  LOWER MORELAND TWP., MONTGOMERY COUNTY   │
│    My Commission Expires Jan 20, 2014     │
└─────────────────────────────────────────┘
```

Certificate of Residence
   I, __The Subscriber__
do hereby certify that the correct address of the within-named Mortgagee is __5151 CORPORATE DR, TROY, MI  48098-2639__.

   Witness my hand this __14__ day of __April 2011__

_____ Agent of Mortgagee

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
Online Documents, Inc.                    Page   13 of 13              PAEDEDL 1011
                                                                       04-13-2011 14:00